BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C. 20530
BRADLEY R. O'BRIEN (CA Bar Number: 189425)
Senior Attorney
ANGELA MO (CA Bar Number: 262113)
Trial Attorney
Environmental Enforcement Section
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6484
Tel: (202) 514-1707
E-mail: brad.obrien@usdoj.gov
E-mail: angela.mo@usdoj.gov
*Counsel for Plaintiff United States of America*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, and the PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* DEPARTMENT OF FISH AND WILDLIFE, PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* CENTRAL COAST REGIONAL WATER QUALITY CONTROL BOARD, *ex rel.* CALIFORNIA DEPARTMENT OF PARKS AND RECREATION, *ex rel.* CALIFORNIA STATE LANDS COMMISSION, *ex rel.* CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION'S OFFICE OF STATE FIRE MARSHAL, and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> PLAINS ALL AMERICAN PIPELINE, L.P. and PLAINS PIPELINE, L.P., <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT FOR RELIEF UNDER FEDERAL PIPELINE SAFETY LAWS; CLEAN WATER ACT; OIL POLLUTION ACT; LEMPERT-KEENE-SEASTRAND OIL SPILL PREVENTION AND RESPONSE ACT; PORTER-COLOGNE WATER POLLUTION CONTROL ACT; CALIFORNIA FISH AND GAME CODE; and ELDER CALIFORNIA PIPELINE SAFETY ACT OF 1981** |

XAVIER BECERRA
Attorney General of California
ERIC M. KATZ
Supervising Deputy Attorney General
MICHAEL ZARRO (CA Bar Number: 110171)
JESSICA BARCLAY-STROBEL (CA Bar Number: 280361)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Tel: (213) 269-6635
E-mail: Jessica.BarclayStrobel@doj.ca.gov
*Counsel for Plaintiffs California Department of Fish and Wildlife, Central Coast
Regional Water Quality Control Board, and California Department of Forestry
and Fire Protection's Office of State Fire Marshal*

XAVIER BECERRA
Attorney General of California
CHRISTINA BULL ARNDT
Supervising Deputy Attorney General
NICOLE RINKE (CA Bar Number: 257510)
MITCHELL E. RISHE (CA Bar Number: 193503)

Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Tel: (213) 269-6394
E-mail: Mitchell.Rishe@doj.ca.gov
*Counsel for Plaintiffs California Department of Parks and Recreation and
California State Lands Commission*

MARGARET WU (CA Bar Number: 116588)
Deputy General Counsel
BARTON LOUNSBURY (CA Bar Number: 253895)
Senior Counsel
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, California 94607-5200
Tel: (510) 987-9800
E-mail: barton.lounsbury@ucop.edu
*Counsel for Plaintiff The Regents of the University of California*

*United States of America and the People of the State of California v.
Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

Plaintiff the United States of America ("United States"), by the authority of the Attorney General of the United States and through the undersigned attorneys acting on behalf of the United States Department of Transportation, Pipeline and Hazardous Materials Safety Administration ("PHMSA"), United States Environmental Protection Agency ("EPA"), United States Department of the Interior ("DOI"), United States Department of Commerce on behalf of the National Oceanic and Atmospheric Administration ("NOAA"), and Plaintiff the People of the State of California, *ex rel.* Department of Fish and Wildlife ("CDFW"), *ex rel.* Central Coast Regional Water Quality Control Board ("CCRWQCB"), *ex rel.* California Department of Parks and Recreation ("CDPR"), *ex rel.* California State Lands Commission ("CSLC"), *ex rel.* California Department of Forestry and Fire Protection's Office of State Fire Marshal ("OSFM"), as well as The Regents of the University of California ("UC"), file this Complaint against Plains All American Pipeline, L.P. and Plains Pipeline, L.P.

## NATURE OF THE ACTION

1.     This civil action is brought against Plains All American Pipeline, L.P. ("Plains All American") and Plains Pipeline, L.P. (jointly, "Plains") relating to the discharge of crude oil from Plains' Line 901 pipeline ("Line 901") that began on or about May 19, 2015, on or near Refugio State Beach in Santa Barbara County, California ("Refugio Incident").  At all relevant times, Plains owned and operated Line 901.

2.     This civil action is also brought against Plains pursuant to the federal Pipeline Safety Laws ("Pipeline Safety Laws"), 49 U.S.C. §§ 60101 *et seq.*, and associated regulations and orders; the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, and associated regulations and orders; and the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701 *et seq.*, and associated regulations and orders; the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

("Lempert-Keene Act"), California Government Code §§ 8670.1 *et seq.*, and associated regulations; the Porter-Cologne Water Pollution Control Act, California Water Code §§ 13350 and 13385; California Fish and Game Code §§ 2014, 5650, 5650.1, and 12016; and California Government Code § 51018.6.

3.     This civil action seeks penalties, injunctive relief, natural resource damages and assessment costs, and other relief.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action and over the parties pursuant to Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E); Section 1017(b) of OPA, 33 U.S.C. § 2717(b); Sections 60120 and 60122 of the Pipeline Safety Laws, 49 U.S.C. §§ 60120 and 60122; and 28 U.S.C. §§ 1331, 1345, 1355, and 1367.

5.     Venue is proper in this District pursuant to Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), Section 1017(b) of OPA, 33 U.S.C. § 2717(b); Section 60120 of the Pipeline Safety Laws, 49 U.S.C. § 60120; and 28 U.S.C. §§ 1391 and 1395(a), because Plains does business in this District and events or omissions giving rise to claims occurred in this District.

## DEFENDANTS PLAINS ALL AMERICAN PIPELINE, L.P. AND PLAINS PIPELINE, L.P.

6.     On information and belief, Plains Pipeline, L.P., is a limited partnership with its principal place of business located in Houston, Texas, and at all relevant times owned and operated Line 901 and the Line 903 pipeline ("Line 903"). Plains Pipeline, L.P., transacts business in the State of California. Plains Pipeline, L.P., is a wholly-owned subsidiary of its parent entity, Plains All American.

7.     On information and belief, Plains All American is a limited partnership with its principal place of business located in Houston, Texas, and at all relevant times owned and operated Line 901 and Line 903. Plains All

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

American has acted and acts on behalf of Plains Pipeline, L.P. for operations located in California.  Plains All American has acted and acts on behalf of Plains Pipeline, L.P. for Lines 901 and 903, State of California intrastate pipelines, and national interstate pipelines.  At the time of the Refugio Incident, Plains All American provided personnel and resources to participate in and contribute to the Refugio Incident response, and provided all points of contact during the response.

8.      Until approximately February 2016, Plains owned and operated Line 901 as an interstate pipeline, within the meaning of the Pipeline Safety Laws, under a 1987 Federal Energy Regulatory Commission certificate.  Since about February 2016 through the present, Plains owns and operates Line 901 as an intrastate pipeline within the meaning of California Government Code Section 51010.5(a).

9.      Until approximately April 2016, Plains owned and operated Line 903 as an interstate pipeline, within the meaning of the Pipeline Safety Laws, under a 1987 Federal Energy Regulatory Commission certificate.  Since about April 2016 through the present, Plains owns and operates Line 903 as an intrastate pipeline within the meaning of California Government Code Section 51010.5(a).

10.     On information and belief, at all times relevant to this Complaint, Defendants were agents, partners, employees, representatives, subsidiaries, parents, or affiliates of one another, and in doing the things alleged herein were acting within the course and scope of such position or positions, were acting with the knowledge, permission, approval and consent of each other, and were intending to act in furtherance of each other's endeavors as alleged herein.

**BACKGROUND**

A.      THE REFUGIO INCIDENT AND RESPONSE

11.     On or about May 19, 2015, Line 901 ruptured and discharged at least 2,934 barrels of heavy crude oil that discharged through a nearby storm

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

drain or culvert ("Culvert") to Refugio State Beach and then to the Pacific Ocean, where the Refugio Incident oil spread farther and impacted numerous shorelines, beaches, and other areas.

12.     At the time of the Refugio Incident, Plains' emergency and facility response plans did not account for or identify the Culvert.  At the time of the Refugio Incident, Plains did not have a response strategy that identified or specifically considered the Culvert's existence or location.

13.     After discovery of the discharge of oil, Plains waited more than 80 minutes before notifying the California Office of Emergency Services and waited 89 minutes before notifying the National Response Center.

14.     Line 901 and portions of Line 903 are in an area designated as a "High Consequence Area" ("HCA") under the Pipeline Safety Laws.  The initial Refugio Incident location is in a High Consequence Area under the Pipeline Safety Laws, as defined in 49 C.F.R. § 195.450.

15.     Agencies of the United States and the State of California responded to the Refugio Incident and incurred response, investigation, natural resource injury assessment, and other costs.

16.     The Refugio Incident caused widespread oiling of the area surrounding the ruptured Line 901, Pacific Ocean, shorelines, cliffs, beaches, and other areas.  The Refugio Incident caused concentrated oil, oil films, oil sheens, and tar balls to adversely impact the Pacific Ocean, shorelines, beaches, cliffs, and other areas.

17.     The Refugio Incident adversely impacted natural resources under the trusteeship of the United States and state trustees CDFW, CDPR, CSLC, and UC, such as living marine resources, including marine mammals and fish and their living and non-living habitats, including vegetated rocky reef and other subtidal habitats; seabirds; shoreline habitats; and other resources.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

18.     The Refugio Incident adversely impacted migratory species, such as marine mammals and birds.

19.     The Refugio Incident caused lost human use and enjoyment of natural resources, including: a) loss of camping trips; b) loss or impairment of non-camping shoreline recreation; c) loss or impairment of boating and offshore recreation; d) loss of recreational fishing; and e) loss or impairment of research, education, and outreach.

20.     The Refugio Incident caused CDFW to enact closures for commercial and recreational fishing.

21.     State beaches and campgrounds in the vicinity of the Refugio Incident were closed to the public for over two months during clean-up activities. Oil released from the Refugio Incident soiled the entirety of the Refugio State Beach coastline and large portions of El Capitan State Beach as well as other state beaches.  In addition to the damage caused by the oil itself, Refugio State Beach suffered additional damage—including damage to CDPR real and personal property—due to Refugio State Beach being used as a staging area for the oil spill response.

22.     The Refugio Incident caused UC to close its Coal Oil Point Reserve ("COPR") for several weeks, preventing scheduled research and education activities from taking place at COPR, while crews removed oil from habitats along the shore and UC staff assessed the safety of the site for the otherwise anticipated uses.  During this time, the director of COPR observed significantly oiled natural resources within the reserve, including both plant and animal species.  COPR is owned and managed by UC and functions as a critical site for the study of coastal southern California habitats.

B.     PLAINS' PIPELINES

23.     At the time of the Refugio Incident, Line 901 was a 24-inch-diameter, buried, insulated transmission pipeline extending

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-5-

approximately 10.7 miles in length and transporting crude oil from Exxon Mobil's storage tanks in Las Flores Canyon westward to Plains' Gaviota Pumping Station.  Line 901 runs parallel to the Pacific Ocean at the point of the Refugio Incident.

24.   At all relevant times, Line 901 was owned and operated by Plains, and is currently owned by Plains but is not currently operational.

25.   Line 901 joins with Line 903, which runs approximately 129 miles to Bakersfield, California.  Line 903 is a 30-inch-diameter, buried, insulated transmission pipeline.  At all relevant times, Line 903 was owned and operated by Plains, and is currently owned and operated by Plains.

26.   Line 901 was constructed to transport heavy crude oil collected from Santa Barbara area off-shore oil platforms along the coast line to the pump station in Gaviota, California, and then to refineries in Bakersfield, California. At the time of the Refugio Incident, Line 901 was coated with coal tar urethane to help prevent corrosion, and with foam insulation and tape-wrap to maintain the crude oil at an elevated temperature during transportation.  At the time of the Refugio Incident, "shrink wrap" sleeves, which provide a barrier between the steel pipe and soil for corrosion prevention, were present at all the pipeline joints on Line 901 and at multiple locations on Line 903.

27.   At all relevant times, Plains failed to operate and maintain Line 901 and Line 903 in a manner that would adequately detect, assess, and mitigate the unique risks associated with external corrosion of Line 901 and Line 903.

28.   At all relevant times, Plains failed to operate and maintain Line 901 and Line 903 in a manner that would adequately detect, assess, and mitigate the risks associated with the Refugio Incident.

29.   At all relevant times, Plains failed to operate Lines 901 and 903 in conformance with the Pipeline Safety Laws.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

## PLAINS' OPERATIONS

30.     PHMSA requires hazardous-liquid transmission pipeline operators, including Plains, to institute a comprehensive risk-management scheme known as "integrity management."  Each operator must determine whether all or portions of its transmission pipeline could potentially affect HCAs, *i.e.*, those geographic areas where the consequences of a pipeline failure could potentially have significant adverse effects on people or unusually sensitive environmental areas. For pipelines in these "could-affect" areas, an operator must develop and follow an "Integrity Management Program" ("IMP").  At all relevant times, Plains failed to develop and follow an IMP ("Plains' IMP") that complied with the Pipeline Safety Laws.

31.     At all relevant times, Plains failed to have an oil-spill response plan and to train employees in compliance with the Pipeline Safety Laws.

32.     At all relevant times, Plains failed to operate Plains' Master Control Room in Midland, Texas, from which it operated pipelines throughout the United States, in a manner that should have promptly and effectively detected the Refugio Incident when it occurred and shut down Line 901 in such a way that the Refugio Incident could have been halted and the amount of crude oil released during the Refugio Incident reduced.  The operations in the Master Control Room did not comply with Pipeline Safety Laws and further aggravated the consequences of the Refugio Incident.

33.     Subsequent to the Refugio Incident, Plains violated the Pipeline Safety Laws by failing to: a) conduct timely alcohol and drug tests of required employees; b) undertake and/or provide to PHMSA a post-Refugio Incident investigation and report; c) follow Plains' written procedures for conducting normal operations of Plains' pipeline; and d) to maintain records relevant to Plains' operations.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-7-

**PHMSA CORRECTIVE ACTION ORDER AND INVESTIGATION**

34.     On May 21, 2015, two days after the Refugio Incident, PHMSA issued to Plains a Corrective Action Order ("CAO"), followed by three amendments, and conducted an investigation to identify causal and contributing factors leading to the Refugio Incident and/or increasing its severity.  CAO CPF No. 5-2015-5011H.

35.     One year later, on May 19, 2016, PHMSA issued a Failure Investigation Report ("FIR") describing the facts and circumstances surrounding the Refugio Incident, the emergency-response efforts, and the causes of the Refugio Incident.  The FIR described systemic deficiencies in Plains' operations, including, in part: a) ineffective protection against external corrosion on Line 901; b) a failure to detect and mitigate corrosion, whereby the in-line inspection ("ILI") tools and subsequent ILI data analyses performed by Plains failed to accurately characterize the extent and depth of the external corrosion; c) a lack of timely detection and response to the Refugio Incident; d) the lack of an adequate oil-spill response plan, including a failure to identify the Culvert near the Refugio Incident site that served as a pathway to the Pacific Ocean and other areas; and e) a failure to develop and implement an adequate IMP under the Pipeline Safety Laws.

**PHMSA'S INFORMATION REQUESTS AND SUBPOENAS**

36.     Following the Refugio Incident, PHMSA requested that Plains provide certain information and documents relating to the Refugio Incident and Plains' pipeline operations, as set forth in three Requests for Information ("PHMSA's RFIs") dated August 19, 2015; August 21, 2015; and September 1, 2016, respectively.  Plains repeatedly failed to comply with PHMSA's RFIs.

37.     Because Plains did not comply with PHMSA's RFIs, on July 27, 2016, PHMSA issued a subpoena to Plains seeking compliance with the August 19 and August 21, 2015 RFIs.  PHMSA subsequently modified the subpoena and

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-8-

ordered Plains to provide the requested information and documents ("PHMSA's First Subpoena"). On June 2, 2017, PHMSA issued a second subpoena to Plains seeking compliance with the September 1, 2016 RFI ("PHMSA's Second Subpoena").

38. Plains has not complied with PHMSA's RFIs, PHMSA's First Subpoena, or PHMSA's Second Subpoena.

39. Plains' continuing failure to comply with PHMSA's RFIs, PHMSA's First Subpoena, or PHMSA's Second Subpoena has delayed and impeded, and continues to delay and impede, the United States' Refugio Incident investigation.

**STATUTORY AND REGULATION BACKGROUND**

A. <u>CLEAN WATER ACT</u>

40. The CWA, *inter alia*, prohibits discharges of oil into waters of the United States, which includes the Pacific Ocean near Refugio State Beach, adjoining shorelines and other impacted areas.

41. Pursuant to Section 311(b)(7)(A) of the CWA (adjusted for inflation by 40 C.F.R. § 19.4), each violation of the CWA occurring between January 12, 2009 and November 2, 2015, is subject to a civil penalty of up to $37,500 per day or up to $2,100 per barrel of oil discharged. Pursuant to Section 311(b)(7)(A) of the CWA (adjusted for inflation by 40 C.F.R. § 19.4), each violation of Section 311(b)(3) occurring between January 12, 2009 and November 2, 2015, that is the result of gross negligence or willful misconduct is subject to a civil penalty of up to $150,000 per day of the violation or $5,300 per barrel of oil discharged. 33 U.S.C. § 1321(b)(7)(A).

B. <u>OIL POLLUTION ACT</u>

42. OPA provides, *inter alia*, that each responsible party for a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-9-

economic zone is strictly liable for the damages specified in OPA. 33 U.S.C. § 2702(a) and (b). Damages include, *inter alia*, damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage. 33 U.S.C. § 2702(b)(2)(A).

43. Natural resource damages include the cost of restoration, replacement, rehabilitation or acquisition of the equivalent of the injured natural resources.

44. OPA authorizes PHMSA, through the Department of Transportation, to issue civil penalties against any owner, operator, or person in charge of an onshore oil pipeline who fails to comply with applicable regulations relating to oil-spill response plans.

C. LEMPERT-KEENE-SEASTRAND OIL SPILL PREVENTION AND RESPONSE ACT

45. The Lempert-Keene-Seastrand Oil Spill Prevention and Response Act provides, *inter alia,* that a responsible party, as defined by the Act, shall be absolutely liable without regard to fault for specified damages, that arise out of, or are caused by, an oil spill. Cal. Gov. Code § 8670.56.5(a). Damages include, *inter alia,* damages for injury to, destruction of or loss of, natural resources, including, but not limited to, the reasonable costs of rehabilitating wildlife, habitat, and other resources and the reasonable costs of assessing that injury, destruction, or loss. Cal. Gov. Code § 8670.56.5(h)(3). Damages also include damages for loss of use and enjoyment of natural resources, public beaches, and other public resources or facilities. Cal. Gov. Code § 8670.56.5(h)(7).

46. The Lempert-Keene-Seastrand Oil Spill Prevention and Response Act authorizes imposition of civil penalties against a person who is intentionally or negligently responsible for an oil spill and/or who intentionally or negligently violates any provision of the Lempert-Keene-Seastrand Oil Spill Prevention and

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-10-

Response Act or regulations adopted thereunder, through a civil action brought by the Attorney General *ex rel.* CDFW.

D.   THE PORTER-COLOGNE WATER QUALITY CONTROL ACT

47.     The Porter-Cologne Water Quality Control Act establishes a comprehensive program to protect water quality and the beneficial uses of water in California.  The State Water Resources Control Board and nine California Regional Water Quality Control Boards have primary responsibility for implementing and enforcing the Porter-Cologne Water Quality Act.

48.     The Porter-Cologne Water Quality Control Act, *inter alia*, prohibits the deposit of oil or any petroleum residuary product to waters of the state, which includes the Pacific Ocean near Refugio State Beach, adjoining shorelines and other impacted areas.  Pursuant to California Water Code Section 13350, each violation of that prohibition is subject to a civil penalty of up to $15,000 per day or up to $20 per gallon of oil or petroleum residuary product discharged.  Cal. Wat. Code § 13350(d).

49.     The Porter-Cologne Water Quality Control Act requires each regional board to formulate and adopt water quality control plans for all areas within the region.  Cal. Wat. Code § 13240.  The Porter-Cologne Water Quality Control Act provides authority to a regional board to prohibit the discharge of waste under certain conditions or in certain areas in a water quality control plan.  Cal. Wat. Code § 13243.  Pursuant to California Water Code Section 13385, each violation of such a prohibition is subject to a civil penalty of up to $25,000 per day and up to $25 per gallon for every gallon discharged but not cleaned up that exceeds 1,000 gallons.

E.   THE FISH AND GAME CODE

50.     The Fish and Game Code and regulations adopted thereunder address the conservation, protection, and management of California's fish and wildlife resources and their habitat.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-11-

51.     The Fish and Game Code, *inter alia,* authorizes CDFW to impose civil penalties upon any person who unlawfully deposits petroleum in waters of the state or places petroleum in a location where it can pass into waters of the state. The Fish and Game Code also authorizes CDFW to recover damages from any person who discharges or deposits any substance or material deleterious to fish, plant, bird, or animal life or their habitat in waters of the state, and/or from any person who unlawfully or negligently takes or destroys any bird, mammal, fish, reptile, or amphibian protected by the laws of the State of California.

F.     THE PIPELINE SAFETY LAWS

52.     The Pipeline Safety Laws ensure the safety of hazardous liquid pipelines incidental to transportation through compliance with minimum standards governing the design, construction, operation and maintenance of such pipelines.

53.     The Pipeline Safety Laws require, *inter alia*, that Plains develop, implement, and follow a comprehensive IMP for those portions of Lines 901 and 903 located in HCAs or HCA "could affect" areas.  49 C.F.R. § 195.452.  Plains also is required to develop, implement, and follow an IMP for other pipeline segments located in or that could affect HCAs, as defined in 49 C.F.R. § 195.450. This IMP must then identify, prioritize, and address the unique integrity threats faced by each pipeline segment throughout Plains' system and reassess each segment at appropriate intervals.  The IMP requirements are generally described in 49 C.F.R. § 195.452.

54.     The Pipeline Safety Laws impose, *inter alia*, requirements on Plains' daily operations and include additional specific requirements relating to unsafe conditions and emergencies.

55.     The Pipeline Safety Laws provide authorities and sanctions for achieving and maintaining pipeline safety and compliance.  49 U.S.C. § 60120(a)(1).  For the Pipeline Safety Law violations occurring after August 1,

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

2016, Plains is subject to an administrative civil penalty not to exceed $205,638 per violation per day.  These amounts are adjusted annually for inflation.  49 C.F.R. § 190.223.  For violations occurring between January 4, 2012, and August 1, 2016, Plains is subject to an administrative civil penalty not to exceed $200,000 per violation per day.  49 U.S.C. § 60122.

56.   The maximum amount of civil penalties that can be imposed administratively by PHMSA for violations of the Pipeline Safety Laws under 49 U.S.C. § 60122 does not apply in a judicial action.  49 U.S.C. § 60120(a)(1).  The Pipeline Safety Laws authorize the United States to seek injunctive relief.  49 U.S.C. § 60120.

G.   ELDER CALIFORNIA PIPELINE SAFETY ACT OF 1981

57.   The Elder California Pipeline Safety Act of 1981 authorizes OSFM to exercise regulatory and enforcement authority over intrastate pipelines and, in certain circumstances, to implement federal pipeline safety regulations as to those portions of interstate pipelines located within the State of California.  The Elder California Pipeline Safety Act of 1981 also provides for civil penalties for each day that a violation persists.

## COUNT ONE

### *(Federal Clean Water Act – Penalties)*

58.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

59.   The CWA prohibits the discharge of oil or hazardous substances into or upon the navigable waters of the United States or adjoining shorelines in such quantities as the President determines may be harmful to the public health or welfare or environment of the United States.  33 U.S.C. § 1321(b).

60.   The CWA defines "discharge" to include any release, "leaking, pumping, pouring, emitting, emptying or dumping," except as specifically

*United States of America and the People of the State of California v.
Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-13-

excluded therein, 33 U.S.C. § 1321(a)(2); "oil" as "oil of any kind or in any form, including, but not limited to, petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil," 33 U.S.C. § 1321(a)(1); and "navigable waters" as "the waters of the United States, including the territorial seas," 33 U.S.C. § 1362(7).  For purposes of the Refugio Incident, the "navigable waters" described in this Paragraph include the Pacific Ocean near Refugio State Beach. Additionally, the Refugio Incident impacted adjoining shorelines to the Pacific Ocean.

61.     Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), EPA, acting through its delegated authority under Executive Order No. 12,777, 56 Fed. Reg. 54,757 (Oct. 18, 1991), has determined by regulation that discharges of oil in such quantities as may be harmful to the public health or welfare or environment of the United States include discharges of oil that "(a) Violate applicable water quality standards; or (b) Cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines." 40 C.F.R. § 110.3.  The Refugio Incident discharged oil in such a quantity to be harmful to the public health or welfare or environment of the United States.

62.     Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), provides that any person who is the owner, operator, or person in charge of an onshore facility from which oil is discharged in violation of Section 311(b)(3) of the CWA shall be subject to a civil penalty.  At all relevant times, Plains was an owner, an operator, and/or a person in charge of Line 901, an on-shore facility from which oil was discharged in violation Section 311(b)(3) of the CWA.  *Id.*

63.     Section 311(a) of the CWA defines "person" to include an individual, firm, corporation, association, and a partnership, 33 U.S.C. § 1321(a)(7); and "onshore facility" as "any facility (including, but not limited to,

motor vehicles and rolling stock) of any kind located in, on, or under, any land within the United States other than submerged land," 33 U.S.C. § 1321(a)(10). Plains is a "person" under Section 311(a)(7) of the CWA.  33 U.S.C. § 1321(a)(7).  Plains' Line 901 and Plains' Line 903 are onshore facilities pursuant to Section 311(a)(10) of the CWA.  33 U.S.C. § 1321(a)(10).

64.     The Refugio Incident is a prohibited discharge for which Plains is strictly liable for civil penalties under the CWA.

### COUNT TWO

*(Federal Oil Pollution Act – Natural Resource Damages)*

65.     Plaintiffs the United States, CDFW, and CDPR refer to and incorporate by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

66.     Section 1002(a) of OPA, 33 U.S.C. § 2702(a), provides that "each responsible party for . . . a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages specified in [33 U.S.C. § 2702(b)] that result from such incident."  At all times material herein, Plains' Line 901 was a "facility from which oil is discharged" within the meaning of OPA.  33 U.S.C. §§ 2701(9), 2702(a).

67.     Section 1001(32) of OPA, 33 U.S.C. § 2701(32)(F), defines "responsible party" in the case of a pipeline to include "any person owning or operating the pipeline."  At all relevant times, Plains was a "responsible party" within the meaning of OPA.  33 U.S.C. § 2701(32)(F).

68.     Section 1001(24) of OPA, 33 U.S.C. § 2701(24), defines "onshore facility" to mean "any facility . . . of any kind located in, on, or under, any land within the United States other than submerged land."  At all relevant times, Line 901 was an "onshore facility" within the meaning of Section 1001(24) of OPA. 33 U.S.C. § 2701(24).

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-15-

69.     Section 1001(9) of OPA, 33 U.S.C. § 2701(9), defines "facility" to mean "any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes:  exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil."  At all relevant times, Line 901 was a "facility" within the meaning of Section 1009 of OPA.  33 U.S.C. § 2701(9).

70.     Section 1001(27) of OPA, 33 U.S.C. § 2701(27), defines "person" to include an individual, corporation, partnership, or association.  Plains was a person within the meaning of Section 1001(27) of OPA.  33 U.S.C. § 2701(27).

71.     Section 1001(23) of OPA, 33 U.S.C. § 2701(23), defines "oil" to mean "oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil . . . ."

72.     Section 1001(7) of OPA, 33 U.S.C. § 2701(7), defines "discharge" to mean "any emission (other than natural seepage), intentional or unintentional, and includes, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying, or dumping."  The Refugio Incident is a discharge within the meaning of Section 1001(7) of OPA.  33 U.S.C. § 2701(7).

73.     Section 1001(21) of OPA, 33 U.S.C. § 2701(21), defines "navigable waters" as "the waters of the United States, including the territorial sea."  For purposes of the Refugio Incident , the "navigable waters" and the "waters of the United States" described in this Paragraph include the Pacific Ocean and are within the meaning of Section 1001(21) of OPA.  33 U.S.C. § 2701(21).  Additionally, the Refugio Incident impacted adjoining shorelines to the Pacific Ocean.

74.     Section 1002(b)(2)(A) of OPA, 33 U.S.C. § 2702(b)(2)(A), provides that the "damages" referred to in Section 1002(a) of OPA, 33 U.S.C. § 2702(a), include "[d]amages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-16-

recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee."

75.     Section 1001(20) of OPA, 33 U.S.C. § 2701(20), provides that "natural resources" include "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the exclusive economic zone), any State or local government or Indian tribe, or any foreign government."

76.     Pursuant to Section 1006(b)(3) of OPA, 33 U.S.C. § 2706(b)(3), the Governor of the State of California designated the Secretary of Resources as the State trustee for natural resources within the purview of the California Natural Resources Agency, for purposes of OPA.  The Secretary for Natural Resources delegated such trustee authority to CDFW for resources within CDFW's purview and to CDPR for resources within CDPR's purview.  Under California Fish and Game Code Section 1802, CDFW is a trustee for "fish and wildlife resources" and has "jurisdiction over the conservation, protection, and management of fish, wildlife, native plants, and habitat necessary for biologically sustainable populations of those species."  Under California Public Resources Code section 5001, CDPR is a trustee for the preservation and management of "state parks and other nature, recreation, and historic areas."  Accordingly, the natural resources injured, destroyed, and/or lost as a result of the Refugio Incident are held in trust by CDFW and CDPR as California's designated state trustees within the meaning of Section 1006(b) of OPA.

77.     Pursuant to Section 1006(b)(3) of OPA, 33 U.S.C. § 2706(b)(3), and 40 C.F.R. Part 300, subpart G, DOI and NOAA serve as trustees for natural resources for the assessment and recovery of damages for injury to, destruction of, loss of, impairment, and loss of use of natural resources and the services provided by those resources under their trusteeship. Accordingly, the natural

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-17-

resources injured, destroyed, and/or lost as a result of the Refugio Incident are held in trust by DOI and NOAA as the designated federal trustees within the meaning of Section 1006(b) of OPA.

78.    As a result of the Refugio Incident, the United States, CDFW, and CDPR sustained "damages," as that term is defined in 33 U.S.C. § 2702(b)(2)(A) for, *inter alia*, injuries to, destruction of, and loss of natural resources, including the reasonable costs of assessing the damage.  33 U.S.C. 2702(b)(2)(A).

79.    Plains is liable to the United States, CDFW, and CDPR for "damages" within the meaning of OPA.

## COUNT THREE

*(Federal Oil Pollution Act – Property Damage and Lost Revenue and Profits)*

80.    Plaintiff CDPR refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

81.    Section 1002(b)(2)(B) of OPA, 33 U.S.C. § 2702(b)(2)(B), provides that the "damages" referred to in Section 1002(a) of OPA, 33 U.S.C. § 2702(a), include "[d]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property."

82.    Section 1002(b)(2)(D) of OPA, 33 U.S.C. § 2702(b)(2)(D), provides that the "damages" referred to in Section 1002(a) of OPA, 33 U.S.C. § 2702(a), include "[d]amages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof."

83.    Section 1002(b)(2)(E) of OPA, 33 U.S.C. § 2702(b)(2)(E), provides that the "damages" referred to in Section 1002(a) of OPA, 33 U.S.C. § 2702(a), include "[d]amages equal to the loss of profits or impairment of earning capacity

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-18-

due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

84.     As a result of the Refugio Incident, the CDPR sustained "damages," as that term is defined in 33 U.S.C. § 2702(b)(2)(B)-(F) for, *inter alia*, for lost revenues and/or lost profits resulting from the closure of CDPR state beaches, including Refugio State Beach and El Capitan State Beach, as well as the destruction of CDPR property.  33 U.S.C. 2702(b)(2)(B)-(F).

85.     Plains is liable to CDPR for "damages" within the meaning of OPA.

## COUNT FOUR

*(Damages Under Lempert-Keene-Seastrand Oil Spill Prevention and Response Act – California Government Code § 8670.56.5)*

86.     Plaintiffs CDFW, CDPR, CSLC, and UC refer to and incorporate by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

87.     California Government Code Section 8670.56.5(a) provides that a "responsible party, as defined in [California Government Code] Section 8670.3, shall be absolutely liable without regard to fault for any damages incurred by any injured person that arise out of, or are caused by, a spill."  Damages for which a responsible party is liable include:

        a.     All costs of response, containment, cleanup, removal, and treatment;

        b.     Injury to, or economic losses resulting from destruction of or injury to, real or personal property;

        c.     Injury to, destruction of or loss of, natural resources, including the reasonable costs of assessing that injury, destruction, or loss;

        d.     Loss of use and enjoyment of natural resources, public beaches, and other public resources or facilities; and

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-19-

e.    Attorneys' fees and costs of the suit, including the cost of expert witnesses.

88.    By virtue of the Refugio Incident, CDFW, CDPR, CSLC, and UC have assessed natural resource damages, including damages for injury to, destruction of or loss of natural resources under their trusteeship, and loss of use and enjoyment of natural resources, public beaches, and other public resources or facilities and continue to incur costs as a result of the Refugio Incident.

89.    By virtue of the Refugio Incident, CDPR has incurred damages for injury to, or economic losses resulting from destruction of or injury to, real or personal property.

90.    By virtue of the Refugio Incident, the CDFW, CDPR, CSLC, and UC have incurred costs and damages within the meaning of California Government Code Section 8670.56.5 and are thus entitled to recover these costs and damages from Plains.

## COUNT FIVE

*(Penalties Under Lempert-Keene-Seastrand Oil Spill Prevention and Response Act – California Government Code § 8670.66(a)(3))*

91.    Plaintiff CDFW refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

92.    California Government Code Section 8670.66(a)(3), provides that any "person" who is "responsible for a spill" and acts "intentionally or negligently . . . shall be subject to a civil penalty for a spill of not . . . more than one million dollars ($1,000,000), for each violation, and each day or partial day that a violation occurs is a separate violation."

93.    Plains constitutes a "person" under California Government Code Section 8670.3(t), which defines "person" to include a "trust, firm, joint stock company, or corporation, . . . partnership, and association."

94.     By virtue of the acts and omissions alleged in this Complaint, Plains is negligently responsible for the Refugio Incident.  Accordingly, Plains is liable for civil penalties under California Government Code Section 8670.66(a).

## COUNT SIX

*(Penalties Under Lempert-Keene-Seastrand Oil Spill Prevention and Response Act – California Government Code § 8670.66(b))*

95.     Plaintiff CDFW refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

96.     California Government Code Section 8670.66(b) provides that any "person who intentionally or negligently violates any provision of [the Lempert-Keene Act] . . . or any permit, rule, regulation, standard, or requirement issued or adopted pursuant to those provisions, shall be liable for a civil penalty not to exceed two hundred fifty thousand dollars ($250,000) for each violation of a separate provision, or, for continuing violations, for each day that violation continues."

97.     California Government Code Section 8670.25.5(a)(1) provides that "any party responsible for the discharge or threatened discharge of oil in waters of the state shall report the discharge immediately to the Office of Emergency Services."

98.     At the time of the Refugio Incident, the notifications section of Plains' spill response plan incorporated the requirements set forth in California Government Code Section 8670.25.5.

99.     By virtue of the acts and omissions alleged in this Complaint, Plains intentionally or negligently violated provisions of the Lempert-Keene Act, including California Government Code Section 8670.25.5.  Accordingly, Plains is liable for civil penalties under California Government Code Section 8670.66(b).

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

**COUNT SEVEN**

*(Civil Liability Under Porter-Cologne Water Pollution Control Act – California Water Code § 13350)*

100.   Plaintiff CCRWQCB refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

101.   California Water Code Section 13350(a)(3) provides in pertinent part that a "person who . . . causes or permits any oil or any residuary product of petroleum to be deposited in or on any of the waters of the state, except in accordance with waste discharge requirements or other actions or provisions of [Division 7 of the California Water Code], shall be liable civilly, and remedies may be proposed, in accordance with subdivision (d) . . . ."

102.   California Water Code Section 13350(d) provides that a court may impose civil liability for a violation of Section 13350(a)(3) on a daily basis of no more than $15,000 for each day the violation occurs or on a per gallon basis of no more than $20 for each gallon of waste discharged.

103.   California Water Code Section 13050(e) defines "waters of the state" as "any surface water or groundwater, including saline waters, within the boundaries of the state."

104.   By virtue of the Refugio Incident, Plains deposited oil into "waters of the state" within the meaning of California Water Code Section 13050(e). Plains' depositing of oil was not in in accordance with waste discharge requirements or other actions or provisions of Division 7 of the California Water Code.

105.   California Water Code Section 13350(g) provides that the California Attorney General, "upon request of a regional board or the state board," shall seek recovery in court for violations of California Water Code Section 13350. After providing notice to affected persons, the CCRWQCB held a hearing on

July 30, 2015 to consider authorizing the California Attorney General to seek civil penalties and other appropriate remedies judicially.  The CCRWQCB then adopted Resolution No. R3-2015-0026, authorizing the California Attorney General to seek judicially imposed civil penalties under the California Water Code.

106.   By virtue of the Refugio Incident, Plains violated California Water Code Section 13350.  Accordingly, Plains is civilly liable to the CCRWQCB.

## COUNT EIGHT

*(Civil Liability Under Porter-Cologne Water Pollution Control Act – California Water Code § 13385)*

107.   Plaintiff CCRWQCB refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

108.   Section 13385(a)(4) of the California Water Code provides in pertinent part that a "person" who violates an "order or prohibition issued pursuant to Section 13243" of the California Water Code "shall be liable civilly."

109.   The Water Quality Control Plan: Ocean Waters of California ("California Ocean Plan") contains prohibitions issued pursuant to Section 13243 and was in effect at the time of the Refugio Incident.  The California Ocean Plan prohibits the discharge of waste to Areas of Special Biological Significance ("ASBS") except as provided in the California Ocean Plan's Chapter III.E, which governs the implementation provisions for marine managed areas.  The Water Quality Control Plan for the Central Coastal Basin ("Central Coastal Basin Plan") defines all of Santa Barbara County, including ocean waters within about one nautical mile offshore, as an ASBS.

110.   The Water Quality Control Plan for the Central Coastal Basin ("Central Coastal Basin Plan") contains prohibitions issued pursuant to Section 13243 and was in effect at the time of the Refugio Incident.  The Central Coastal

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-23-

Basin Plan incorporates the California Ocean Plan.  The Central Coastal Basin Plan bars the discharge of oil or any residual products of petroleum to the waters of the state, except in accordance with waste discharge requirements or other provisions of Division 7 of the California Water Code.  The Central Coastal Basin Plan also bars the discharge of waste that contains materials in concentrations that are hazardous to human, plant, animal, or aquatic life.

111.   By virtue of the Refugio Incident, Plains discharged oil into ASBS and discharged waste that contained materials in concentrations hazardous to human, plant, animal, or aquatic life.  The discharge was not in accordance with the exceptions provided in the California Ocean Plan's Chapter III.E or with waste discharge requirements or other provisions of Division 7 of the California Water Code.  Plains thereby violated prohibitions and requirements in both the California Ocean Plan and Central Coastal Basin Plan.

112.   Section 13385(b) of the California Water Code provides that a court may impose civil liability either on a daily basis of no more than $25,000 for each day the violation occurs or on a per gallon basis of $25 multiplied by the number of gallons discharged but not cleaned up that exceeds 1,000 gallons.

113.   By virtue of the Refugio Incident, Plains violated Section 13385 of the California Water Code.  Accordingly, Plains is civilly liable to the CCRWQCB.

## COUNT NINE

*(Civil Penalties Under California Fish and Game Code § 5650.1)*

114.   Plaintiff CDFW refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

115.   California Fish and Game Code Section 5650(a) provides in pertinent part that it "is unlawful to deposit in, permit to pass into, or place where it can pass into the waters of this state . . . (1) Any petroleum, . . . or residuary product of petroleum, or carbonaceous material or substance" or "(6) Any

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

substance or material deleterious to fish, plant life, mammals, or bird life."

116.    The oil released from the Refugio Incident constitutes a substance or material described in California Fish and Game Code Sections 5650(a)(1) and (a)(6).

117.    The areas into which the oil from the Refugio Incident were released, including the Culvert and the Pacific Ocean, constitute "waters of this state" or places where such oil can pass into the "waters of this state" within the meaning of California Fish and Game Code Section 89.1, which defines "waters of this state" to have the same meaning as "waters of the state" under California Water Code Section 13050(e).

118.    Under California Fish and Game Code section 5650.1, a "person who violates Section 5650 is subject to a civil penalty of not more than $25,000 for each violation."

119.    Plains constitutes a "person" under California Fish and Game Code Section 67, which defines "person" to include "any partnership, corporation, limited liability company, trust, or other type of association."

120.    By virtue of the Refugio Incident, Plains is liable for civil penalties under Fish and Game Code Section 5650.1.

## COUNT TEN

*(Damages Under California Fish and Game Code § 12016)*

121.    Plaintiff CDFW refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

122.    California Fish and Game Code Section 12016(a) provides that, in "addition to any other provision of law, any person who discharges or deposits any substance or material deleterious to fish, plant, bird, or animal life or their habitat into, or which threatens to enter, the waters of this state is liable civilly to the department for all actual damages to fish, plant, bird, or animal life or their habitat and, in addition, for the reasonable costs incurred in cleaning up the

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

deleterious substance or material or abating its effects, or both."

123.   The Refugio Incident caused actual damage to fish, plant, bird, or animal life or their habitat and caused CDFW to incur costs in cleaning up or abating the Refugio Incident's effects.

124.   By virtue of the Refugio Incident, Plains is liable for damages under California Fish and Game Code Section 12016(a).

## COUNT ELEVEN

*(Damages Under California Fish and Game Code § 2014)*

125.   Plaintiff CDFW refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

126.   California Fish and Game Code Section 2014 provides that the "state may recover damages in a civil action against any person or local agency which unlawfully or negligently takes or destroys any bird, mammal, fish, reptile, or amphibian protected by the laws of this state."

127.   By virtue of the acts and omissions alleged in this Complaint, Plains is responsible for the unlawful take or destruction of birds, mammals, fish, reptiles, or amphibians as a result of the Refugio Incident.

128.   The birds, mammals, fish, reptiles, or amphibians harmed by the Refugio Incident were protected by the laws of California, including the laws identified in this Complaint.

129.   By virtue of the Refugio Incident, Plains is liable for damages under California Fish and Game Code Section 2014.

## COUNT TWELVE

*(Pipeline Safety Laws – Failure to Implement and Follow Plains' IMP)*

130.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-26-

131.   Plains failed to implement and follow Plains' IMP, as required by 49 C.F.R. § 195.452(b)(5), as it related to Line 901 and Line 903.  Each failure of Plains to implement a portion of Plains' IMP constitutes a separate violation of 49 C.F.R. § 195.452(b)(5), and was a contributing factor to the cause or severity of the Refugio Incident.

A.   Plains' IMP Implementation Violation Number One

132.   Plains violated 49 C.F.R. § 195.452(b)(5) by failing to implement and follow Section 5 of Plains' IMP relating to the Baseline Assessment Plan, as required under 49 C.F.R. § 195.452(b)(2).

B.   Plains' IMP Implementation Violation Number Two

133.   Plains violated 49 C.F.R. § 195.452(b)(5) by failing to implement and follow Section 7 of Plains' IMP relating to methods for measuring the program's effectiveness by evaluating the performance of key IMP personnel, as required under 49 C.F.R. § 195.452(f)(7).

C.   Plains' IMP Implementation Violation Number Three

134.   Plains violated 49 C.F.R. § 195.452(b)(5) by failing to implement and follow Section 7 of Plains' IMP relating to methods for measuring the program's effectiveness through Plains' Integrity Management Board, as required under 49 C.F.R. § 195.452(f)(7).

D.   Plains' IMP Implementation Violation Number Four

135.   Plains violated 49 C.F.R. § 195.452(b)(5) by failing to implement and follow Section 9 of Plains' IMP relating to a continual process of assessment and evaluation.  Specifically, Plains failed to reassess Line 901 based upon a risk-based schedule, as required under 49 C.F.R. § 195.452(f)(5) and (j).

E.   Plains' IMP Implementation Violation Number Five

136.   Plains violated 49 C.F.R. § 195.452(b)(5) by failing to implement and follow Section 12 of Plains' IMP relating to the IMP evaluation process. Plains failed to include methods to measure the effectiveness of the IMP.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

Specifically, Plains failed to periodically conduct a review to determine whether Plains adhered to Integrity Management processes and procedures and whether Plains' IMP had been effective, as required under 49 C.F.R. § 195.452(f)(7) and (k).

F.    Plains' IMP Implementation Violation Number Six

137.   Plains violated 49 C.F.R. § 195.452(b)(5) by failing to implement and follow Section 12 of Plains' IMP relating to the IMP evaluation process. Specifically, Plains failed to implement a procedure for using Plains' Integrity Management Board to annually evaluate the IMP's effectiveness and to issue written reports, as required under 49 C.F.R. § 195.452(f)(7) and (k).

G.    Plains' IMP Implementation Violation Number Seven

138.   Plains violated 49 C.F.R. § 195.452(b)(5) by failing to implement and follow Section 12 of Plains' IMP relating to the IMP evaluation process. Specifically, Plains failed to implement procedures for using root-cause analyses in Plains' IMP, including non-injury or "near-miss" accidents, post-accident reviews, emergency-response records and documentation, and failed-pipe analyses, as required by 49 C.F.R. § 195.452(f)(7) and (k).

**COUNT THIRTEEN**

*(Pipeline Safety Laws – Failure to Follow Recognized Industry Practices in Carrying Out Plains' IMP)*

139.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

140.   Plains violated 49 C.F.R § 195.452(b)(6) by failing to adopt and follow recognized industry practices, such as American Petroleum Institute, Recommended Practice ("API RP") 1160 ("Managing System Integrity for Hazardous Liquid Pipelines"); API RP 1163 ("In-Line Inspection ('ILI') Systems Qualification"); National Association of Corrosion Engineers Recommended

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-28-

Practice 0102 ("In-Line Inspection of Pipelines"); and American Society for Nondestructive Testing, Inc. ILI-PQ ("In-line Inspection Personnel Qualification and Certification") in its IMP procedures and failed to actually follow such practices for Line 901 and Line 903, and such a failure was a contributing factor to the cause or severity of the Refugio Incident.

<strong>COUNT FOURTEEN</strong>

<em>(Pipeline Safety Laws – Failure to Set a Risk-Based Reassessment Schedule for Line 901 and Line 903 in Plains' IMP)</em>

141.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

142.   Plains violated 49 C.F.R § 195.452(e)(1) by failing to establish a risk-based IMP reassessment schedule for Line 901 and Line 903 that properly prioritized pipeline segments and included all relevant information, such as leak history, repair history, cathodic-protection history, and corrosion under insulation, and such a failure was a contributing factor to the cause or severity of the Refugio Incident.

<strong>COUNT FIFTEEN</strong>

<em>(Pipeline Safety Laws – Failure to Integrate into Plains' IMP All Available Information About Integrity of Line 901 and Line 903)</em>

143.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

144.   Plains violated 49 C.F.R. § 195.452(f)(3) by failing to perform an analysis that integrated into Plains' IMP all available information about the integrity of Line 901 and Line 903 and such a failure was a contributing factor to the cause or severity of the Refugio Incident.

<em>United States of America and the People of the State of California v.<br>Plains All American Pipeline, L.P. and Plains Pipeline, L.P.</em><br>Complaint

**COUNT SIXTEEN**

*(Pipeline Safety Laws – Failure to Have Qualified Persons Review and*
*Evaluate Integrity Management Assessment Results)*

145.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

146.   Plains violated 49 C.F.R. § 195.452(f)(8) by failing to include in Plains' IMP a process for ensuring that integrity-assessment results and information analyses were conducted by persons qualified to evaluate such results and information, and such a failure was a contributing factor to the cause or severity of the Refugio Incident.

**COUNT SEVENTEEN**

*(Pipeline Safety Laws – Failure to Analyze Available Data on*
*Line 901 and Line 903)*

147.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

148.   Plains violated 49 C.F.R. § 195.452(g)(3) by failing to analyze data gathered in conjunction with inspections, tests, surveillance and patrols, including corrosion-control monitoring and cathodic-protection surveys, to assess the integrity of each segment of Line 901 and Line 903, and such a failure was a contributing factor to the cause or severity of the Refugio Incident.

**COUNT EIGHTEEN**

*(Pipeline Safety Laws – Failure to Properly Develop a Leak-Detection System as*
*a Preventive and Mitigative Measure for Line 901 and Line 903)*

149.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-30-

150.   Plains violated 49 C.F.R. § 195.452(i)(3) by failing to properly develop a leak-detection system as a preventive and mitigative measure to mitigate the consequences of a pipeline failure that could affect HCAs in the vicinity of Line 901 and Line 903, and such a failure was a contributing factor to the cause or the severity of the Refugio Incident.  Specifically, when developing Plains' leak-detection system, Plains failed to properly evaluate the capability of Plains' leak-detection means and to modify the system, as well as consider the length and size of the pipeline, the type of product carried, the swiftness of leak detection, risk-assessment results, and other factors that could affect leak detection, including leaks on idled pipelines.

## COUNT NINETEEN

*(Pipeline Safety Laws – Failure to Evaluate Line 901 and Line 903 as Frequently as Needed to Ensure Their Integrity)*

151.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

152.   Plains violated 49 C.F.R. § 195.452(j)(2) by failing to conduct periodic evaluations of Line 901 and Line 903 as frequently as needed to ensure pipeline integrity, and such a failure was a contributing factor to the cause or the severity of the Refugio Incident.  Specifically, Plains failed to base the frequency of evaluations on risk factors specific to Line 901 and Line 903, including the results of previous ILI surveys and confirmation digs, which should have resulted in lowering the assessment cycle to a one-year rather than a three-year cycle.

## COUNT TWENTY

*(Pipeline Safety Laws – Failure to Maintain IMP Records for Line 901 and Line 903)*

153.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-31-

Complaint.

154.   Plains violated 49 C.F.R. § 195.452(l)(1)(ii) by failing to maintain and make available for inspection, for the useful life of Line 901 and Line 903, IMP pipeline records demonstrating compliance with 49 C.F.R. § 195.452. Plains failed to maintain and make available decisions and analyses, including modifications, justifications, deviations and determinations made, variances, and actions taken, to implement and evaluate Plains' IMP.

### COUNT TWENTY-ONE

*(Pipeline Safety Laws – Failure to Make Non-Integrity Management Repairs to Line 901 and Line 903 Within a Reasonable Time)*

155.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

156.   Plains violated 49 C.F.R. § 195.401(b)(1) by failing to make non-integrity management repairs to Line 901 and Line 903 within a reasonable time after discovering that it could not cathodically protect Line 901 and Line 903 from external corrosion, and such a failure was a contributing factor to the cause or the severity of the Refugio Incident.

### COUNT TWENTY-TWO

*(Pipeline Safety Laws – Failure to Conduct Adequate Examinations of Exposed Portions of Line 901)*

157.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

158.   Plains violated 49 C.F.R. § 195.569 by failing to conduct a proper examination of portions of Line 901 that had been exposed for repairs, and such a failure was a contributing factor to the cause or the severity of the Refugio Incident.

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

## COUNT TWENTY-THREE

*(Pipeline Safety Laws – Failure to Report a Crude-Oil Release on Line 901 at the Earliest Practicable Moment)*

159.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

160.   Plains violated 49 C.F.R. § 195.52(a)(4) by failing to give notice of the Refugio Incident to the National Response Center at the earliest practicable moment following Plains' discovery of the Refugio Incident.

## COUNT TWENTY-FOUR

*(Pipeline Safety Laws – Failure to Take Necessary Action to Minimize the Volume of Oil Released in the Refugio Incident)*

161.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

162.   Plains violated 49 C.F.R. § 195.402(e)(4) by failing to take necessary actions, as specified in Plains' Emergency Response Procedures, to isolate the ruptured pipeline segment for approximately three hours after the Refugio Incident began.

## COUNT TWENTY-FIVE

*(Pipeline Safety Laws – Failure to Update Plains' Emergency-Response Training Program, as Necessary, to Ensure It Was Effective)*

163.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

164.   Plains violated 49 C.F.R. § 195.403(b)(2) by failing to update and make appropriate changes to Plains' emergency-response training program, as necessary, to ensure that it was effective, and such a failure was a contributing

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-33-

factor to the cause or severity of the Refugio Incident.  Specifically, Plains failed to update Plains' training program to take into account changed conditions on Line 901 that allowed a direct pathway for crude oil to reach the Pacific Ocean in the event of a release.

## COUNT TWENTY-SIX

*(Pipeline Safety Laws – Failure to Conduct Facility Response Plan Training)*

165.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

166.   Plains violated 49 C.F.R. § 194.117(a)(3)(ii) by failing to conduct training to ensure that personnel engaged in potential response activities along Line 901 and Line 903 were aware of conditions that could potentially worsen emergencies, including the consequences of facility malfunctions or failures, the location of the Culvert, and appropriate corrective actions, and such a failure was a contributing factor to the cause or severity of the Refugio Incident.

## COUNT TWENTY-SEVEN

*(Pipeline Safety Laws – Failure to Require and Verify that Supervisors Maintained a Thorough Knowledge of Plains' Emergency-Response Procedures)*

167.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

168.   Plains violated 49 C.F.R. § 195.403(c) by failing to require and verify that Plains' pipeline supervisors responsible for emergency response in the area where Line 901 and Line 903 were located maintained a thorough knowledge of that portion of Plains' emergency-response procedures established under 49 C.F.R. § 195.402 for which they were responsible to ensure compliance.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

**COUNT TWENTY-EIGHT**

*(Pipeline Safety Laws – Failure to Follow Plains' Procedures for Responding to Abnormal Operations)*

169.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

170.   Plains violated 49 C.F.R. § 195.402(d)(1) by failing, on the day of the Refugio Incident, to follow Plains' manual of written procedures for responding to abnormal operations on Line 901 and Line 903, and such a failure was a contributing factor to the cause or severity of the Refugio Incident. Specifically, Plains' procedures required personnel to respond to, investigate, and correct the causes of unintended valve closures, unintended pump shut-downs, and other malfunctions that could exacerbate the consequences of a release.

**COUNT TWENTY-NINE**

*(Pipeline Safety Laws – Failure to Conduct an Analysis of the Cause(s) of the Refugio Incident and to Minimize a Recurrence, or, Alternatively, to Provide the Analysis to PHMSA)*

171.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

172.   Plains violated 49 C.F.R. § 195.402(c)(5) and (6) by failing to follow Plains' IMP requirement that Plains analyze the cause(s) of the Refugio Incident and minimize the possibility of a recurrence.  Despite requests from PHMSA for a copy of this analysis under PHMSA's August 19, 2015 RFI and PHMSA's First Subpoena, Plains failed to produce this analysis.

173.   In the alternative, if Plains performed the analysis described in the preceding Paragraph but failed to provide it to PHMSA, then Plains violated 49 C.F.R. § 195.60 by failing to make available to PHMSA all records and

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-35-

information that pertain in any way to the Refugio Incident, and by failing to afford all reasonable assistance to PHMSA in its Refugio Incident investigation.

## COUNT THIRTY

*(Pipeline Safety Laws – Failure to Make Appropriate Changes to Plains'*
*Control-Room Procedures Applicable to Lines 901 and 903 to*
*Ensure They Were Effective)*

174.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

175.   Plains violated 49 C.F.R. § 195.402(a) by failing to make appropriate changes as necessary to ensure the effectiveness of Plains' Master Control Room ("CR") procedures.  Prior to the Refugio Incident, Plains identified specific changes that were needed in Plains' CR procedures but failed to revise them in a timely manner to ensure that they were effective.

## COUNT THIRTY-ONE

*(Pipeline Safety Laws – Failure to Follow Plains' Procedures for Inhibiting*
*Control-Room Alarms)*

176.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

177.   Plains violated 49 C.F.R. § 195.402(a) by failing to follow Plains' own written procedures for inhibiting CR alarms.  Plains' control-room supervisors failed to consult with and obtain the approval of console supervisors before inhibiting the Line 901 alarms on the day of the Refugio Incident, and such a failure was a contributing factor to the cause or severity of the Refugio Incident.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-36-

## COUNT THIRTY-TWO

*(Pipeline Safety Laws – Failure to Ensure Control-Room Alarms Were Accurate and Set at Values Sufficient to Support Safe Pipeline Operations for Line 901 and Line 903)*

178.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

179.   Plains violated 49 C.F.R. § 195.446(e)(1) by failing to follow Plains' alarm management plan to ensure effective controller responses to alarms on Line 901 and Line 903, and such a failure was a contributing factor to the cause or severity of the Refugio Incident.  Specifically, Plains failed to set CR alarms accurately and effectively so that controllers could effectively identify potential crude-oil releases and take steps to minimize them.

## COUNT THIRTY-THREE

*(Pipeline Safety Laws – Failure to Verify Correct Safety-Related Alarm Set-Point Values and Alarm Descriptions)*

180.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

181.   Plains violated 49 C.F.R. § 195.446(e)(3) by failing to verify that Plains' alarm management plan used the correct safety-related alarm set-point values and alarm descriptions on Line 901 and Line 903.

## COUNT THIRTY-FOUR

*(Pipeline Safety Laws – Failure to Review the Refugio Incident to Determine If Master Control-Room Actions Contributed to the Event and, If So, Whether They Were Corrected or, Alternatively, to Provide the Analysis to PHMSA)*

182.   Plaintiff the United States refers to and incorporates by reference as

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

though fully set forth herein each and every foregoing Paragraph of this Complaint.

183.   Plains violated 49 C.F.R. § 195.446(g)(1) by failing to review the Refugio Incident to determine if CR actions contributed to the Refugio Incident and, if so, correct deficiencies related to: controller fatigue; field equipment; the operation of relief devices; control-room procedures; supervisory control and data acquisition (SCADA) system configuration; or SCADA system performance.  Despite requests from PHMSA for a copy of this analysis under PHMSA's August 19, 2015 and September 1, 2016 RFIs, PHMSA's First Subpoena, and PHMSA's Second Subpoena, Plains failed to produce this analysis.

184.   In the alternative, if Plains performed the analysis described in the preceding Paragraph but failed to provide it to PHMSA, then Plains violated 49 C.F.R. § 195.60 by failing to make available to PHMSA all records and information that pertain in any way to the Refugio Incident, and by failing to afford all reasonable assistance to PHMSA in its Refugio Incident investigation.

## COUNT THIRTY-FIVE

*(Pipeline Safety Laws – Failure of Field Personnel to Follow Plains' Procedures to Contact the Control Room When Conducting Operations That Could Affect Control-Room Operations)*

185.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

186.   Plains violated 49 C.F.R. § 195.446(f)(2) by failing to follow CR procedures when making field changes on Line 903 that could affect CR operations.

**COUNT THIRTY-SIX**

*(Pipeline Safety Laws – Failure to Maintain Valves Necessary for Safe Pipeline Operations to Be in Good Working Order at All Times)*

187.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

188.   Plains violated 49 C.F.R. § 195.420(a) by failing to maintain valves necessary for the safe operation of Line 901 and Line 903.

**COUNT THIRTY-SEVEN**

*(Pipeline Safety Laws – Failure to Conduct All Required Post-Accident Drug Testing Following the Refugio Incident)*

189.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

190.   Plains violated 49 C.F.R. § 199.105(b) by failing to drug test each covered employee whose performance of a covered function either contributed to the Refugio Incident or could not be completely discounted as a contributing factor to the Refugio Incident.

**COUNT THIRTY-EIGHT**

*(Pipeline Safety Laws – Failure to Conduct All Required Post-Accident Alcohol Testing Following the Refugio Incident)*

191.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

192.   Plains violated 49 C.F.R. § 199.225(a) by failing to alcohol test each covered employee whose performance of a covered function either contributed to the Refugio Incident or could not be completely discounted as a contributing factor to the Refugio Incident.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

**COUNT THIRTY-NINE**

*(Pipeline Safety Laws – Failure to Comply with PHMSA's Subpoenas to Plains Seeking Compliance with Information Requests)*

193.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

194.   Plains violated 49 U.S.C. § 60117 and 49 C.F.R. §§ 190.7 and 190.203(c) by failing to comply with PHMSA's First Subpoena and PHMSA's Second Subpoena.

**COUNT FORTY**

*(Pipeline Safety Laws – Failure to Provide All Reasonable Assistance in PHMSA's Investigation of the Refugio Incident)*

195.   Plaintiff the United States refers to and incorporates by reference as though fully set forth herein each and every foregoing Paragraph of this Complaint.

196.   Plains: a) failed to adequately respond to PHMSA's First Subpoena and PHMSA's Second Subpoena; b) refused to allow one or more of Plains' personnel to be interviewed by PHMSA representatives regarding the Refugio Incident; c) failed to conduct or provide PHMSA a post-Refugio Incident report; and d) failed to provide other documents and information.

197.   Plains violated 49 C.F.R. § 190.203(e) by failing to provide all reasonable assistance in the investigation of the Refugio Incident.

198.   Plains violated 49 C.F.R. § 190.203(e) by failing to make available to PHMSA all records and information that pertained to the Refugio Incident.

199.   Plains violated 49 C.F.R. § 190.203(e) by obstructing an inspection and investigation of the Refugio Incident by taking actions that were known or reasonably should have been known to prevent, hinder, or impede the Refugio Incident investigation without good cause.

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

1

## COUNT FORTY-ONE

2

*(Penalties Under Elder California Pipeline Safety Act of 1981 – California*

3

*Government Code § 51018.6)*

4

200.   Plaintiff OSFM refers to and incorporates by reference as though

5

fully set forth herein each and every foregoing Paragraph of this Complaint.

6

201.   Prior to the Refugio Incident and continuing through the present day,

7

Line 2000 was and is an "intrastate pipeline" within the meaning of California

8

Government Code Section 51010.5(a).  In approximately February 2016, Line

9

901 became an "intrastate pipeline" within the meaning of California

10

Government Code Section 51010.5(a).  In approximately April 2016, Line 903

11

became an "intrastate pipeline" within the meaning of California Government

12

Code Section 51010.5(a).

13

202.   As intrastate pipelines, Lines 901, 903, and 2000 are subject to the

14

regulatory authority of the OSFM.

15

203.   Lines 901, 903, and 2000 were constructed after January 1, 1984

16

and, at all times relevant to this Complaint, normally operated under conditions

17

of constant flow and pressure.

18

204.   Intrastate pipelines must adhere to federal regulations adopted

19

pursuant to California Government Code Section 51011, which provides that

20

OSFM will "adopt hazardous liquid pipeline safety regulations in compliance

21

with the federal law relating to hazardous liquid pipeline safety."  OSFM's

22

adoption of Title 49, Sections 195.401, 195.402, 195.563 of the Code of Federal

23

Regulation, which govern procedures and methods of operation for pipelines and

24

valves, including those applicable to cathodic protection, is reflected in Title 19,

25

Section 2000 of the California Code of Regulations, which provides that "Title

26

49 of the Code of Federal Regulations, Part 195 is hereby adopted by reference as

27

it relates to hazardous liquid pipelines."

28

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-41-

205.   California Government Code Section 51012.3(a) requires every operator of pipelines such as Lines 901, 903, and 2000 to conform to federal regulations in Subparts A to F, inclusive, of Part 195 of Title 49 of the Code of Federal Regulations pursuant to the schedule set forth therein.  California Government Code Section 51012.3(a)(1) provides in pertinent part that, for pipelines constructed after January 1, 1984, "the pipeline operator shall meet the requirements of subsection (c) of Section 195.401 of Title 49 of the Code of Federal Regulations . . ."  California Government Code Section 51012.3(a)(2) provides in pertinent part that "[o]perators of intrastate pipelines subject to federal regulation . . . shall meet the requirements of Section 195.402 of Title 49 of the Code of Federal Regulations on or before April 23, 1987."  California Government Code Section 51012.3(a)(3) provides that, pursuant to a schedule commencing on October 21, 1986 and ending on October 19, 1988, pipelines such as Lines 901, 903, and 2000 "shall meet the cathodic protections requirements of subdivision (a) of Section 195.414 of Title 49 of the Code of Federal Regulations . . ."

206.   California Government Code Section 51013(a) provides in pertinent part that "[a]ny new pipeline constructed after January 1, 1984, and which normally operates under conditions of constant flow and pressure, shall be designed and constructed in accordance with Subparts C and D of Part 195 of Title 49 of the Code of Federal Regulations, and shall include a means of leak detection and cathodic protection which the [OSFM] determines is acceptable, . . . ."

207.   At all times relevant to this Complaint and through and including January 27, 2019, Lines 901, 903, and 2000 were equipped with cathodic protection that was ineffective and inadequate for reasons such as elevated temperatures, disbonded coatings, thermal insulating coatings, and shielding. The cathodic protection of Lines 901, 903, and 2000 therefore failed to comply

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-42-

with Title 49, Section 195.563 of the Code of Federal Regulation and which OSFM had not determined to be acceptable.  Accordingly, OSFM determined that Plains violated Title 19, Section 2000 of the California Code of Regulations and California Government Code Sections 51012.3(a)(3) and 51013(a) through and including January 27, 2019.

208.   As alleged above, at all times relevant to this Complaint, Plains did not have an adequate Integrity Management Plan applicable to Lines 901, 903 and 2000.  In addition, Plains did not have in place and did not follow acceptable procedures for pipeline and valve operations.  Accordingly, Plains failed to comply with Sections 195.401 and 195.402 of the Code of Federal Regulations pursuant to the schedule set forth in California Government Code Sections 51012.3(a)(1) and 51012.3(a)(2).

209.   California Government Code Section 51018(a) provides: "Every rupture, explosion, or fire involving a pipeline, including a pipeline system otherwise exempted by subdivision (a) of Section 51010.5, and including a pipeline undergoing testing, shall be immediately reported by the pipeline operator to the fire department having fire suppression responsibilities and to the California Emergency Management Agency."  Plains waited more than 80 minutes to notify the California Emergency Management Agency of the Refugio Incident, thereby violating California Government Code Section 51018(a) by failing to provide immediate notification.

210.   California Government Code Section 51018.6(b) provides that a "person" who the OSFM has determined "violated this chapter or any regulation adopted pursuant thereto . . . is subject to a civil penalty of not more than two hundred thousand dollars for each day that violation persists, except that the maximum civil penalty shall not exceed two million dollars for any related series of violations."  California Government Code Section 51018.6(d) provides that a

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-43-

"civil penalty assessed under subdivision (b) may be recovered in an action brought by the Attorney General on behalf of the state."

211.   Plains constitutes a "person" under California Government Code Section 17, which defines "person" to include a "firm, association, organization, partnership, limited liability company, business trust, corporation, or company."

212.   By virtue of the abovementioned violations, Plains is liable for civil penalties under California Government Code Section 51018.6(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

A.     Issue an order requiring Plains to take all appropriate action to prevent future discharges of oil into waters of the United States, waters of the State of California, and adjoining shorelines;

B.     Issue an order enjoining Plains from operating a pipeline without taking adequate measures to ensure safety and protection of the environment;

C.     Issue an order enjoining Plains from operating a pipeline without adequate measures to ensure compliance with the Pipeline Safety Laws;

D.     Issue an order enjoining Plains from operating a pipeline without adequate measures to ensure compliance with the Elder California Pipeline Safety Act of 1981;

E.     Under the CWA, enter judgment against Plains and award the United States civil penalties in an amount up to $2,100 per barrel of oil discharged by the Refugio Incident, or, if it is established that the discharges were the result of gross negligence or willful misconduct, in an amount up to $5,300 per barrel of oil discharged;

F.     Under OPA, enter judgment against Plains and award the United States, CDFW, and CDPR damages for, *inter alia*, injuries to, destruction of, and loss of natural resources, including the reasonable costs of assessing the damage;

G.     Under OPA, enter judgment against Plains and award CDPR

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-44-

damages for, *inter alia*, lost revenues and/or lost profits resulting from the closure of CDPR state beaches, including Refugio State Beach and El Capitan State Beach, as well as the destruction of CDPR property;

H.     Under California Government Code Section 8670.56.5, enter judgment against Plains and award CDFW, CDPR, CSLC, and UC costs and damages, including natural resource damages;

I.     Under California Government Code Section 8670.66(a), enter judgment against Plains and award CDFW civil penalties in an amount up to $1,000,000 per violation;

J.     Under California Government Code Section 8670.66(b), enter judgment against Plains and award CDFW civil penalties in an amount up to $250,000 per violation;

K.     Enter judgment against Plains and award CCRWQCB civil penalties in an amount up to $20 per gallon discharged or up to $15,000 per day of violation (whichever is greater) for violations of California Water Code Section 13350, or in the alternative, civil penalties in an amount up to $25,000 per day of violation plus $25 per gallon of waste discharged in excess of 1,000 gallons not cleaned up pursuant to California Water Code section 13385;

L.     Under California Fish and Game Code Section 5650, enter judgment against Plains and award CDFW civil penalties in an amount up to $25,000 per violation;

M.     Under California Fish and Game Code Section 12016, enter judgment against Plains and award CDFW all actual damages to fish, plant, bird, or animal life, or their habitat and reasonable cost incurred in cleaning up the deleterious substance or material or abating its effects;

N.     Under California Fish and Game Code Section 2014, enter judgment against Plains and award CDFW damages in an amount that will compensate for all detriment proximately caused by the destruction of birds, mammals, fish,

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-45-

reptiles, or amphibians;

O.      Under California Government Code Section 51018.6, enter judgment against Plains and award OSFM civil penalties;

P.      Under the Pipeline Safety Laws, enter judgment against Plains and award the United States civil penalties;

Q.      Award CDFW and CCRWQCB all their costs, attorneys' fees, and expert fees as authorized by law, including but not limited to those allowed pursuant to California Code of Civil Procedure Section 1021.8;

R.      Require Plains to comply with all reporting requirements, information requests, and subpoenas issued by the United States; and

S.      Grant such other and further relief as the Court deems just and proper.

//
//
//

*United States of America and the People of the State of California v.
Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-46-

1    Respectfully submitted this 13th day of March 2020.

2

3    FOR THE UNITED STATES:

4

5                                    BRUCE S. GELBER

6                                    Deputy Assistant Attorney General

7                                    Environment and Natural Resources
                                     Division
8

9                                    By:    /s/ Bradley R. O'Brien
                                     BRADLEY R. O'BRIEN
10                                   Senior Attorney
                                     ANGELA MO
11                                   Trial Attorney
12                                   Environmental Enforcement Section
                                     United States Department of Justice
13                                   *Counsel for Plaintiff United States of*
                                     *America*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-47-

1    FOR THE CALIFORNIA DEPARTMENT OF FISH AND WILDLIFE,
2    CENTRAL COAST REGIONAL WATER QUALITY CONTROL BOARD,
     AND CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE
3    PROTECTION'S OFFICE OF STATE FIRE MARSHAL:

4

5                       XAVIER BECERRA
6                       Attorney General of California

7

8                       By: _____

8                       MICHAEL ZARRO
9                       JESSICA BARCLAY-STROBEL
                        Deputy Attorneys General
10                      *Counsel for Plaintiffs California*
11                      *Department of Fish and Wildlife, Central*
                       *Coast Regional Water Quality Control*
12                      *Board, and California Department of*
13                      *Forestry and Fire Protection's Office of*
14                      *State Fire Marshal*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-48-

1    FOR THE CALIFORNIA DEPARTMENT OF PARKS AND RECREATION
2    AND CALIFORNIA STATE LANDS COMMISSION:

3

4                          XAVIER BECERRA
                           Attorney General of California
5

6                          By: _____
7                          MITCHELL RISHE
                           NICOLE RINKE
8                          Deputy Attorneys General
9                          *Counsel for Plaintiffs California
                           Department of Parks and Recreation and
10                         California State Lands Commission*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Complaint

-49-

1   FOR THE REGENTS OF THE UNIVERSITY OF CALIFORNIA:

2

3                           CHARLES F. ROBINSON
4                           General Counsel
                            The Regents of the University of California
5

6                           By: _____
7                           BARTON LOUNSBURY
                            Senior Counsel
8                           *Counsel for Plaintiff The Regents of the*
9                           *University of California*