1  BRUCE S. GELBER
2  Deputy Assistant Attorney General
   Environment and Natural Resources Division
3  United States Department of Justice
   Washington, D.C. 20530
4  BRADLEY R. O'BRIEN (CA Bar Number: 189425)
5  Senior Attorney
   ANGELA MO (CA Bar Number: 262113)
6  Trial Attorney
7  Environmental Enforcement Section
   United States Department of Justice
8  301 Howard Street, Suite 1050
   San Francisco, California 94105
9  Tel: (415) 744-6484;
   Tel: (202) 514-1707
10 E-mail: brad.obrien@usdoj.gov
11 E-mail: angela.mo@usdoj.gov
   Counsel for Plaintiff United States of America
12

13          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| UNITED STATES OF AMERICA, and the PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* DEPARTMENT OF FISH AND WILDLIFE, PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* CENTRAL COAST REGIONAL WATER QUALITY CONTROL BOARD, *ex rel.* CALIFORNIA DEPARTMENT OF PARKS AND RECREATION, *ex rel.* CALIFORNIA STATE LANDS COMMISSION, *ex rel.* CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION'S OFFICE OF STATE FIRE MARSHAL, and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P. and PLAINS PIPELINE, L.P.,<br><br>　　　　Defendants. | Civil Action No.<br><br>2:20-cv-02415<br><br>**CONSENT DECREE** |

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

XAVIER BECERRA
Attorney General of California
ERIC M. KATZ
Supervising Deputy Attorney General
MICHAEL ZARRO (CA Bar Number: 110171)
JESSICA BARCLAY-STROBEL (CA Bar Number: 280361)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Tel: (213) 269-6635
E-mail: Jessica.BarclayStrobel@doj.ca.gov
*Counsel for Plaintiffs California Department of Fish and Wildlife, Central Coast
Regional Water Quality Control Board, and California Department of Forestry
and Fire Protection's Office of State Fire Marshal*

XAVIER BECERRA
Attorney General of California
CHRISTINA BULL ARNDT
Supervising Deputy Attorney General
NICOLE RINKE (CA Bar Number: 257510)
MITCHELL E. RISHE (CA Bar Number: 193503)
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Tel: (213) 269-6394
E-mail: Mitchell.Rishe@doj.ca.gov
*Counsel for Plaintiffs California Department of Parks and Recreation and
California State Lands Commission*

MARGARET WU (CA Bar Number: 116588)
Deputy General Counsel
BARTON LOUNSBURY (CA Bar Number: 253895)
Senior Counsel
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, California 94607-5200
Tel: (510) 987-9800
E-mail: barton.lounsbury@ucop.edu
*Counsel for Plaintiff The Regents of the University of California*

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

# TABLE OF CONTENTS

I.  BACKGROUND ................................................... - 5 -

II.  JURISDICTION AND VENUE ................................. - 6 -

III.  APPLICABILITY .............................................. - 7 -

IV.  DEFINITIONS ................................................ - 7 -

V.  CIVIL PENALTIES .......................................... - 13 -

VI.  NATURAL RESOURCE DAMAGES ............................ - 17 -

VII.  TRUSTEES' MANAGEMENT AND APPLICABILITY
      OF JOINT NRD FUNDS ..................................... - 21 -

VIII.  TRUSTEES' MANAGEMENT OF RECREATIONAL
      USE FUNDS ................................................. - 22 -

IX.  INJUNCTIVE RELIEF ....................................... - 23 -

X.  CORRECTIVE ACTION ORDER .............................. - 27 -

XI.  STIPULATED PENALTIES ................................... - 27 -

XII.  FORCE MAJEURE ............................................ - 35 -

XIII.  DISPUTE RESOLUTION .................................... - 37 -

XIV.  REPORTING ................................................ - 39 -

XV.  CERTIFICATION ............................................ - 40 -

XVI.  INFORMATION COLLECTION AND RETENTION ............. - 40 -

XVII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........... - 43 -

XVIII.  TRANSFER AND ACQUISITION OF ASSETS ................. - 49 -

XIX.  COSTS ..................................................... - 50 -

XX.  NOTICES ................................................... - 51 -

XXI.  EFFECTIVE DATE ........................................... - 54 -

XXII.  RETENTION OF JURISDICTION ............................ - 54 -

XXIII.  MODIFICATION ........................................... - 54 -

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

XXIV.   TERMINATION ................................................................- 55 -

XXV.    PUBLIC PARTICIPATION.................................................- 56 -

XXVI.   SIGNATORIES/SERVICE ................................................- 56 -

XXVII.  INTEGRATION .............................................................- 57 -

XXVIII. FINAL JUDGMENT ......................................................- 57 -

XXIX.   26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION ................- 57 -

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

A.      WHEREAS, on or about May 19, 2015, a hazardous liquid pipeline known as the Line 901 pipeline ("Line 901") owned and operated by Plains Pipeline, L.P., a wholly owned subsidiary of Plains All American Pipeline, L.P., (jointly, "Plains" or "Defendants"), failed and discharged approximately 2,934 barrels of heavy crude-oil ("Refugio Incident") in Santa Barbara County, California.  A portion of the oil reached the Pacific Ocean and coastal areas such as Refugio State Beach.  The Refugio Incident adversely impacted Natural Resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States and the State of California ("California" or the "State").

B.      WHEREAS, cleanup actions began immediately after the Refugio Incident at the direction of a Unified Command established by the United States Coast Guard ("USCG") and the State of California Department of Fish and Wildlife ("CDFW"), Office of Spill Prevention and Response ("OSPR").  The Unified Command was comprised of the United States, State agencies, the County of Santa Barbara, and Plains.

C.      WHEREAS, on May 21, 2015, the United States Department of Transportation's Pipeline and Hazardous Materials Safety Administration ("PHMSA") issued Plains a Corrective Action Order ("Original CAO"), CPF No. 5-2015-5011H, which was subsequently amended on June 3, 2015 ("CAO Amendment No. 1"), November 12, 2015 ("CAO Amendment No. 2"), and June 16, 2016 ("CAO Amendment No. 3"), (collectively, "the PHMSA CAO").  The PHMSA CAO directed Plains, among other things, to purge Line 901 and a portion of the adjoining Line 903 pipeline ("Line 903"), between Plains' Gaviota and Pentland pump stations, and to keep Line 901 and the purged sections of Line 903 shut down until the actions required by the PHMSA CAO were satisfactorily completed.

D.      WHEREAS, on May 19, 2016, PHMSA issued a Failure Investigation Report, which included PHMSA's findings of the "proximate or direct" causes and the "contributing" causes of the Refugio Incident.

E.      WHEREAS, Defendants reimbursed Plaintiffs' costs incurred for cleanup, and Plaintiffs have no known unreimbursed claims for cleanup costs arising from the Refugio Incident.

F.      WHEREAS, CDFW incurred certain additional costs arising from the administration and civil enforcement of pollution laws, including attorneys' fees that have been reimbursed by Plains.

G.      WHEREAS, Plains represents that it has implemented and will continue to utilize an electronic tracking tool and software for maintenance activities, including those activities related to mainline valves.  The software tracks which maintenance activities are performed, who performs the activity, when prior notifications of maintenance activities by field personnel are received, when problems requiring maintenance are first discovered, and when maintenance problems are corrected.  Plains maintains a separate software program to track the training and qualifications of all maintenance personnel.

H.      WHEREAS, Plains represents that, following the Refugio Incident and pursuant to PHMSA's CAO, Plains performed a comprehensive review of its Emergency Response Plan and Training Program, and revised and updated its Response Plan for Onshore Oil Pipelines for Line 901 and Line 903 ("Bakersfield District Response Zone Plan") to reflect modifications resulting from the review and the incorporation of lessons learned.  As part of the revision, Plains identified the locations of culverts along the pipelines' rights-of-way and provided containment and recovery techniques for responding to spills that may occur near those culverts.  Plains provided drafts of the updated Bakersfield District Response Zone Plan to PHMSA, incorporated comments provided by PHMSA, and received approval of the revised plan from PHMSA on September 26, 2017.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

I.      WHEREAS, Plains represents that it also created a more detailed Geographic Information System ("GIS") based online Tactical Response Plan for its onshore oil pipelines in Southern California, including Line 2000 and the operational portion of Line 903, that, among other things, identifies culverts along the pipelines' rights-of-way, potential receptors and the equipment, supplies and resources that would be necessary to respond to a spill occurring at any given location along those pipelines, identifies the sources and locations for obtaining those resources, and, in some instances, establishes stored inventories of those resources in specific locations.  Plains represents that it intends to keep its Tactical Response Plan updated and available for use in drills and spill response, and that it will make the Tactical Response Plan available to the Plaintiffs upon reasonable request and as needed in connection with a drill or response to a spill.

J.      WHEREAS, Plains represents that Plains personnel responding to incidents that trigger the standup of an incident command structure ("ICS") have been provided ICS training appropriate to their responsibilities.

K.      WHEREAS, the relevant Natural Resources trustees ("Trustees") for the Refugio Incident are the United States Department of the Interior ("DOI"); United States Department of Commerce, on behalf of the National Oceanic and Atmospheric Administration ("NOAA"); CDFW; California Department of Parks and Recreation ("CDPR"); California State Lands Commission ("CSLC"); and The Regents of the University of California ("UC").

L.      WHEREAS, pursuant to Section 1006 of the Oil Pollution Act (''OPA''), 33 U.S.C. 2701, *et seq*., the United States and the State Trustees allege that oil from the Refugio Incident caused injuries to Natural Resources, including birds, marine mammals, shoreline and subtidal habitats, and also had an impact upon human uses of Natural Resources and other public resources. The Federal Trustees are designated pursuant to the National Contingency Plan,

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 3 -

40 C.F.R. § 300.600 and Executive Order 12777.  CDFW and CDPR are designated state trustees pursuant to the National Contingency Plan, 40 C.F.R. § 300.605, and the Governor's Designation of State Natural Resource Trustees pursuant to Section 1006(b)(3) of OPA and the Comprehensive Environmental Response, Compensation and Liability Act of 1980.  In addition, CDFW has state natural resource trustee authority pursuant to California Fish and Game Code §§ 711.7 and 1802 and the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act (California Government Code § 8670.1 *et seq*.).  CDPR and UC have jurisdiction over natural resources within the state park system and the UC Natural Reserve System, respectively, which are held in trust for the people of the State of California.  CSLC is a state trustee pursuant to its jurisdiction under Public Resources Code § 6301 and Civil Code § 670.

M.     WHEREAS, after the Refugio Incident, the Trustees and Defendants entered into a cooperative Natural Resource Damage Assessment process pursuant to 15 C.F.R. § 990.14, whereby the Trustees and Defendants jointly and independently planned and conducted a number of injury assessment activities. These activities included gathering and analyzing data and other information that the Trustees used to determine and quantify resource injuries and damages.  As a result of this process and other activities, the Trustees identified several categories of injured and damaged Natural Resources, including birds, marine mammals, and shoreline and subtidal habitats, as well as effects to human use/recreation resulting from impacts on these Natural Resources, and determined the cost to restore, rehabilitate, replace, or acquire the equivalent of injured Natural Resources.  By entering this Consent Decree, Defendants do not admit or agree that the Trustees' NRD findings and determinations are accurate.

N.     WHEREAS, due to the specific facts surrounding the Refugio Incident, including the timing, degree, and nature of the spill and the affected

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 4 -

environment, the Trustees will not seek additional damages, costs, or expenses for Natural Resources resulting from the Refugio Incident.

O.      WHEREAS, Plains agrees to reimburse costs incurred by the Trustees in connection with the NRDA through November 15, 2018, and will not reimburse costs incurred by the Trustees in connection with the NRDA after that date.

P.      WHEREAS, by entering into this Consent Decree, Plains does not admit the allegations in the Complaint filed in this action, or any liability to the Plaintiffs.

Q.      WHEREAS, on January 28, 2019, PHMSA initiated a regularly-scheduled "Integrated Inspection" of a portion of Defendants' Regulated Pipelines, as described below, and other pipeline facilities and records, pursuant to 49 U.S.C. § 60117.

R.      WHEREAS, the Parties agree that settlement of this matter without further litigation is in the public interest and that the entry of this Consent Decree is the most appropriate means of resolving this action.

S.      WHEREAS, the Parties agree and the Court by entering this Consent Decree finds, that this Consent Decree:  (1) has been negotiated by the Parties at arm's-length and in good faith; (2) will avoid prolonged litigation between the Parties; (3) is fair and reasonable; and (4) furthers the objectives of the federal and state environmental protections, and the federal and state pipeline safety laws.

## I.      BACKGROUND

The United States, on behalf of PHMSA, the United States Environmental Protection Agency ("EPA"), DOI, NOAA, and USCG; and the People of the State of California *Ex Relatione* CDFW, CDPR, CSLC, UC, the California Central Coast Regional Water Quality Control Board ("RWQCB"), and the California Department of Forestry and Fire Protection's - Office of the State Fire

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

Marshal ("OSFM"), filed a Complaint in this matter pursuant to the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*., and associated regulations and orders; OPA, 33 U.S.C. §§ 2701 *et seq.*, and associated regulations and orders; the federal Pipeline Safety Laws, 49 U.S.C. §§ 60101 *et seq*., and associated regulations and orders; the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, California Government Code §§ 8670.1 *et seq.* and associated regulations; California Fish and Game Code §§ 2014, 5650, 5650.1, 12016, 13013; California Water Code §§ 13350, 13385; and the Elder California Pipeline Safety Act of 1981, California Government Code §§ 51010 *et seq.*  The Complaint against Plains, *inter alia*, asserts allegations of violations, and seeks penalties, injunctive relief, and Natural Resource Damages.

NOW, THEREFORE, before the trial of any claims and without adjudication or admission of any issue of fact or law and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to Section 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E) and (n), Section 1017(b) of OPA, 33 U.S.C. § 2717(b); Sections 60120 and 60122 of the Pipeline Safety Laws, 49 U.S.C. §§ 60120 and 60122; and 28 U.S.C. §§ 1331, 1345, and 1355.  This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.  To the extent the OPA presentment requirement described in 33 U.S.C. § 2713 applies, the United States and the State Agencies have satisfied the requirement.

2.    Venue is proper in this District pursuant to Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), Section 1017(b) of OPA, 33 U.S.C. § 2717(b); Section 60120 of the Pipeline Safety Laws, 49 U.S.C. § 60120; and 28 U.S.C. §§ 1391 and 1395(a), because Plains

does business in this District and the alleged claims occurred in this District.

3.      For purposes of this Consent Decree or any action to enforce this Consent Decree, Defendants consent to the Court's jurisdiction over this Consent Decree for such action and Defendants consent to venue in this judicial district. For purposes of this Consent Decree and without admission of liability, Defendants agree that the Complaint states claims upon which relief may be granted.

### III.   APPLICABILITY

4.      Subject to the terms herein, the obligations of this Consent Decree apply to and are binding upon the Parties and any successors, assigns, as well as any other entities or persons otherwise bound by law to comply with this Consent Decree.

5.      Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include ensuring compliance with any provision of this Consent Decree, as well as to any contractor retained for the purpose of performing work required under this Consent Decree.  Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree by specifying that contractors are obligated to perform work in compliance with this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### IV.   DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the CWA, OPA, Pipeline Safety Laws, the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, and the Elder California Pipeline Safety Act of 1981 shall

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

have the meanings assigned to them in these statutes and their regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Appendix A" is the set of maps that generally depict Lines 901, 903, and 2000;

"Appendix B" is the Injunctive Relief that Plains is required to perform under this Consent Decree;

"Appendix C" is intentionally left blank;

"Appendix D" is the list of remaining corrective actions from the PHMSA CAO that Plains is still required to implement under this Consent Decree.  For the terms of the PHMSA CAO, *see* https://primis.phmsa.dot.gov/comm/reports/enforce/CaseDetail_cpf_520155011H.html?nocache=4888#_TP_1_tab_1;

"CDFW" shall mean the California Department of Fish and Wildlife and any of its successor departments or agencies;

"CDPR" shall mean the California Department of Parks and Recreation and any of its successor departments or agencies;

"Complaint" shall mean the Complaint filed by the Plaintiffs in this action;

"Consent Decree" shall mean this Consent Decree and all Appendices attached hereto;

"Control Room Management Plan" shall mean Plains' Control Room Management Plan, dated October 2019, and delivered to PHMSA electronically on October 21, 2019, from counsel for Defendants;

"Control Center General Procedures" shall mean Plains' Control Center General Procedures, dated October 2019, and delivered to PHMSA electronically on October 21, 2019, from counsel for Defendants;

"CSLC" shall mean the California State Lands Commission and any of its successor departments or agencies;

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

"Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, the rules set forth in Rule 6 of the Federal Rules of Civil Procedure shall apply;

"Defendants" shall mean Plains All American Pipeline, L.P. and Plains Pipeline, L.P.;

"Delivery Lines" as stated in Appendix B shall mean any pipeline that generally operates to move oil from a delivery meter on a pipeline or facility to another pipeline or facility in close proximity;

"DOI" shall mean the United States Department of the Interior, including its bureaus and agencies, and any of its successor departments or agencies;

"Elder California Pipeline Safety Act" shall mean the Elder California Pipeline Safety Act of 1981, California Government Code §§ 51010 *et seq*.;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" shall have the definition provided in Section XXI (Effective Date);

"Federal Trustees" shall mean DOI and NOAA in their capacities as Natural Resource Trustees;

"Integrity Management Plan" or "IMP" shall mean Plains' Integrity Management Plan, dated September 2019, as delivered to PHMSA by letter dated November 19, 2019, from counsel for Defendants;

"Line 901" is Defendants' 24-inch diameter crude-oil pipeline that extends approximately 10.7 miles in length from the Los Flores Pump Station to the Gaviota Pump Station, in Santa Barbara County, California, as generally depicted in Appendix A;

"Line 903" is Defendants' 30-inch diameter crude-oil pipeline that extends approximately 129 miles in length from the Gaviota Pump Station in Santa Barbara County, California to the Emidio Pump Station in Kern County,

California, with intermediate stations at Sisquoc Mile Post 38.5 and Pentland Mile Post 114.57, as generally depicted in Appendix A;

"Line 2000" is Defendants' 20-inch diameter pipeline that extends approximately 130 miles in length and transports crude-oil produced in the outer continental shelf and the San Joaquin Valley.  Line 2000 runs from Bakersfield, California, over the Tehachapi Mountains and through the Grapevine I-5 corridor and extends to delivery locations in the Los Angeles metropolitan area, as generally depicted in Appendix A;

"Mainline pipeline" as stated in Appendix B shall mean the principal pipeline or the parallel pipeline in a given pipeline system, excluding connected lateral lines or branch lines that are used locally to deliver product either into the mainline pipeline from, or out of the mainline pipeline to, a nearby facility or a third-party line;

"Natural Resource" and "Natural Resources" shall mean land, fish, mammals, birds, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States and/or the State or any subdivision thereof, and shall also mean the services provided by such resources to other resources or to humans;

"Natural Resource Damages" or "NRD" shall mean all damages, including restoration or rehabilitation costs, recoverable by the United States or State Trustees for injuries to, destruction of, loss of, or loss of use of, natural resources including any services such natural resources provide, including the reasonable costs of assessing the damage, as described in 33 U.S.C. § 2702(b)(2)(A), resulting from the Refugio Incident;

"Natural Resource Damage Assessment" or "NRDA" shall mean the process of collecting, compiling, and analyzing information, statistics, or data through prescribed methodologies to determine damages for injuries to Natural

Resources, as described in 15 C.F.R. Part 990, resulting from the Refugio Incident;

"NRD Payment" shall mean the payment Defendants are required to pay for the Natural Resource Damages as described in Section VI (Natural Resource Damages);

"Natural Resource Trustees" or "Trustees" are those federal and state agencies or officials designated or authorized pursuant to the CWA, OPA, and/or applicable state laws to act as Trustees for the Natural Resources belonging to, managed by, controlled by, or appertaining to the United States or the State. Participating Trustees in the Natural Resource Damage Assessment and in this Consent Decree are DOI, NOAA, CDFW, CDPR, CSLC, and UC;

"NOAA" shall mean the National Oceanic and Atmospheric Administration and any of its successor departments or agencies;

"Oil Spill Liability Trust Fund" or "OSLTF" shall mean, *inter alia*, the fund established pursuant to 26 U.S.C. § 9509, including the claim-reimbursement provisions set forth in 33 U.S.C. § 2712;

"OSFM" shall mean the California Department of Forestry and Fire Protection's - Office of the State Fire Marshal and any of its successor departments or agencies;

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral;

"Parties" shall mean the Plaintiffs and Defendants, collectively;

"PHMSA" shall mean the United States Department of Transportation, Pipeline and Hazardous Materials Safety Administration and any of its successor departments or agencies;

"PHMSA Corrective Action Order" or "PHMSA CAO" shall mean the Original CAO issued on May 21, 2015, by PHMSA, which was subsequently amended on June 3, 2015, November 12, 2015, and June 16, 2016;

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

"Pipeline Safety Laws" shall mean 49 U.S.C. §§ 60101 *et seq*., and regulations promulgated thereunder, including 49 C.F.R. Parts 190-199;

"Plaintiffs" shall mean the United States and the State Agencies;

"Refugio Incident" shall mean the release of approximately 2,934 barrels of crude-oil from Plains' Line 901 Pipeline, in Santa Barbara County, California on or about May 19, 2015;

"Regulated Pipeline" shall mean any pipeline operated by Plains subject to regulation under 49 C.F.R. Subchapter D, 19 California Code of Regulations Div. 1 Ch. 14, or the pipeline safety regulations of any other state certified by PHMSA pursuant to 49 U.S.C. § 60105, but excludes facilities other than pipelines;

"Requests for Information" or "RFI" shall mean PHMSA's RFIs dated August 19, 2015, August 21, 2015, and September 1, 2016.  RFIs shall also refer to PHMSA's subpoenas issued to Plains dated July 27, 2016 and June 2, 2017;

"Restore" or "Restoration" shall mean any action or combination of actions to restore, rehabilitate, replace or acquire the equivalent of any Natural Resource and its services, including Natural Resource-based recreational opportunities that were injured, lost, or destroyed as a result of the Refugio Incident;

"RWQCB" shall mean the California Central Coast Regional Water Quality Control Board and any of its successor departments or agencies;

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral;

"Segment" as stated in Appendix B shall mean any contiguous portion of a pipeline system for which a single hydrostatic test or ILI may be performed, as determined by Defendants;

"State Agencies" shall mean the People of the State of California, *Ex Relatione* CDFW, CDPR, CSLC, OSFM, RWQCB, and UC.  The State Agencies do not include any entity or political subdivision of the State of California other than those agencies herein designated the "State Agencies";

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

"State Trustees" shall mean CDFW, CDPR, CSLC, and UC in their capacities as Natural Resource Trustees;

"United States" shall mean the United States of America, on behalf of PHMSA, EPA, DOI, NOAA, and USCG;

"UC" shall mean The Regents of the University of California and any of its successor departments or agencies; and

"USCG" shall mean the United States Coast Guard and any of its successor departments or agencies.

## V.    CIVIL PENALTIES

A.    Within thirty (30) Days after the Effective Date, Defendants shall pay to the United States, CDFW, and RWQCB a total civil penalty of twenty-four million dollars ($24,000,000), together with interest accruing from the date on which the Consent Decree is lodged with the Court, at a rate specified in 28 U.S.C. § 1961 (the "Penalty Payment").  The Penalty Payment shall be allocated as follows:

8.    <u>Penalty Payment to the United States (PHMSA)</u>.  For violations of the Pipeline Safety Laws alleged in the United States' Complaint, Defendants shall pay to the United States a civil penalty of fourteen million five hundred thousand dollars ($14,500,000), together with a proportionate share of the interest accrued on the Penalty Payment.  The Penalty Payment shall be made as follows:

a.    Thirteen million two hundred fifty thousand dollars ($13,250,000) attributed to Plains' alleged Pipeline Safety Law violations; and

b.    One million two hundred fifty thousand dollars ($1,250,000) attributed to Plains' alleged non-compliance with the RFIs.

c.    Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice in accordance with written instructions to be provided to Defendants by the

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 13 -

Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Central District of California Western Division after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> Megan Prout
> Senior Vice President
> Commercial Law and Litigation
> Plains All American Pipeline, L.P.
> 333 Clay Street, Suite 1600
> Houston, TX 77002

on behalf of Defendants.  Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States in accordance with Section XX (Notices).

d.      At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state the payment is for the civil penalty owed pursuant to this Consent Decree in the *United States of America and the People of the State of California v. Plains All American Pipeline, L.P., et al*., and shall reference the Civil Action Number assigned to this case, CDCS Number, and DOJ case number 90-5-1-1-11340, to the United States in accordance with Section XX (Notices).

9.      <u>Penalty Payment to the United States (EPA) shared with CDFW and RWQCB</u>.  The Penalty Payment shall be allocated as follows:

a.      As a CWA penalty for violations of 33 U.S.C. § 1321(b) and

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 14 -

the California statutes alleged in the Complaint other than California Government Code § 8670.66(b), Defendants shall pay a civil penalty of nine million four hundred fifty thousand dollars ($9,450,000), together with a proportionate share of the interest accrued on the Penalty Payment.  The Penalty Payment shall be made as follows:

1)     To CDFW, one million twenty-five thousand dollars ($1,025,000), together with a proportionate share of the interest accrued on the Penalty Payment.  The Penalty Payment shall be made by check payable to California Department of Fish and Wildlife.  The check shall be sent by overnight or certified mail to:

California Department of Fish and Wildlife
Office of Spill Prevention and Response
Attn:  Katherine Verrue-Slater, Senior Counsel
P.O. Box 160362
Sacramento, California 95816-0362

The check shall reference the "Refugio Oil Spill."  CDFW shall deposit the money as follows:  one million dollars ($1,000,000) into the Environmental Enhancement Fund pursuant to California Government Code § 8670.70; and twenty-five thousand dollars ($25,000) into the Fish and Wildlife Pollution Account pursuant to California Fish and Game Code §§ 12017 and 13011.

2)     To RWQCB, two million five hundred thousand dollars ($2,500,000), together with a proportionate share of the interest accrued on the Penalty Payment.  The Penalty Payment shall be made by check payable to the "State Water Pollution Cleanup and Abatement Account" and sent to:

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

State Water Resources Control Board
Division of Administrative Services, ATTN: Civil
Liability Payment
P.O. Box 1888
Sacramento, California 95812-1888

The check shall reference the "Refugio Oil Spill."

3)      To the United States, five million nine hundred twenty-five thousand dollars ($5,925,000), together with a proportionate share of the interest accrued on the Penalty Payment, by EFT to the United States Department of Justice, in accordance with instructions to be provided to Defendants by the FLU of the United States Attorney's Office for the Central District of California Western Division.  Such monies are to be deposited in the OSLTF.  The Penalty Payment shall reference the Civil Action Number assigned to this case, DOJ case number 90-5-1-1-11340, and USCG reference numbers FPNs A15017 and A15018, and shall specify that the payment is made for CWA civil penalties to be deposited into the OSLTF pursuant to 33 U.S.C. § 1321(s), Section 4304 of Pub. L. No. 101-380, and 26 U.S.C. § 9509(b)(8).  Any funds received after 11:00 a.m. Eastern Standard Time shall be credited on the next business day.  Defendants shall simultaneously provide notice of payment in writing, together with a copy of any transmittal documentation to EPA and the United States in accordance with Section XX (Notices) of this Consent Decree, and to EPA by email to acctsreceivable.CINWD@epa.gov and to EPA and the National Pollution Funds Center at the following addresses:

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

U.S. Environmental Protection Agency
Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio 45268

and

Patricia V. Kingcade
Attorney Advisor
National Pollution Funds Center
U.S. Coast Guard
2703 Martin Luther King Jr. Avenue SE
Washington, D.C. 20593-7605

10. Penalty Payment to be Paid to CDFW. For alleged violations of California Government Code § 8670.25.5, Defendants shall pay a civil penalty pursuant to California Government Code § 8670.66(b) of fifty thousand dollars ($50,000) together with a proportionate share of the interest accrued on the Penalty Payment. The Penalty Payment shall be made by check payable to California Department of Fish and Wildlife. The check shall be sent by overnight or certified mail to:

California Department of Fish and Wildlife
Office of Spill Prevention and Response
Attn: Katherine Verrue-Slater, Senior Counsel
P.O. Box 160362
Sacramento, California 95816-0362

The check shall reference the "Refugio Oil Spill." CDFW shall deposit the money into the Environmental Enhancement Fund pursuant to California Government Code § 8670.70.

11. Defendants shall not deduct or capitalize any penalties paid under this Section or under Section XI (Stipulated Penalties) in calculating their federal or state income taxes.

## VI.   NATURAL RESOURCE DAMAGES

12. Within thirty (30) Days after the Effective Date, Defendants shall pay an NRD Payment of twenty-two million three hundred twenty-five thousand

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

dollars ($22,325,000) together with interest accruing from November 16, 2018, at a rate specified in 28 U.S.C. § 1961.  The NRD Payment shall be allocated as follows:

    a.    To DOI, eighteen million four hundred twenty-two thousand dollars ($18,422,000) together with a proportionate share of the interest accrued on the NRD Payment.  Such payment shall be used by the Trustees for the purposes set forth in Section VII (Trustees' Management and Applicability of Joint NRD Funds).  Defendants shall make such payment by EFT to the United States Department of Justice in accordance with instructions that the FLU of the United States Attorney's Office for the Central District of California Western Division shall provide to Defendants following the Effective Date of this Consent Decree by this Court.  At the time of payment, Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Trustees in accordance with Section XX (Notices) of this Consent Decree and to:

> Department of the Interior
> Natural Resource Damage Assessment and
>     Restoration Program
> Attention:  Restoration Fund Manager
> 1849 "C" Street, N.W. Mail Stop 4449
> Washington, D.C.  20240

The EFT and transmittal documentation shall reflect that the payment is being made to the Department of the Interior Natural Resources Damage Assessment and Restoration Fund ("Restoration Fund"), Account Number 14X5198.  DOI will maintain these funds as a segregated subaccount named REFUGIO BEACH OIL SPILL NRD Subaccount within the Restoration Fund.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

b.      To CDPR, two million eighty-four thousand dollars ($2,084,000) together with a proportionate share of the interest accrued on the NRD Payment, for deposit into the State Park Contingent Fund.  Payment shall be made by check payable to the California Department of Parks and Recreation.  At the time of payment, Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Trustees in accordance with Section XX (Notices) of this Consent Decree.  The check shall be sent by overnight or certified mail to:

> The California Department of Parks and
>       Recreation
> Attn:  Laura Reimche, Senior Counsel
> 1416 Ninth Street, Room 1404-6
> Sacramento, California  95814

The check shall reference the "Refugio Beach Oil Spill" and reflect that it is a payment to the State Parks Contingent Fund.  CDPR shall use such monies to fund appropriate projects within State Parks' properties from Gaviota to El Capitan State Park to compensate for recreation losses resulting from the Refugio Incident.  CDPR shall manage such monies in accordance with Section VIII (Trustees' Management of Recreational Use Funds).

c.      To the National Fish and Wildlife Foundation ("NFWF"), one million seven hundred ninety-three thousand dollars ($1,793,000) together with a proportionate share of the interest accrued on the NRD Payment, on behalf of the State Trustees for deposit into the California South Coast Shoreline Parks and Outdoor Recreational Use Account established by NFWF.  Payment shall be made by check payable to the National Fish and Wildlife Foundation.  At the time of payment, Defendants shall simultaneously send written

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

notice of payment and a copy of any transmittal documentation to the Trustees in accordance with Section XX (Notices) of this Consent Decree.  The check shall be sent by overnight or certified mail to:

> California Department of Fish and Game
> Office of Spill Prevention and Response
> Attn:  Katherine Verrue-Slater, Senior Counsel
> P.O. Box 160362
> Sacramento, California  95816-0362

The check shall reference the "Refugio Beach Oil Spill" and reflect that it is a payment to the California South Coast Shoreline Parks and Outdoor Recreational Use Account.  The California South Coast Shoreline Parks and Outdoor Recreational Use Account shall be managed in accordance with the South Coast Shoreline Parks and Outdoor Recreational Use Account Memorandum of Agreement among the State Trustees and NFWF and shall be used by the Trustees for the purposes set forth in Section VIII (Trustees' Management of Recreational Use Funds).

d.      To UC, twenty-six thousand dollars ($26,000) together with a proportionate share of the interest accrued on the NRD Payment, for deposit into Natural Reserve System Account.  Payment shall be made by check payable to The Regents of the University of California.  At the time of payment, Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation to the Trustees in accordance with Section XX (Notices) of this Consent Decree.  The check shall be sent by overnight or certified mail to:

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

The Regents of the University of California
Attn:  Michael Kisgen, Associate Director
Natural Reserve System
University of California, Office of the President
1111 Franklin Street, 6th Floor
Oakland, California 94607-5200

The check shall reference the "Refugio Beach Oil Spill" and reflect that it is a payment to the Natural Reserve System Account.  The University of California Natural Reserve System will administer the monies to fund projects selected by the University of California in coordination with the Trustees.  The projects shall address the research, education, and outreach missions of the University of California.  UC shall manage such monies in accordance with Section VIII (Trustees' Management of Recreational Use Funds).

13.     The NRD Payment is in addition to the NRDA costs incurred by the Trustees through November 15, 2018, which have been separately reimbursed by Defendants.  To date, Plains has paid approximately ten million dollars ($10,000,000) for NRDA costs incurred by the Trustees through November 15, 2018.

## VII.   TRUSTEES' MANAGEMENT AND APPLICABILITY OF JOINT NRD FUNDS

14.     DOI shall, in accordance with law, manage and invest funds in the REFUGIO BEACH OIL SPILL NRD Subaccount, paid pursuant to Paragraph 12, and any return on investments or interest accrued on the REFUGIO BEACH OIL SPILL NRD Subaccount for use by the Natural Resource Trustees in connection with Restoration of Natural Resources affected by the Refugio Incident.  DOI shall not make any charge against the REFUGIO BEACH OIL SPILL NRD Subaccount for any investment or management services provided.

15.     DOI shall hold all funds in the REFUGIO BEACH OIL SPILL NRD

*United States of America and the People of the State of California v.
Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 21 -

Subaccount, including return on investments or accrued interest, subject to the provisions of this Consent Decree.

16.     The Natural Resource Trustees commit to the expenditure of the funds set forth in Paragraph 12 for the design, implementation, permitting (as necessary), monitoring, and oversight of Restoration projects and for the costs of complying with the requirements of the law to conduct a Restoration planning and implementation process.  The Natural Resource Trustees will use the funds to Restore, rehabilitate, replace or acquire the equivalent of any Natural Resource and its services, including lost human use of such services, injured, lost, or destroyed as a result of the Refugio Incident and for the administration and oversight of these Restoration projects.

17.     The specific projects or categories of projects will be contained in a Restoration Plan prepared and implemented jointly by the Trustees, for which public notice, opportunity for public input, and consideration of public comment will be provided.  Plains shall have no responsibility nor liability for implementation of the Restoration Plan or projects relating to the Refugio Incident, including any future project costs other than the payments set forth in Section VII herein.  The Trustees jointly retain the ultimate authority and responsibility to use the funds in the REFUGIO BEACH OIL SPILL NRD Subaccount to Restore Natural Resources in accordance with applicable law, this Consent Decree, and any memorandum or other agreement among them.

## VIII.     TRUSTEES' MANAGEMENT OF RECREATIONAL USE FUNDS

18.     CDPR shall allocate the monies paid pursuant to Paragraph 12 for projects providing human use benefits and for the oversight of those projects in accordance with a Restoration Plan prepared and implemented jointly by the Trustees, this Consent Decree, and in accordance with applicable law and any Trustee memorandum or other agreement among them.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

19.     The State Trustees shall allocate the funds in the Recreational Use Account held by NFWF for projects providing human use benefits and for the oversight of those projects in accordance with a Restoration Plan prepared and implemented jointly by the Trustees, this Consent Decree, and in accordance with applicable law and any Trustee memorandum or other agreement among them.

20.     UC shall allocate the monies paid pursuant to Paragraph 12 for research, education, and outreach projects in accordance with a Restoration Plan prepared and implemented jointly by the Trustees, this Consent Decree, and in accordance with applicable law and any Trustee memorandum or other agreement among them.

## IX.   INJUNCTIVE RELIEF

21.     Plains agrees to implement the injunctive relief set forth in Appendix B to this Consent Decree for Plains' Regulated Pipelines.

22.     <u>Material Changes to Plains' IMP</u>.

a.     Plains' Integrity Management Plan shall serve as the baseline IMP for purposes of this Consent Decree.  Plains agrees that it will not make any material changes to the following parts of the IMP throughout the term of this Consent Decree without following the process set forth in this Paragraph:

1)     Procedure for the Assessment of In-Line Inspection ("ILI") Results;

2)     Section 9.5, "Continual Evaluation and Assessment of Pipeline Integrity;"

3)     White Papers 32-200.09-S001, "Reassessment Interval Determination on Pipelines with Possible Shielded Coatings," and 32-200.09-S002, "Reassessment Interval Determination on Pipelines with Possible Corrosion Under Insulation;"

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 23 -

4)      Section 11.3, "Conducting Preventive and Mitigative Evaluation Meetings;"

5)      Section 11.4, "Documentation of P&M Evaluation Meetings;" and

6)      Section 11.6, "Implementation of P&M Recommendations."

For purposes of this Paragraph, the term "material change" refers to any substantive modification in the IMP Procedures that could affect the outcome or effect of a particular procedure or requirement.

b.      At least thirty (30) Days prior to making a material change to the above sections of the IMP, Defendants shall provide written notice to PHMSA that includes a copy of the proposed change(s).  In the event PHMSA provides a written objection to Defendants' notice prior to the effective date of the material change and they cannot informally resolve the matter, Defendants shall have the right to submit the issue to Dispute Resolution (Section XIII).

c.      In the event Plains cannot reasonably provide the thirty (30) Day notice of material modification to the IMP described in Subparagraph 22.b due to an unanticipated emergency, Plains shall provide written notice to PHMSA within seven (7) Days of the material change, stating the basis for the abbreviated notice.  In the event PHMSA provides a written objection to Defendants' modification, Defendants shall have the right to submit the issue to Dispute Resolution (Section XIII).

d.      In the event PHMSA provides a written objection to a material modification of Defendants' IMP, PHMSA and Defendants shall have sixty (60) Days for informal consultation.  The parties may mutually agree to extend the period by no more than thirty (30)

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

Days.  Following the notice period specified in Subparagraphs 22.b and 22.c, Defendants may implement the modification until the dispute is resolved.  If the dispute is not resolved as a result of the informal consultation, PHMSA or Defendants may invoke Dispute Resolution pursuant to Section XIII.  Stipulated penalties shall not accrue during the informal consultation period described in this Paragraph.

23.   <u>Material Changes in Control Room Management Plan and Control Center General Procedures</u>.

a.   Plains' Control Room Management Plan and Control Center General Procedures (collectively, "Control Center Plan and Procedures") shall serve as the baseline Control Center Plan and Procedures for purposes of this Consent Decree.  Plains agrees that it will not make any material changes to sections 6.5.5, 6.6.8, 8, 9.6.4, 9.6.9, 9.6.13, and 9.6.14 of its Control Room Management Plan and procedures 100-2, 100-8, 100-9, 200-1, 300-1, 300-3, 300-5, 400-0, and 500-12 of its Control Center General Procedures throughout the term of this Consent Decree without following the process set forth in this Paragraph.  For purposes of this Paragraph, the term "material change" refers to any substantive modification in the Control Center Plan and Procedures that could affect the outcome or effect of a particular procedure or requirement.

b.   At least thirty (30) Days prior to making a material modification to the above sections of  its Control Room Management Plan and Control Center General Procedures, Defendants shall provide written notice to PHMSA that includes a copy of the proposed change(s).  In the event PHMSA provides a written objection to Defendants' notice prior to the effective date of

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

the material change(s), Defendants shall have the right to submit the issue to Dispute Resolution (Section XII).

c.      In the event Plains cannot reasonably provide the thirty (30) Day notice of material modification to the Control Room Management Plan and Control Center General Procedures described in Subparagraph 23.b due to an unanticipated emergency, Plains shall provide written notice to PHMSA within seven (7) Days of the material modification, stating the basis for the abbreviated notice.  In the event PHMSA provides a written objection to Defendants' modification, Defendants shall have the right to submit the issue to Dispute Resolution (Section XIII).

d.      In the event PHMSA provides a written objection to a material modification of Defendants' Control Room Management Plan and Control Center General Procedures, PHMSA and Defendants shall have sixty (60) Days for informal consultation. The parties may mutually agree to extend the period by no more than thirty (30) Days.  Following the notice period specified in Subparagraphs 23.b and 23.c, Defendants may implement the modification until the dispute is resolved.  If the dispute is not resolved as a result of the informal consultation, PHMSA or Defendants may invoke Dispute Resolution pursuant to Section XIII. Stipulated penalties shall not accrue during the informal consultation period described in this Paragraph.

24.   Where any compliance obligation under this Consent Decree requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely applications and take all other actions reasonably necessary to obtain all such permits or approvals.  Defendants may seek relief under the provisions of Section XII (Force Majeure) for any delay in the performance of any such

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely applications and have taken all other actions reasonably necessary to obtain all such permits or approvals.

## X.   CORRECTIVE ACTION ORDER

25.   Upon the Effective Date of this Consent Decree, the PHMSA CAO shall close and be of no further force or effect.  All outstanding terms and obligations under the PHMSA CAO as of the Effective Date and which Plains is still required to implement under this Consent Decree are set forth in Appendix D.

## XI.   STIPULATED PENALTIES

26.   Unless excused under Section XII (Force Majeure), Defendants shall be liable for stipulated penalties for violations of this Consent Decree as specified below.  A violation includes failing to perform any obligation required by the terms of this Consent Decree according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

27.   <u>Late Payment of Civil Penalties and NRD Payment</u>.

    a.   If Defendants fail to pay any portion of the Penalty Payment to the United States required under Section V (Civil Penalties) when due, Defendants shall pay to the United States a stipulated penalty of ten thousand dollars ($10,000) per Day for each Day payment is late.

    b.   If Defendants fail to pay any portion of the Penalty Payment to the CDFW and/or RWQCB as required under Section V (Civil Penalties) when due, Defendants shall pay to the CDFW and/or RWQCB a stipulated penalty of ten thousand dollars ($10,000) each, as applicable, per Day for each Day payment is late.

    c.   If Defendants fail to pay any portion of the NRD Payments

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

required under Section VI (Natural Resource Damages) when due, Defendants shall pay a stipulated penalty of five thousand dollars ($5,000) to the United States, and five thousand dollars ($5,000) to the State Trustees, per Day for each Day payment is late.

28.    <u>Stipulated Penalties for Non-Performance of Injunctive Relief</u>. Unless excused under Section XII (Force Majeure), the stipulated penalties described in this Paragraph shall accrue per violation per Day for Defendants' failure to perform the following injunctive relief required under Section IX (Injunctive Relief) when due:

a.    For failure to timely submit to OSFM the applications for State waivers as specified in paragraphs 1.A, 1.B, 1.C, and 1.D of Appendix B;

b.    For failure to implement the Integrity Management provisions as specified in paragraphs 4.A.1.a, e, f, g, h, and 4.A.2 of Appendix B;

c.    For failure to timely submit to OSFM the EFRD analyses as specified in paragraphs 5.A-5.B of Appendix B;

d.    For failure to timely submit to OSFM the risk analysis as specified in paragraph 6.A of Appendix B;

e.    For failure to timely submit to PHMSA the modified Section 9.5 of Plains' IMP, as specified in paragraph 9.A.3 of Appendix B;

f.    For failure to timely submit to PHMSA the modified P&M Recommendation forms, as specified in paragraph 9.B of Appendix B;

g.    For failure to timely conduct EFRD analyses for all Regulated Pipelines for which Plains has not previously conducted an EFRD analysis, as specified in paragraph 10.A of Appendix B;

h.      For failure to timely have in place revised valve maintenance procedures, as specified in paragraph 10.B of Appendix B;

i.      For failure to timely create a list of rupture detection methods utilized, as specified in paragraph 11.A of Appendix B;

j.      For failure to timely conduct annual training for controllers on attributes and benefits of various methods of leak detection, including Analog High/Low Threshold, Alarm Deadband, Creep Deviation, and Analog Rate of Change, as specified in paragraph 11.B of Appendix B;

k.      For failure to timely submit to PHMSA the computational pipeline monitoring ("CPM") systems analysis, as specified in paragraph 11.C of Appendix B;

l.      For failure to timely submit to PHMSA the selection of leak detection method procedure, as specified in paragraph 11.D of Appendix B;

m.      For failure to hold or document periodic (at least annual) meetings regarding potential improvements to leak detection, as provided in paragraph 11.E of Appendix B;

n.      For failure to timely have in place a procedure for tracking when instrumentation has been impeded, as provided in paragraph 11.F of Appendix B;

o.      For failure to complete, prior to resuming operations on Lines 901 or 903, the items identified in paragraph 12.A.1-4 of Appendix B;

p.      For failure to timely submit to OSFM confirmation that all alarm descriptors are accurate, as specified in paragraph 12.B of Appendix B;

q.      For failure to timely conduct the surveys and update the

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

emergency response plans, as specified in paragraph 13.B.1 of Appendix B;

r.      For failure to timely provide emergency response training to employees, as specified in paragraph 13.B.2 of Appendix B;

s.      For failure to timely provide control room supervisor training, as specified in paragraph 13.B.4 of Appendix B;

t.      For failure to timely submit to PHMSA and/or OSFM, and/or OSPR, as applicable, notice of drills, as specified in paragraph 13.B.5 of Appendix B, provided that the penalty under this subsection shall not exceed one Day per drill;

u.      For failure to timely submit to PHMSA the third-party Safety Management System report, as specified in paragraph 14.A.1 of Appendix B;

v.      For failure to timely review and revise the drug and alcohol misuse plans, as specified in paragraph 15 of Appendix B;

w.      For failure to timely submit to PHMSA notice of any material modification to the IMP, as required by Paragraph 22; and

x.      For failure to timely submit to PHMSA notice of any material modification to the Control Room Management Plan or Control Center General Procedures, as required by Paragraph 23;

y.      The penalties stipulated in this Section shall accrue as follows:

| Penalty Per Violation | Per Day Period of Noncompliance |
| --- | --- |
| $2,000 penalty per Day | 1st to 30th Day |
| $4,000 penalty per Day | 31st to 60th Day |
| $5,500 penalty per Day | 61st Day and beyond |

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 30 -

29.     <u>Stipulated Penalties for Non-Compliance with Corrective Action Order Terms.</u>  Unless excused under Section XII (Force Majeure), the stipulated penalties described in this Paragraph shall accrue per violation per Day for Defendants' failure to perform the following injunctive relief required under Section X (Corrective Action Order) when due:

a.     For operation of Line 901 in violation of paragraph 1.a of Appendix D;

b.     For failure to timely submit to OSFM a Line 901 Restart Plan, as specified by paragraph 1.b of Appendix D;

c.     For failure to comply with the operating pressure restriction, including requirements for removal of the pressure restriction, for Line 901 specified by paragraphs 1.c and 1.d of Appendix D;

d.     For operation of Line 903, in violation of paragraph 1.e of Appendix D;

e.     For failure to timely submit to OSFM a Line 903 Restart Plan, as specified by paragraph 1.f of Appendix D;

f.     For failure to comply with the operating pressure restriction, including requirements for removal of the pressure restriction, for Line 903 specified by paragraphs 1.g and 1.h of Appendix D;

g.     For failure to timely submit to OSFM any notification specified by paragraph 1.i of Appendix D; and

h.     For failure to submit to OSFM a final Appendix D Documentation Report, as specified by paragraph 1.j of Appendix D.

i.     The penalties stipulated in this Section shall accrue as follows:

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 31 -

| Penalty Per Violation | Per Day Period of Noncompliance |
|---|---|
| $2,000 penalty per Day | 1st to 30th Day |
| $4,000 penalty per Day | 31st to 60th Day |
| $5,500 penalty per Day | 61st Day and beyond |

30.     Defendants shall pay stipulated penalties due pursuant to this Section within thirty (30) Days of a written demand.

31.     For stipulated penalties accrued pursuant to Subparagraphs 27.a, 28.e, 28.f, 28.g, 28.h, 28.i, 28.j, 28.k, 28.l, 28.m, 28.n, 28.s, 28.t, 28.u, 28.v, 28.w, or 28.x of this Consent Decree, the United States shall have the right to issue a written demand for stipulated penalties, and Defendants must pay to the United States the full amount of any stipulated penalties due and will not be liable to the State Agencies for any such stipulated penalties.

32.     For stipulated penalties accrued pursuant to Subparagraph 27.b of this Consent Decree, only CDFW and RWQCB shall have the right to issue a written demand for stipulated penalties and Defendants must pay to the CDFW and RWQCB the full amount of any stipulated penalties due and will not be liable to United States for any such stipulated penalties.

33.     For stipulated penalties accrued pursuant to Subparagraphs 28.a, 28.b, 28.c, 28.d, 28.o, 28.p, or Paragraph 29 of this Consent Decree, only OSFM shall have the right to issue a written demand for stipulated penalties, and Defendants must pay to OSFM the full amount of any stipulated penalties due and will not be liable to United States for any such stipulated penalties.

34.     For stipulated penalties accrued pursuant to Paragraphs 28.q, 28.r, 28.t, or Paragraph 30 of this Consent Decree, the United States, CDFW, OSFM, or all, may demand stipulated penalties by sending a joint or individual written demand to Defendants, with a copy simultaneously sent to the other Plaintiff(s).

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

a.      Where only one or two of the Plaintiffs referenced in Paragraph 35 demand stipulated penalties under Paragraph 35, a copy of the demand will simultaneously be sent to the remaining Plaintiff(s) and they will have forty-five (45) Days to join in the demand.

b.      Where multiple Plaintiffs referenced in Paragraph 35 demand stipulated penalties for the same violation, Defendants shall pay fifty (50) percent to each of the demanding Plaintiffs (when two Plaintiffs join in the demand); one third to each demanding Plaintiff (when all three Plaintiffs join in the demand); or as allocated by the United States, CDFW, and OSFM.

c.      Where only one Plaintiff referenced in Paragraph 35 demands stipulated penalties, and the other Plaintiffs do not join in the demand within forty-five (45) Days of receiving the demand, Defendants shall pay one hundred (100) percent to the Plaintiff making the demand.

d.      If a Plaintiff joins in the demand within forty-five (45) Days but subsequently elects to waive or reduce stipulated penalties, in accordance with Paragraphs 38 or 39 for that violation, Defendants shall not be liable for such portion of the stipulated penalties waived or reduced by such Plaintiff and shall be liable for any stipulated penalties due to the other Plaintiffs joining such demand pursuant to the allocation set forth in Subparagraph 34(b).

35.     For stipulated penalties arising from a failure to perform obligations pursuant to Subparagraph 27.c, the United States and the State Trustees may demand stipulated penalties by sending a joint written demand to Defendants.

36.     For all payments made pursuant to this Section, Defendants must follow the payment instructions set forth in Section V (Civil Penalties).  Any

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 33 -

transmittal correspondence shall state that payment is for stipulated penalties and shall identify the date of the written demand to which the payment corresponds.

37.     Stipulated penalties under this Section shall begin to accrue on the Day after the performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed, or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

38.      The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to the United States under this Consent Decree.

39.     The applicable State Agencies may, in the unreviewable exercise of their discretion, reduce or waive stipulated penalties otherwise due to the applicable State Agencies under this Consent Decree.

40.     Stipulated penalties shall continue to accrue as provided in Paragraphs 27 through 29, during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of the United States or the State Agencies, as applicable, that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing to the United States or the State Agencies, as applicable, together with interest, within thirty (30) Days of the effective date of the agreement or the receipt of the United States' or the State Agencies' decision.

b.      If the dispute is appealed to the Court and the Plaintiffs prevail in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

c.   If any Party appeals the Court's decision and a Plaintiff prevails in whole or in part, Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

41.   If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State Agencies from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

42.   The payment of stipulated penalties, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

43.   Subject to the provisions of Section XVII (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the State Agencies (including, but not limited to, statutory penalties, additional injunctive relief, mitigation or offsets measures, and/or contempt) for Defendants' violation of this Consent Decree or applicable laws.

## XII.   FORCE MAJEURE

44.   "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

potential Force Majeure event (a) as it is occurring and (b) following the potential Force Majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

45.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic transmission to the relevant Plaintiff(s), within five (5) Days of when Defendants first knew that the event might cause a delay.  Within ten (10) Days thereafter, Defendants shall provide in writing to such Plaintiffs an explanation and description of the reasons for the delay; the anticipated duration of the delay; the actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall provide with any notice the documentation that Defendants are relying on to support the claim that the delay was attributable to a Force Majeure event. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

46.     If Plaintiffs agree that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by

Plaintiffs for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. Plaintiffs will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

47.     If Plaintiffs do not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, Plaintiffs will notify Defendants in writing of their decision.

48.     If Defendants elect to invoke the Dispute Resolution procedures set forth in Section XIII (Dispute Resolution), in response to Plaintiffs' determination in Paragraph 47 above, it shall do so no later than thirty (30) Days after receipt of Plaintiffs' notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 44 and 45. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to Plaintiffs and the Court.

## XIII. DISPUTE RESOLUTION

49.     Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by Plaintiffs to enforce any obligation of Defendants arising under this Consent

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

Decree.

50.   <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the relevant Plaintiff(s) a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed thirty (30) Days from the date the dispute arises, unless that period is modified by written agreement.  If the parties cannot resolve a dispute by informal negotiations, then the position advanced by Plaintiffs shall be considered binding unless, within forty-five (45) Days after the conclusion of the informal negotiation period, Defendants invoke formal Dispute Resolution procedures as set forth below.

51.   <u>Formal Dispute Resolution</u>.  Defendants shall invoke formal Dispute Resolution procedures, within the time period provided in the preceding Paragraph, by serving on Plaintiffs a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

52.   Plaintiffs shall serve their Statement of Position within forty-five (45) Days of receipt of Defendants' Statement of Position.  Plaintiffs' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Plaintiffs.  Plaintiffs' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

53.   Defendants may seek judicial review of the dispute by filing with the Court and serving on the relevant Plaintiff(s), in accordance with Section XX (Notices), a motion requesting judicial resolution of the dispute.  The motion

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

must be filed within thirty (30) Days of receipt of Plaintiffs' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

54.   Plaintiffs shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court or by a schedule set by the Court. Defendants may file a reply memorandum to the extent permitted by the Local Rules.

55.   Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 51, Defendants shall bear the burden of demonstrating that its position complies with this Consent Decree, based on the Statements of Position, and under applicable standards of review.

56.   The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue until the final resolution of the dispute.  Payment shall be stayed pending resolution of the dispute.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XI (Stipulated Penalties).

## XIV.  REPORTING

57.   After the Effective Date, by March 31 and September 30 of the following years until termination of this Consent Decree per Section XXIV (Termination), Defendants shall submit to the Plaintiffs in accordance with Section XX (Notices) bi-annual reports that shall describe the status of Defendants' compliance with the Consent Decree, including implementation of

the injunctive relief requirements set forth in Appendices B and D.  The report will be organized to show the measures taken to comply with each of the requirements set forth in Appendices B and D, whether the measures were taken timely, the status of any permitting action that may affect compliance with the Consent Decree, and whether the measures taken have achieved compliance with the requirement.

## XV.  CERTIFICATION

58.     Each report submitted by Defendants under Section XIV (Reporting) shall be signed by either the Chief Executive Officer, the President, an Executive Vice President, a Senior Vice President, or General Counsel who is an authorized representative of Defendants, and must contain the following statement:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on any personal knowledge and my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## XVI.  INFORMATION COLLECTION AND RETENTION

59.     Plaintiffs and their representatives shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times and upon reasonable notice, upon presentation of credentials, to:

    a.     monitor the progress of activities required under this Consent Decree;

    b.     verify any data or information submitted to the Plaintiffs in accordance with the terms of this Consent Decree;

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

c.    obtain documentary evidence, including photographs and similar data; and

d.    assess Defendants' compliance with this Consent Decree.

60.    Until one (1) year after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve or deliver to Plains, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of their obligations under this Consent Decree.  At any time during this information-retention period, upon request by the Plaintiffs, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

61.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State Agencies pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

62.    For any documents, records, or other information required to be submitted to Plaintiffs pursuant to this Consent Decree, Plains may assert a claim of business confidentiality or other protections applicable to the release of information by Plaintiffs, covering part or all of the information required to be submitted to Plaintiffs pursuant to this Consent Decree in accordance with, as applicable, 49 C.F.R. Part 7, 49 C.F.R. Part 190, and 40 C.F.R Part 2.  Plains must mark the claim of confidentiality in writing on each page, and include a statement specifying the grounds for each claim of confidentiality.

63.    The federal agency Plaintiffs are subject to applicable laws

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

governing the disclosure of information under the Freedom of Information Act ("FOIA") (5 U.S.C. § 552 *et seq.*).  If a federal agency Plaintiff receives a request pursuant to FOIA for records produced pursuant to the Consent Decree, that Plaintiff will, to the extent permitted by law, treat those records as exempt from disclosure, and give Defendants a reasonable opportunity to identify portions of documents Defendants have claimed as confidential and that may be subject to the request, and to specify the grounds for each claim of confidentiality.  In accordance with applicable regulations, if the federal agency Plaintiff determines that the records are not exempt from disclosure, the Plaintiff shall provide notice of the determination to Defendants prior to making any record available to the public.

64.     For documents provided to PHMSA under this Consent Decree, Defendants need not provide redacted copies when the documents are produced. Within fourteen (14) Days of notification from PHMSA of a FOIA request, or such other time as agreed upon, Defendants will provide a copy of the relevant records with confidential information redacted along with explanations of the asserted grounds for confidentiality.

65.     State Agency Plaintiffs are subject to the California Public Records Act ("CPRA") (California Government Code §§ 6250 *et seq.*).  If a State Agency Plaintiff receives a request pursuant to the CPRA for records produced pursuant to the Consent Decree, that Plaintiff will, to the maximum extent permitted by law, treat those records as exempt from disclosure, and give Defendants a reasonable opportunity to submit redacted copies of the requested records.  If the Plaintiff determines that the records are not exempt from disclosure, the Plaintiff shall provide notice of the determination to Defendants prior to making any record available to the public.

66.     The requirements of this Paragraph apply to Defendants' production of documents to PHMSA only.  Defendants shall produce all documents required

to be produced in connection with this Consent Decree in, at Defendants' option, either native format via electronic media or secure file transfer protocol ("FTP"). Any encryption or access restriction shall be on a container level only, *i.e.*, only the electronic media or the top-level folder containing the documents shall be encrypted and Plaintiffs shall have unrestricted access to the files/folders within the electronic media or the top-level folder without need for additional decryption or access codes.  Regardless of production method or encryption, individual documents shall be produced in a manner that allows the Plaintiffs to view, print, copy, save, download, and share each document within Plaintiffs' own environment without restriction, tracking or monitoring by Defendants, or automatically generated changes to the document (*e.g.*, without entering access codes prior to each download, and without automatically generated watermarks stating the download date and time).

67.     At the conclusion of the information-retention period, Defendants shall provide ninety (90) Days' notice to Plaintiffs of Defendants' resumption of internal document destruction policies for documents, records, or other information subject to the requirements of Paragraph 60.

68.     [*Intentionally left blank.*]

**XVII.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS**

69.     This Consent Decree resolves the civil claims of the United States and the State Agencies for the matters alleged in the Complaint filed in this action for the Refugio Incident.

70.     Subject to the reservations of rights specified in Paragraph 71, this Consent Decree also resolves all civil and administrative penalty claims that could be brought by PHMSA, for violations of the Pipeline Safety Laws specified below that occurred on any of Defendants' Regulated Pipelines prior to January 28, 2019, the date that PHMSA's ongoing "Integrated Inspection" of a portion of Defendants' Regulated Pipelines and other pipeline facilities began.  The specific

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

Pipeline Safety Laws subject to this Paragraph are the following (including other regulations expressly incorporated therein):

a.   49 C.F.R. Part 194 Subpart B – Response Plans;

b.   49 C.F.R. Part 195 Subpart B – Reporting;

c.   49 C.F.R. Part 195 Subpart E – Pressure Testing;

d.   49 C.F.R. Part 195 Subpart F – Operation and Maintenance, sections 195.402, 195.403, 195.404, 195.406, 195.408, 195.412, 195.420, 195.422, 195.428, 195.436, 195.442, 195.444, 195.446, 195.452;

e.   49 C.F.R. Part 195 Subpart G – Qualification of Pipeline Personnel, as it relates to valve maintenance;

f.   49 C.F.R. Part 195 Subpart H – Corrosion Control;

g.   49 C.F.R. Part 199 – Drug and Alcohol Testing; and

h.   All recordkeeping, documentation, and document production requirements in the provisions listed in subsections 70.a-70.g, and 49 C.F.R. section 190.203 and Part 195.

71.    The United States, on behalf of PHMSA, reserves all legal and equitable remedies to address violations of the Pipeline Safety Laws described in Paragraph 70 that occur on or after January 28, 2019, including violations that may have begun prior to such date and continued subsequent to January 28, 2019. A separate violation of the Pipeline Safety Laws occurs for each day that the violation continues, pursuant to 49 U.S.C. § 60122(a).

72.    This Consent Decree also resolves all civil and administrative penalty claims that could be brought by OSFM against Defendants for violations of the Pipeline Safety Laws and the Elder California Pipeline Safety Act as specified below relating to Line 901, Line 903, or Line 2000 that occurred prior to January 28, 2019.  OSFM reserves all legal and equitable remedies to address violations of the specified Pipeline Safety Laws that occur on or after

January 28, 2019, including violations that may have begun prior to such date and continued subsequent to January 28, 2019.  The specific Pipeline Safety Laws and Elder California Pipeline Safety Act subject to this Paragraph are:

      a.     The Pipeline Safety Laws specified in Paragraph 70; and

      b.     California Government Code §§ 51012.3, 51013, 51013.5, 51014, 51015, 51015.4, 51015.5 (for Line 901 and Line 903 only), and 51018.

73.    For any reportable pipeline accident, as defined in 49 C.F.R. § 195.50, occurring on or after January 28, 2019, on any of Defendants' Regulated Pipelines, Paragraphs 70 and 72 shall not limit the right of PHMSA and OSFM to sue or pursue administrative or other remedies for violations (including penalties) under the Pipeline Safety Laws and the Elder California Pipeline Safety Act for such accident.  Nothing in Paragraphs 70 through 72 shall be construed to limit the legal and equitable remedies of the United States or State Agencies, other than PHMSA and OSFM.

74.    The United States and the State Agencies reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States or the State Agencies to obtain penalties, injunctive relief, or other administrative or judicial remedies under the CWA, OPA, Pipeline Safety Laws, or under other federal or state laws, regulations, or permit conditions, except as specified in Paragraphs 69, 70, and 72.

75.    The United States reserves all legal and equitable remedies to address any imminent and substantial endangerment or threat to the public health or welfare or the environment arising at, or posed by, Defendants' operations, whether related to the violations addressed in this Consent Decree or otherwise. PHMSA further reserves the right to issue to Defendants corrective action orders pursuant to 49 C.F.R § 190.233; emergency orders pursuant to 49 C.F.R.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 45 -

§ 190.236; and safety orders pursuant to 49 C.F.R. § 190.239. The State Agencies reserve all legal and equitable remedies under California Government Code §§ 8670.57, 8670.69.4, 51013.5, 51015.5, 51018.6, 51018.7 and 51018.8, California Water Code §§ 13301, 13304, 13340, and 13386, and California Health & Safety Code § 13107.5 to address (1) conditions threatening to cause or creating a substantial risk of an unauthorized discharge of oil into waters of the State of California, (2) a discharge of waste threatening to cause a condition of pollution or nuisance, or (3) a discharge which poses a substantial probability of harm to persons, property or natural resources.

76. This Consent Decree also shall not be construed to in any way limit or waive the claims set forth in the case entitled *California State Lands Commission, et al. v. Plains Pipeline, L.P., et al.*, Case No. 18CV02504 (Cal. Sup. Court) and Case No. B295632 (Cal. Ct. App.).

77. In any subsequent administrative or judicial proceeding initiated by the United States or the State Agencies for injunctive relief, civil penalties, other appropriate relief relating to Defendants' violations alleged in Plaintiffs' Complaint, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State Agencies in the subsequent proceeding should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraphs 69, 70, and 72.

78. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws, or regulations. Defendants are responsible for achieving and maintaining full compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action

commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and the State Agencies do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, OPA, Pipeline Safety Laws, or with any other provisions of federal, state, or local laws, regulations, or permits.

79.     This Consent Decree does not limit or affect the rights of Defendants or of the United States or the State Agencies against any third-parties, not party to this Consent Decree, nor does it limit the rights of third-parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

80.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third-party not party to this Consent Decree.

81.     Plaintiffs will not submit any claim for restitution for Natural Resource Damages in *The People of the State of California v. Plains All American Pipeline, L.P.,* Case No. 1495091 (Cal. Sup. Court).

82.     By entering into this settlement, Defendants do not admit the Pipeline Safety Laws violations alleged in the Complaint or described in this Consent Decree by the United States on behalf of PHMSA; therefore, any allegations of violations of these Pipeline Safety Laws do not constitute a finding of violation and may not be used in any civil proceeding of any kind as evidence or proof of any fact, fault or liability, or as evidence of the violation of any law, rule, regulation, order, or requirement, except in a proceeding to enforce the provisions of this Consent Decree.  However, the allegations of violations set forth in the Complaint may be:  (1) considered by PHMSA to constitute prior offenses in any future PHMSA enforcement action brought by the agency against Plains, and (2) used for statistical purposes to identify violations that PHMSA deems as causal to an incident or to increase the consequences of an incident. Notwithstanding the forgoing, alleged violations subject to Paragraph 70 shall not

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 47 -

be considered by PHMSA to constitute prior offenses in any future PHMSA enforcement action brought by the agency against Plains.

83.     By entering into this settlement, Defendants do not admit the allegations of California Water Code §§ 13350 and 13385 violations set forth in the Complaint; therefore, any allegations of violations of these statutes do not constitute a finding of violation and may not be used in any civil proceeding of any kind as evidence or proof of any fact, fault or liability, or as evidence of the violation of any law, rule, regulation, order, or requirement, except in a proceeding to enforce the provisions of this Consent Decree.  However, the allegations of California Water Code §§ 13350 and 13385 violations set forth in the Complaint may be considered by the State Water Resources Control Board or Regional Water Quality Control Boards to constitute prior offenses in any future enforcement action brought by any of these agencies against Plains.

84.     Subject to the terms of this Consent Decree, no provision contained herein affects or relieves Plains of their responsibilities to comply with all applicable requirements of the CWA, OPA, the Pipeline Safety Laws, federal or state laws, and the regulations and orders issued thereunder.  Subject to the terms of this Consent Decree, nothing herein shall limit or reduce the Plaintiffs' right of access, entry, inspection, and information-gathering or their authority to bring enforcement actions against Defendants pursuant to the CWA, OPA, the Pipeline Safety Laws, federal or state laws, the regulations and orders issued thereunder, or any other applicable provision of federal or state law.

85.     Defendants hereby covenant not to sue Plaintiffs for any claims related to the Refugio Incident, or response activities in connection with the Incident, pursuant to the CWA, OPA, the Pipeline Safety Laws, federal or state laws, or any other law or regulation for acts or omissions through the date on which this Consent Decree is lodged with the Court.

86.     Defendants covenant not to sue and agree not to assert any direct or

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

indirect claim for reimbursement related to the Refugio Incident from the OSLTF or pursuant to any other provision of law.

87.     The United States reserves the right to seek reimbursement from Defendants for claims relating to the Refugio Incident paid after the date on which the Consent Decree is lodged with the Court from the OSLTF pursuant to 33 U.S.C. § 2712.

## XVIII.   TRANSFER AND ACQUISITION OF ASSETS

88.     In the event Defendants sell or transfer ownership of or operating responsibility for Lines 901, 903, or 2000, or any lines built to replace Lines 901 or 903, Defendants will obtain from the transferee an agreement to be bound by those provisions of this Consent Decree and Appendices B and D that are specifically applicable to the asset(s) acquired, unless Defendants have already completed the required action or unless OSFM agrees to relieve the transferee of the obligations of any otherwise applicable provision.  Those provisions of Appendix B are:

> a.     For existing but non-operational segments of Lines 901 and 903, paragraphs 1.A, 1.B, 1.E, 2.B, 2.C., 4, 5, 6, 7.A, 12.A of Appendix B;
>
> b.     For the operational segment of Line 903 from Pentland to Emidio, paragraphs 1.C, 1.E, 4, 5, 6, 7.A of Appendix B;
>
> c.     For any lines built to replace Lines 901 or 903, paragraphs 2.A.1, 5, 7.B, 12.A of Appendix B; and
>
> d.     For Line 2000, paragraphs 1.D, 1.E, 4, 5, 6, 7.A, 12.B. of Appendix B.

89.     In the event Defendants sell or transfer ownership of or operating responsibility for Lines 901, 903, or 2000, or any lines built to replace Lines 901 or 903, Defendants shall provide a copy of this Consent Decree to the prospective transferee at least fourteen (14) Days prior to such transfer.  Defendants shall

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

provide written notice of any such transfer to OSFM within ten (10) Days after the date Defendants publicly disclose the transaction or the date the transaction is closed, whichever is earlier.  Prior to the transfer, Defendants may notify OSFM that Defendants have completed certain required actions of this Consent Decree, or request that OSFM relieve the transferee of certain obligations of otherwise applicable provisions, such that the transferee will not be bound by those requirements.  Defendants shall provide to Plaintiffs documentation demonstrating the transferee's agreement to be bound by the relevant provisions of the Consent Decree.  Defendants shall provide to the transferee copies of those portions of relevant emergency response plans that relate to the transferred asset.

90.    In the event of the sale or transfer pursuant to an arm's-length transaction of Defendants' Regulated Pipelines other than Lines 901, 903, or 2000, or any lines built to replace Lines 901 or 903, to an independent third-party transferee, the transferee shall not be subject to the requirements of this Consent Decree.  Defendants shall provide a copy of this Consent Decree to the transferee at least fourteen (14) Days prior to such transfer.  Defendants shall provide written notice of any such transfer, including documentation demonstrating that the Consent Decree was provided to the transferee, to PHMSA within ten (10) Days after the date Defendants publicly disclose the transaction or the date the transaction is closed, whichever is earlier.  Defendants' obligations under this Consent Decree with respect to all non-transferred assets shall not be affected.

91.    For all Regulated Pipeline assets that Defendants assume operating responsibility for after the Effective Date, Plains is obligated to apply Article II (Company Wide Provisions) of Appendix B of this Consent Decree to the newly acquired assets.

## XIX.  COSTS

92.    Except as otherwise stated in this Consent Decree, the Parties shall bear their own costs related to this action and this Consent Decree, including

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

attorneys' fees; provided, however, the United States and the State Agencies shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XX.   NOTICES

93.     Unless otherwise specified in this Consent Decree, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing, sent electronically by email provided by the Parties, and addressed to all Parties as follows:

As to the United States by email:   eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-11340

As to the United States by mail:   EES Case Management Unit
Environment and Natural Resources
   Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-1130

As to PHMSA:   James M. Pates
Assistant Chief Counsel
   for Pipeline Safety
U.S. Department of Transportation
Pipeline and Hazardous Materials
   Safety Administration
1200 New Jersey Ave. SE. E-26
Washington, DC. 20590

As to EPA:   Andrew Helmlinger
Attorney Advisor
U.S. EPA Region IX
75 Hawthorne Street (ORC-3)
San Francisco, California 94104

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

As to DOI:                     Clare Cragan
                               U.S. Department of the Interior
                               Office of the Solicitor
                               755 Parfet St., Suite 151
                               Lakewood, Colorado 80215

As to NOAA:                    National Oceanic and Atmospheric
                                   Administration
                               Office of General Counsel
                               Natural Resources Section
                               ATTN:  Christopher J. Plaisted
                               501 W. Ocean Blvd, Suite 4470
                               Long Beach, California  90802

As to USCG:                    Patricia V. Kingcade
                               Attorney Advisor
                               National Pollution Funds Center,
                                   US Coast Guard
                               2703 Martin Luther King Jr. Ave SE
                               Washington, DC 20593-7605

As to the State Agencies:      Michael Zarro
                               Deputy Attorney General
                               Office of the Attorney General
                               Natural Resources Law Section
                               300 S. Spring St., Suite 11220
                               Los Angeles, California 90013

As to CDFW:                    California Department of Fish
                                   and Wildlife
                               Office of Spill Prevention and Response
                               Attn: Katherine Verrue-Slater
                               Senior Counsel
                               P.O. Box 160362
                               Sacramento, California  95816-0362

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

As to CDPR:                California Department of Parks and
                               Recreation
                           Attn: Laura A. Reimche, Senior Counsel
                           1416 Ninth Street, Room 1404-6
                           Sacramento, California 95814

As to CSLC:                California State Lands Commission
                           Attn: Patrick Huber, Legal Division
                           100 Howe Avenue, Suite 100-South
                           Sacramento, California 95825

As to OSFM:                California Department of Forestry and
                               Fire Protection
                           Legal Services Office
                           Attn: Joshua Cleaver, Staff Counsel
                           P.O. Box 944246
                           Sacramento, California 94244-2460

As to RWQCB:               California Central Coast Regional Water
                           Quality Control Board
                           Attn: Naomi Rubin, Attorney III
                           801 K Street
                           Sacramento, California 95814

As to UC:                  Barton Lounsbury, Senior Counsel
                           University of California
                           Office of the General Counsel
                           1111 Franklin Street, 8th Floor
                           Oakland, California  94607

As to Defendants:          Megan Prout
                           Senior Vice President
                           Commercial Law and Litigation
                           333 Clay Street, Suite 1600
                           Houston, Texas  77002

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 53 -

Henry Weissmann
Daniel B. Levin
Colin Devine
Munger, Tolles & Olson LLP
350 S. Grand Ave, 50th Floor
Los Angeles, California 90071

Steven H. Goldberg
Nicole Granquist
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, California  95814

94.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

95.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, or emailing unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XXI.    EFFECTIVE DATE

96.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XXII.    RETENTION OF JURISDICTION

97.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of effectuating or enforcing compliance with the terms of this Consent Decree.

## XXIII.   MODIFICATION

98.    The terms of this Consent Decree, including any attached Appendices, may be modified only by a subsequent written agreement signed by the Parties.  Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval of the Court.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

99.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XIII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 55, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XXIV.   TERMINATION

100.   After Defendants have:  (a) operated under this Consent Decree for five (5) years and three (3) months from the Effective Date; and (b) complied with the requirements of this Consent Decree, including payment of all penalties and accrued stipulated penalties required by this Consent Decree, Defendants may serve on Plaintiffs a Request for Termination, stating that Defendants have satisfied these requirements, together with all necessary supporting documentation.  Plaintiffs shall respond within ninety (90) Days to Defendants' Request for Termination.  If Plaintiffs agree that the requirements for termination have been satisfied, the Parties shall submit for the Court's approval a joint stipulation terminating the Consent Decree.

101.   Following receipt by Plaintiffs of Defendants' Request for Termination, Plaintiffs shall respond within ninety (90) Days regarding any disagreement that the Consent Decree may be terminated and state the reason for such disagreement.  The Parties shall confer informally concerning the Request for Termination and any disagreement that the Parties may have as to whether Defendants have complied with the requirements for termination of this Consent Decree.  If Plaintiffs agree that the requirements for termination have been satisfied, the Parties shall submit for the Court's approval a joint stipulation terminating the Consent Decree.

102.   If Plaintiffs do not agree that the requirements for termination have been satisfied, Defendants may invoke Dispute Resolution under Section XIII (Dispute Resolution).  However, Defendants shall not seek Dispute Resolution of

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

any dispute regarding termination until sixty (60) Days after receipt of the Plaintiffs' response to Defendants' Request for Termination.

## XXV.   PUBLIC PARTICIPATION

103.   This Consent Decree shall be lodged with the Court for a period of not fewer than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The Parties agree and acknowledge that the final approval by Plaintiffs and entry of this Consent Decree are subject to notice of lodging of the Consent Decree and a public comment period.  Plaintiffs reserve the right to withdraw or withhold consent if the comments disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate.

104.   Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless Plaintiffs have notified Defendants in writing that Plaintiffs no longer support entry of the Consent Decree.

## XXVI.   SIGNATORIES/SERVICE

105.   Each undersigned representative of Defendants, the State of California Attorney General's Office, CDFW, CDPR, CSLC, OSFM, RWQCB, UC, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, PHMSA, and EPA certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms of this Consent Decree.

106.   This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.  For purposes of this Consent Decree, a signature page that is transmitted electronically (*e.g.*, by emailed PDF) shall have the same effect as an original.

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

## XXVII.   INTEGRATION

107.   This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXVIII.     FINAL JUDGMENT

108.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Parties.

## XXIX.   26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

109.   For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section III (Applicability), Paragraph 5; Section VI (Natural Resource Damages), Paragraph 12; Section IX (Injunctive Relief), Subparagraphs 22.a, 22.b, 22.c, 23.a, 23.b, 23.c, Paragraph 24, and related Appendix B; Section XIV (Reporting), Paragraph 57; Section XV (Certification), Paragraph 58; and Section XVI (Information Collection and Retention), Paragraphs 59, 60, and 66 is restitution or required to come into compliance with law to the extent it applies to federal agencies.


Dated and entered this _____ day of _____, 20__.


_____

UNITED STATES DISTRICT JUDGE


*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE UNITED STATES OF AMERICA:

3/12/2020

Date

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources
    Division U.S. Department of Justice

3/13/2020

Date

BRADLEY R. O'BRIEN
ANGELA MO
Environmental Enforcement Section
Environment and Natural Resources

Division

*United States of America and the People of the State of California v.
Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 58 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of
*United States of America and the People of the State of California v. Plains All
American Pipeline, L.P and Plains Pipeline, L.P.*

FOR THE UNITED STATES DEPARTMENT OF TRANSPORTATION,
PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION:

3 March 2020
Date

PAUL ROBERTI
Chief Counsel
U.S. Department of Transportation
Pipeline and Hazardous Materials Safety
Administration
1200 New Jersey Avenue, SE
Washington, DC 20590

*United States of America and the People of the State of California v.
Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 59 -

1  THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of
2  *United States of America and the People of the State of California v. Plains All*
3  *American Pipeline, L.P. and Plains Pipeline, L.P.*

4  FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

5

6  3-2-20

7  Date                                              SUSAN PARKER BODINE
8                                                    Assistant Administrator
9                                                    Office of Enforcement and Compliance
                                                     Assurance

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 60 -

1   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of
2   United States of America and the People of the State of California v. Plains All
3   American Pipeline, L.P. and Plains Pipeline, L.P.

4   FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

5

6   2/26/2020

7   Date                                          AMY C. MILLER
8                                                 Region 9 Director
                                                  Enforcement and Compliance Assurance
9                                                         Division
10                                                U.S. EPA Region 9
                                                  Mail Code ENF-1
11                                                75 Hawthorne Street
12                                                San Francisco, CA 94105

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                    *United States of America and the People of the State of California v.*
                       *Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
                                                                    Consent Decree

                                          - 61 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA DEPARTMENT OF FISH and WILDLIFE:

2/4/2020
Date

THOMAS M. CULLEN, JR.
Administrator
Office of Spill Prevention and Response

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA DEPARTMENT OF PARKS AND RECREATION:

_3/2/20_
Date

_Lisa Ann L Mangat_
LISA ANN L. MANGAT
Director
California Department of Parks
    and Recreation

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 63 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA STATE LANDS COMMISSION:

2/28/2020

Date

JENNIFER LUCCHESI
Executive Officer
California State Lands Commission

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 64 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION'S - OFFICE OF THE STATE FIRE MARSHAL:

3/4/2020
Date

THOMAS W. PORTER
Director
California Department of Forestry and
Fire Protection

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, CENTRAL COAST REGION:

March 2, 2020
_____
Date

_____
JOHN ROBERTSON
Executive Officer
Central Coast Regional Water
               Quality Control Board

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 66 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR THE REGENTS OF THE UNIVERSITY OF CALIFORNIA:

3/3/20
Date

BARTON LOUNSBURY
Senior Counsel
Office of the General Counsel

Date

PEGGY FIEDLER
Executive Director
UC Natural Reserve System

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 67 -

1  THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of
2  *United States of America and the People of the State of California v. Plains All*
3  *American Pipeline, L.P. and Plains Pipeline, L.P.*

4  FOR THE REGENTS OF THE UNIVERSITY OF CALIFORNIA:

5

6  _____                    _____
7  Date                                    BARTON LOUNSBURY
                                           Senior Counsel
8                                          Office of the General Counsel

9

10  3 March 2020                           _____
11  Date                                   PEGGY FIEDLER
                                           Executive Director
12                                         UC Natural Reserve System

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 67 A -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR PLAINS ALL AMERICAN PIPELINE, L.P.

2/25/2020
Date

HARRY PEFANIS
President

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
Consent Decree

- 68 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*

FOR PLAINS PIPELINE, L.P.


2/25/2020
Date

HARRY PEFANIS
President

# APPENDIX A

## (*Set of maps that generally depict Lines 901, 903, and 2000*)

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
*Consent Decree*



*Appendix A – Line 901*

Scale: 1:100,000

Sheet No: 1/1

Owner:

PLAINS
ALL AMERICAN
PIPELINE, L.P.



*Appendix A – Line 903*

Scale: 1:700,000

Sheet No: 1/1

Owner:

PLAINS
ALL AMERICAN
PIPELINE, L.P.

Sources: Esri, HERE, Garmin, Intermap, increment P Corp., GEBCO, USGS,
FAO, NPS, NRCAN, GeoBase, IGN, Kadaster NL, Ordnance Survey, Esri Japan,
METI, Esri China (Hong Kong), (c) OpenStreetMap contributors, and the GIS
User Community



*Appendix A – Line 2000*

# APPENDIX B

## *(PHMSA Injunctive Relief)*

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
*Consent Decree*

# APPENDIX B

## ARTICLE I – CALIFORNIA-SPECIFIC PROVISIONS

1.  **State Waivers for Lines 901, 903, and 2000 (not to include any replacement lines):**

    A.  Prior to restarting Line 901, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 901.  Plains must receive a State Waiver from the OSFM prior to restarting Line 901.

    B.  Prior to restarting non-operational segments of Line 903, Plains shall apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903.  Plains must receive a State Waiver from the OSFM prior to restarting Line 903.

    C.  Within 90 days of entry of the Consent Decree (CD), Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 903.  The State Waiver shall apply to the currently operational segment of Line 903 from Pentland to Emidio.

    D.  Within 90 days of entry of the CD, Plains must apply for a State Waiver through the OSFM for the limited effectiveness of cathodic protection on Line 2000.

    E.  To the extent that a State Waiver directly incorporates terms identified in section 4 (Integrity Management) below, as being applicable to Lines 901, 903, or 2000, Plains shall not contest the inclusion of those terms in the relevant State Waiver. Plains reserves its rights to contest on any grounds any additional terms that the OSFM may require as part of each State Waiver if one is received.  Nothing in this CD shall be construed to limit the authority of the OSFM to require additional terms or conditions in the State Waiver.  Further, nothing in the State Waiver shall be construed to limit the applicability of the terms set forth in the CD.

2.  **Replacement, Restart, or Abandonment of Lines 901 and 903:**

    A.  Plains shall replace the existing Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland with non-insulated pipe, if Plains is able to timely obtain: (1) agreements from shippers to transport sufficient quantities of product to make the cost of replacing the segments economically viable; (2) the Federal, State, and Local permits that may be required; and (3) whatever additional rights are needed, including rights-of-way that may be needed from landowners.  Obtaining required commercial commitments, permits, rights-of-way, and any other rights necessary for replacement is the sole responsibility of Plains.

1

      1.     On any replacement segments of Lines 901 or 903, Plains shall, prior to commencing operation of such segment(s):

          a.     Test for potential AC/DC interference.  Where potential AC/DC interference exists, proper mitigation of interference shall be designed and installed during construction of replacement lines.

          b.     Conduct a close interval survey (CIS) and AC/DC interference survey.

          c.     Based on the CIS and AC/DC interference surveys, place additional cathodic-protection test stations at locations where the surveys demonstrate potential cathodic-protection deficiencies, following review and consultation with the OSFM regarding proposed test station locations.

B.     As an alternative to replacement of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may restart the existing pipelines in accordance with the CD (including Appendix D) and applicable law.

C.     As an alternative to replacement or restart of Line 901 and segments of Line 903 from Gaviota to Sisquoc and Sisquoc to Pentland, Plains may abandon all or any segments in accordance with all applicable laws and regulations.

3.     **Third-Party Analysis of Line 2000 ILI Data**

A.     Plains shall select, subject to OSFM's approval, a third-party consultant to review and analyze ILI data for Line 2000 and provide a report to the OSFM on its findings.

B.     The consultant shall:

      1.     Review all ILI results and reports that Plains has received from ILI vendors for Line 2000;

      2.     Review Plains' processes and procedures for analyzing ILI data, and Plains' analysis of Line 2000 ILI results, and suggest potential improvements, if any, to Plains' current processes or procedures for analyzing ILI data;

      3.     Analyze Plains' implementation of its ILI assessment procedures for Line 2000.

      4.     Evaluate ILI vendor specifications to ensure that proper criteria and technology considerations are taken in to account in selecting the specific inspection tool(s) used in the future, with consideration given to best available technology for reliably detecting corrosion, general corrosion, selective seam-weld corrosion, and seam anomalies;

2

5.      Consider disclosed industry standards and regulations, including, but not limited to: 49 CFR § 195.452, the California Elder Pipeline Safety Act, ASME B31.4 (Pipeline Transportation Systems for Liquids and Slurries), ASME B31G (Manual for Determining Strength of Corroded Pipelines) or RSTRENG, API 1160 (Managing System Integrity for Hazardous Liquid Pipelines), API 1163 (In-Line Inspection Systems Qualification), ANSI/ASNT ILI-PQ (In-Line Inspection Personnel Qualification and Certification), NACE SP0169 (Control of External Corrosion on Underground or Submerged Metallic Piping Systems), and the PRCI Pipeline Repair Manual;

6.      Comply with additional requirements specified in the scope of work.

C.      The third-party consultant shall prepare a written report reflecting its findings, conclusions, and any recommendations for improvement found in conducting the analysis.

1.      The consultant may recommend improvements to Plains' ILI analysis process and procedures to improve the quality and integration of ILI data into its IMP going forward. Plains shall give due consideration to the results of the analysis and recommendations of the consultant but will maintain discretion over whether and how to implement any recommendations.

2.      The report shall include a list of documents and data reviewed in conducting the analysis, which shall be provided to the OSFM, if requested.

3.      Within 150 days of entry of the CD, the consultant shall provide a draft report to the OSFM and Plains for comment at the same time. Plains and the OSFM may provide comments to the consultant on the report within 21 days of receipt of the draft.

4.      Within 45 days after receiving comments (if any) from Plains and the OSFM, the consultant shall provide a final report to PHMSA, the OSFM and Plains.

4.      **Integrity Management**

A.      For any operating segments of Lines 901, 903, and 2000 (not to include any replacement lines):

1.      Plains shall implement the following measures and amend its IMP, as needed, to include the requirements of this section for the applicable lines:

a.      In addition to other dig criteria specified by regulation or in its IMP, Plains shall remediate all internal or external metal loss anomalies that have an ILI reported depth of 40% or greater wall

3

loss, within one year of discovery.  If Plains is unable to remediate such anomalies within one year of discovery, Plains shall notify OSFM and temporarily reduce the operating pressure and/or take further remedial action in accordance with 49 C.F.R. § 195.452 until the anomaly is remediated (or until otherwise authorized by OSFM).

b.  Analyze a sample of additional anomalies of varying amounts of metal loss between 10% and 40% for validation. The sample size shall be at least ten, unless fewer than ten anomalies are reported within that range, in which case Plains would examine the number of anomalies called.

c.  When sizing anomalies, apply interaction/clustering criteria of 6t by 6t for applicable ILI tools;

d.  Require its ILI tool vendor to include in the vendor's inspection report all metal loss anomalies of 10% or greater, based on raw data, prior to adding in any correction for tool tolerance;

e.  Any time a shrink sleeve is exposed during an anomaly investigation, remove the shrink sleeve, investigate circumferentially and longitudinally along the pipe for external corrosion and coating deterioration, and recoat with two-part epoxy;

f.  Send all field measurements to the tool vendor within 90 days of completing all digs for any ILI, provided that available data must be submitted prior to the next ILI run, and conduct annual meetings with the tool vendor to discuss tool performance;

g.  For any use of magnetic flux leakage (MFL) tools, require its ILI tool vendor to manually grade any metal loss anomalies initially identified by the ILI tool as greater than or equal to 20% of wall loss (i.e., have human eyes on the raw data and not simply rely on a computer algorithm), and require that the vendor's ILI report note any differences between what the computer algorithm reported and the vendor's manual grade;

h.  Where any ILI tool fails to record data for 5% or more of the external and/or internal surface area of the inspected segment, re-run the ILI tool to cover the area of failure;

i.  Integrate and analyze available data in its P&M process, including:

i.  Assessment data from ILI tool runs;

ii.  Dig and repair data;

4

iii.    Corrosion data, such as survey results, chemical treatments, and cleaning-pig results;

iv.    Operational data, such as pressure and flow data;

v.    Emergency response data, such as tactical response plans and results of recent drills on the pipeline, including locations of conduits to water, as identified in emergency response plans;

vi.    Evaluation of the capability of the leak detection system, which shall include identification of each leak detection segment between block valves, consideration of length and size of the pipeline, type of product carried, proximity to high consequence areas, swiftness of leak detection (the time period required for a leak to be operationally isolated and/or the pipeline to be shut down), type and location of valves, valve closure time, EFRD analysis results, the location of nearest response personnel, leak history, and risk assessment results;

vii.    Other pipeline characteristics, such as length, diameter, presence in HCAs and Environmentally and Ecologically Sensitive Areas (as defined in regulations promulgated pursuant to California Government Code § 8574.7(d), including 14 CCR 817.04(k)(3)(A)), maximum operating pressure, normal operating pressure, coating type, elevation data, water crossings, proximity to water bodies, casings, geohazard threats, maximum flow rate, and maximum rupture volume.

2.    ILI Measures

a.    <u>Initial ILI Runs</u>.  Each year during the first two years after entry of the CD, Plains shall conduct at least two ILIs using: (1) a high-resolution MFL tool; and (2) a UT tool with an inertial measurement unit (IMU).  Plains shall compare both runs and evaluate all available information, including these tool runs and corresponding IMU data.  If a UT tool run is unsuccessful, Plains shall identify the limitations that prevented the UT tool run from being successful, consider changes to increase the likelihood of a successful UT tool run, and use best efforts to rerun the UT tool within six months (subject to tool availability).

i.    All ILI assessments in the first two years shall include a sizing tool and a tool capable of identifying dents.

5

      ii.     In each of the first two years, Plains shall run the second ILI tool as soon as practicable after running the first ILI tool, but no later than 90 days after completion of the first ILI tool run.  If one of the two tool runs is unsuccessful, Plains shall re-run the tool that was unsuccessful (but need not re-run the tool that was successful) even if the re-run of the unsuccessful tool run would occur more than 90 days from the successful tool run.

b.    <u>Subsequent ILI Runs</u>.  After the first two years, Plains shall run at least one MFL or one UT tool every year, using a different ILI tool type (MFL or UT) in each alternating year.  Alternatively, Plains may run a UT tool each year.  If, however, any UT tool run is unsuccessful, Plains shall document the reasons why the UT tool was unsuccessful, consider changes to increase the likelihood of a successful UT tool run, and may use MFL technology to complete that year's ILI, but must run a UT tool the following year.

c.    <u>All ILI Runs</u>.  Plains shall provide ILI results and reports to the OSFM within 30 days from its availability to Plains.

5.    **<u>Valves</u>**

A.    Within one year after entry of the CD for any operating segments of Lines 901, 903, and 2000, and for any new pipeline segments replacing those lines, Plains shall conduct EFRD analyses, which shall include consideration of:

1.    Swiftness of leak detection and pipeline shutdown capabilities, type of commodity carried, rate of potential leakage, volume that can be released, topography or pipeline profile, potential for ignition (for spilled commodity), proximity to power sources, location of nearest response personnel, specific terrain between the pipeline and the HCA, and benefits expected by reducing the spill size.

2.    Valve placement and method of valve actuation for all valves (not including valves used for instrumentation purposes, such as on tubing on transmitter calibration manifolds).

B.    Plains shall submit the EFRD analyses to OSFM within one year of entry of the CD.

C.    Where practical, Plains shall confirm that check valves that are necessary for the safe operation of the pipeline are in good working order at intervals required by other valve maintenance activities and associated procedures.

6

6.      **Risk Analysis**

    A.      For any operating segments of Lines 901, 903, or 2000 (not to include any replacement lines):

        1.      Plains shall submit a risk analysis under proposed regulation 19 CCR § 2111(c) to OSFM (dated January 17, 2019 and publicly noticed in the California Regulatory Notice Register on February 15, 2019), or the final version of such regulation as it may be made effective in the future, regardless of whether or not those lines would otherwise be subject to the proposed regulations.

            a.      The information in the risk analysis shall be limited to the information listed in proposed regulation 19 CCR § 2111(c).

            b.      Plains' responsibility under this subsection is limited to providing the risk analysis to OSFM; Plains will maintain discretion over whether and how to implement the results of the analysis.  The OSFM may review and comment on the risk analysis submitted by Plains consistent with provisions found in the proposed regulations, 19 CCR 2100 et seq.

            c.      The risk analysis shall be due within one year from entry of the CD.

7.      **Leak Detection**

    A.      For any operating segments of Lines 901, 903, or 2000 (not to include any replacement lines), Plains shall confirm in writing to the OSFM within 30 days of entry of the CD that it has installed a Computational Pipeline Monitoring (CPM) Real Time Transient Model (RTTM) that is compliant with API 1130.

    B.      Within 12 months after initiating operation of any replacement lines for Lines 901 or 903, Plains shall verify and certify to the OSFM that all Pipeline and Instrumentation Drawings (P&IDs) reflect correct "as-built" information.

8.      **Non-waiver**

    A.      Nothing in this CD shall excuse Plains from otherwise complying with the AB 864 regulations when they are promulgated.

## ARTICLE II – COMPANY-WIDE PROVISIONS ON REGULATED PIPELINES

9.      **Integrity Management**

    A.      New Procedures for Interim Reviews and Assessments

1.      Plains shall modify Section 9.5 of its Integrity Management Plan ("Continual Evaluation and Assessment of Pipeline Integrity") to provide for an annual, but not to exceed 15 months, Interim Review of each pipeline segment it operates to determine whether, since the last assessment (whether it was an Interim Assessment or a full periodic assessment under Section 6), conditions have changed or new information has been obtained that could significantly impact already-identified threats or create new threats for that segment. If so, Plains shall evaluate whether it should implement any P&M measure(s) to address that threat prior to the next regularly-scheduled assessment. Section 9.5 shall list all the categories of potential threats to be considered as part of the Interim Review and the types of conditions, information and data that will be included in the information analysis conducted under 49 CFR § 195.452(g).

2.      Plains shall modify Section 9.5 of its IMP to provide new forms for P&M measures or actions to be taken as a result of an Interim Review. Section 9.5 shall provide that Plains' Integrity Engineer may recommend any P&M measures that may be appropriate, including any P&M measures that could be recommended following a full assessment performed under Section 6 of its IMP.

3.      Plains shall submit its proposed modifications of Section 9.5 to PHMSA no later than 60 days after entry of the CD. If PHMSA does not object or request any modification within 60 days, Plains shall proceed to implement the revised procedures in Section 9.5, which shall be completed within 18 months from entry of the CD.

B.      Documentation for P&M Recommendations

1.      Within 90 days from entry of the CD, Plains shall revise Part B of its P&M Recommendation form (F11-2), to expand the scope and content of comments in the "Basis of Recommendation" field to provide a narrative explanation that reflects, at a minimum:

   a.      What drew the engineer's attention and caused him or her to make the recommendation (such as an anomaly, pattern, trend or potential correlation observed in the data, a particular event or occurrence, a particular change in the operation or configuration of the line or in its surrounding environment, "lessons learned" from another event or occurrence, a corporate goal or initiative, etc.);

   b.      The specific risk (likelihood or consequence of failure, or both) or concern that the recommended measure is intended to investigate or address; and

8

   c.  The goal or intended outcome that the recommended P&M measure is intended to achieve with regard to that specific risk or concern.

  2.  In the new forms for the Interim Review procedure described in Paragraph A above, Plains shall likewise provide a narrative explanation of the bases for any recommended P&M measures.

  3.  In Part B of its Preventive and Mitigative Evaluation Recommendation Form (F11-2), Plains shall continue to identify the anticipated completion date for the P&M measure in the column titled "Deadline Date."

C.  Tracking of P&M Measures

  Plains shall document P&M measures recommended but not implemented. Plains shall document implemented P&M measures through to completion, whether undertaken pursuant to an Interim Review under Section 9.5 or a full assessment under Section 6, such that these actions will be properly documented under 49 CFR § 195.452(l).

10. **Valves and O&M**

A.  Within two years after entry of the CD, Plains shall conduct EFRD analyses for all Regulated Pipelines for which it has not previously completed an EFRD analysis.

B.  Within two years of entry of the CD, Plains shall develop and implement procedures to:

  1.  If a valve fails to respond properly on first actuation command, document the failure and review historical records for that valve to identify any systemic issues.

  2.  Adjust Plains' surge analyses and Emergency Response Plans, if necessary, to account for identified systemic issues associated with valve closure times.

  3.  Timely communicate to the Control Room the status of valve maintenance activity for those valves on Regulated Pipelines that are capable of being operated by the Control Room.

  4.  Verify that personnel assigned to operator-qualification tasks for valve maintenance are qualified to perform those tasks.

C.  Plains shall make all repairs necessary to keep valves in good working order within one year of discovery that the valve is not operating as intended, or, if not possible, Plains shall provide timely notification (including justification) to PHMSA or OSFM as applicable.

9

D.    For all field personnel who perform maintenance on facilities, equipment, or devices, Plains shall provide training:

1.    Within two years of entry of the CD, that addresses the importance of complying with Plains' policy requiring notification of Control Room personnel before beginning maintenance activities on any such facility, equipment, or device that could change the status of any pump, valve, CPM device, SCADA device, pressure or flow metering or rate that is monitored by the Control Room.  Plains shall include in the training a requirement that employees shall notify the Control Room before entering a facility to perform maintenance, or, if not possible, immediately after entering.

E.    Plains shall improve existing valve maintenance recordkeeping to include confirmation whether the valve has been actually operated during maintenance.

11.   **Leak Detection**

A.    Within 90 days after entry of the CD, Plains shall create and maintain a list of its regulated mainline pipelines, excluding gathering lines and Delivery Lines, to indicate which of the following three rupture-detection methods, if any, are used on each line: (1) Rate of Change Combination alarm; (2) low discharge pressure alarm; or (3) 5-minute computational pipeline monitoring (CPM) alarm.

1.    Within one year after entry of the CD, for any regulated mainline pipeline identified in the list created pursuant to this paragraph that does not utilize at least one of the three rupture detection methods, Plains shall implement at least one.

B.    For the term of the CD, Plains shall conduct annual training for controllers on attributes and benefits of various methods of leak detection, including Analog High/Low Threshold, Alarm Deadband, Creep Deviation, and Analog Rate of Change.

C.    Within 18 months of entry of the CD, for its CPM systems, Plains shall analyze and evaluate the use of accumulated deviation rolling time periods longer than 24 hours.

1.    Plains shall document its analysis and provide it to PHMSA for comment, but Plains shall maintain discretion over what actions to take, if any, and how to implement the results of its analysis.

D.    Within six months of entry of the CD, Plains shall have in place a written procedure for Selection of Leak Detection Method for its Regulated Pipelines.

1.    Plains shall provide the Selection of Leak Detection Method procedure to PHMSA for comment, but Plains shall maintain discretion over and be

10

responsible for the final content and implementation of the Selection of Leak Detection Method procedure.

E.    Plains will hold periodic (at least annual) meetings to solicit feedback from Control Room and operations maintenance personnel regarding potential improvements to leak detection.  The results of the meetings will be documented and shared with appropriate personnel.  The recommendations will be evaluated and documented.

F.    Instrumentation and Display

    1.    To minimize and prevent false operating conditions from being displayed, Plains shall, per API 1175 (Pipeline Leak Detection – Program Management (1st Edition, December 2015)), within three years from entry of the CD or such earlier time as required by regulations:

        a.    Provide a procedure by which operations maintenance personnel and/or Control Room personnel identify and record when instrumentation has been impeded on an unplanned basis and is no longer providing accurate and updated values on pressure, flow, or temperature due to scheduled or planned maintenance activities.

        b.    Track these conditions through to resolution, including instrumentation relocation when necessary.

12.    **Control Room Management**

A.    For Lines 901 and 903, prior to resuming operations on segments currently not in service or commencing operations on any replacement for those lines, Plains shall:

    1.    Complete point-to-point verification reviews for all components of its SCADA system, including displays, alarm setpoint values, and alarm log descriptors;

    2.    Update its piping and instrumentation diagrams, software, manuals, and operating procedures to accurately reflect the existing field configuration;

    3.    Confirm that all Lo-Lo and Hi-Hi SCADA alarms are configured and programmed as critical safety related alarms for pressures and flows, and that alert notifications are correct and accurate; and

    4.    Update the names of all facilities, equipment, devices, measurement points and locations in console displays, the Control Room Management Plan and Control Center General Procedures, shift reports, and form templates to reflect current operating conditions (updating or removing out-of-date names).

11

B.  For Line 2000, within six months after entry of the CD, Plains shall confirm to the OSFM that all Alarm Descriptors on the control console are accurate.

C.  Plains shall implement the Control Room Management Plan measures and Control Center General Procedures measures referenced in paragraph 23(a) of the CD.

13.  **Emergency Response and Oil Spill Response Plans**

A.  California-Specific Provisions:

1.  Plains shall review and update its Bakersfield District Response Zone Plan periodically, as required by applicable regulations, including 14 CCR 816.05.  Plains' review shall include the portions of its Response Plan that address identification of culverts along the pipelines' rights-of-way, potential receptors, access to potential spill sites, and procedures to assure protection of the environment from oil spills. To the extent that Plains has a Tactical Response Plan, Plains shall make it available to the Governments upon reasonable request and as needed in connection with a drill or response to a spill.

B.  Company-Wide Provisions

1.  Plains shall, at least once before two years from the date of entry of the CD, and at least one additional time prior to termination of the CD, survey its rights-of-way for all regulated mainline pipelines of at least 24" diameter, by foot or air patrol, to identify all culverts and shall ensure the emergency response plans covering those pipelines (a) reflect the locations of all culverts identified, and (b) address potential containment and recovery techniques for spills that may occur near identified culverts.

2.  Within 180 days of entry of the CD (or within 180 days of a new employee being hired, or an existing employee being assigned to relevant duties) Plains shall provide or confirm that it has provided all employees who may reasonably be involved in spill response with NIMS ICS training at the 100 and 200 levels. Within 180 days of entry of the CD, Plains shall also provide or confirm that it has provided ICS training at the 300 and 400 level to any employee who may reasonably be expected to coordinate with the Incident Management Team during a spill response.  Plains shall provide refresher training to employees within two years after initial training and shall maintain certification of such training and make such documents available to Plaintiffs upon request.

3.  Going forward from the date of the CD, Plains shall include in its contracts with all Oil Spill Response Organizations (OSROs) a requirement that the OSROs' employees and contract employees receive training at the same level specified for Plains employees, based on their responsibilities, prior to participating in any incident response on behalf of

12

Plains.  Plains shall require its OSRO contractors and subcontractors to register with a third-party online compliance verification system and shall use that online verification system to spot-check the NIMS ICS Training histories for randomly-selected OSRO personnel who participate in Plains' table-top drills.  Plains' spot-check shall include a reasonable number of OSRO personnel participating in the drills to help ensure that all OSRO personnel participating in incident response are trained at the ICS levels specified herein.

4. Within 180 days of entry of the CD, Plains shall provide or confirm that it has provided all Control Room supervisors with training regarding the Control Room's emergency response responsibilities and procedures. Plains shall provide this training annually thereafter.  Plains shall maintain auditable documentation that supervisors have received such training and shall make such documentation available to PHMSA upon request.

5. Plains shall notify PHMSA (and, for California Lines, California OSPR and OSFM) of company-sponsored and organized drills in accordance with applicable regulations, including table tops (either with or without equipment deployment).  Plains shall provide PHMSA (and, for California Lines, California OSPR and OSFM) with after-action reports for each table-top drill involving equipment deployment within 90 days of completion of the drill.  Plains shall include lessons learned in such after-action reports and shall consider such lessons learned for incorporation into future drills or exercises.

6. For the term of the CD, a representative of Plains' Control Room management team shall participate in any after-action or "hot wash" activity designed to identify areas of improvement following a release, and shall share, in documented form, the information obtained with relevant Control Room personnel.

14. **Safety Management System (SMS)**

A. Plains shall continue to implement its SMS, which is based on recommended practices in American Petroleum Institute (API) RP 1173 (Pipeline Safety Management Systems (1st Edition, July 2015)).

1. Prior to the termination of the CD, Plains shall hire a third party to assess the conformance of its SMS to API RP 1173.  Plains shall direct the third party to transmit a copy of the final report to PHMSA.  Plains' responsibility under this paragraph shall be limited to engaging the third party to prepare the report and providing the report to PHMSA. Any nonconformance identified by the third party shall not be a violation of the CD.

13

B.  Plains shall participate in the API Pipeline SMS Group to exchange ideas, information, and lessons learned about implementation of API RP 1173.

15.  **Drug and Alcohol Program**

A.  Within one year of entry of the CD, Plains shall review and revise its drug and alcohol misuse plans to comply with post-accident and random drug and alcohol testing required by 49 C.F.R. §§ 199.105(b), (c), and 49 C.F.R. § 199.225(a). This shall include a review of all covered positions among Control Room personnel and field personnel for inclusion in the plans for post-accident testing. Covered positions shall include any person with authority to shut down a pipeline, including Control Room shift supervisors. Plains shall ensure adequate implementation and documentation for all post-accident drug/alcohol tests as required by 49 C.F.R. § 199.117(a)(5) and 49 C.F.R. §§ 199.227(b)(4), (c)(1)(v) and in accordance with its procedures. Should Plains determine that it is not possible to administer a post-accident drug/alcohol test on a covered employee whose performance of a covered function either contributed to the accident or could not be completely discounted as a contributing factor within the time specified in the regulations, Plains shall document why the test was not administered within such time.

14

# APPENDIX C

## (*Intentionally left blank*)

*United States of America and the People of the State of California v.*
*Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
*Consent Decree*

# APPENDIX D

## *(Remaining Corrective Actions from the PHMSA CAO)*

*United States of America and the People of the State of California v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*
*Consent Decree*

-90-

## APPENDIX D

1.      All outstanding corrective actions in PHMSA's closed Corrective Action Order (CAO), CPF No. 5-2015-5011H, as amended, are hereby merged into this Consent Decree, as outlined below, and subject to the sole regulatory oversight of the OSFM.

a.  **Line 901 Shutdown.** Plains shall not operate Line 901 until authorized to do so by the OSFM.

b.  **Restart Plan for Line 901.**  If Plains seeks to restart Line 901, Plains shall develop and submit, at least 60 days in advance of a scheduled restart, a written Restart Plan for Line 901 to the OSFM for review and approval.  Once approved by the OSFM, the Restart Plan shall be incorporated by reference into this Consent Decree.  The Restart Plan shall include:

1)  Documentation of the completion of all mandated actions, and a management of change plan to ensure that all procedural modifications are incorporated into Plains' operations and maintenance procedures manual;

2)  Provisions for adequate patrolling of Line 901 during the restart process and shall include incremental pressure increases during start-up, with each increment to be held for at least two hours;

3)  Sufficient surveillance of the pipeline during each pressure increment to ensure that no leaks are present when operation of the line resumes;

4)  A specific day-light restart that includes advance communications with local emergency response officials;

5)  Master Control Room enhancements, including:

a)  Implementation of advanced leak-detection

capabilities that include mass balance and line pack calculations (the total volume of liquid present in a pipeline section). The leak-detection improvements shall include:

1.  Revised alarm threshold adjustments;

2.  Additional required instrumentation; installation of additional safety valves as a result of Plains' EFRD evaluation;

b)  Review and update of the alarm set-point values of pressures and flows to account for hydraulics and the interaction of topography, pipeline status (running and shutdown), sensor location, and historical pressure and flow values by configuration, in order to provide a basic level of leak detection when the pipeline is down and not running.  Dynamic alarm limits based on pipeline status shall be used if hydraulically required;

c)  Implementation of modifications to the existing alarm priority/severity system to incorporate low and high pressure and flow values in major or safety-related alarm (SRA) categories;

d)  Implementation of emergency shutdown programming associated with Line 901 that can be executed by the Shift Supervisor or Controller;

e)  Development and implementation of training associated with the emergency shutdown programming described above; and

f)  Provision of additional controller training that

incorporates awareness of abnormal operations and reduced-pressure operational characteristics, including alarm set-point revisions for conditions similar to the Refugio Incident.

6)      Elimination and documentation of actions taken to prevent inappropriate uncommanded Valve 460 (Sisquoc Conoco) status and position changes;

7)      Installation of additional safety valves as a result of Plains' EFRD evaluation;

8)      Installation of additional pressure sensors as a result of Plains' surge study;

9)      Initiation of a UT ILI within seven days after steady-state operation is achieved in accordance with an ILI schedule approved by the OSFM.  The tool run shall be initiated during daylight hours.  If the tool run does not collect a complete data set, the UT tool shall be promptly re-run.  A report from the ILI tool vendor shall be completed within 30 days of running the tool. Plains shall complete its review and analysis of the ILI report within 15 days of receiving the report.  Provisions shall be made to address any immediate repairs that result from an initial data analysis of the UT ILI run; and

10)    **Corrosion Prevention.**  Plains shall include a long-term plan to address corrosion under insulation (CUI) on Line 901 that meets the requirements of 49 C.F.R. Part 195, Subpart H, in any Restart Plan.  Plains may address the inadequate corrosion prevention through any method approved by the OSFM, including but not limited to the provisions contained in CAO Amendment No. 3, Section 2(a)-(c).

c. **Return to Service of Line 901.** After the OSFM approves the Restart Plan, Plains may return Line 901 to service but the operating pressure shall not exceed eighty percent (80%) of the actual operating pressure in effect immediately prior to the Refugio Incident on May 19, 2015.

d. **Removal of Pressure Restriction of Line 901.** The OSFM may allow the removal or modification of the pressure restriction upon a written request from Plains demonstrating that restoring the pipeline to its pre-Refugio Incident operating pressure is justified, based on a reliable engineering analysis showing that the pressure increase is safe, considering all known defects, anomalies, and operating parameters of the pipeline. The OSFM may allow the temporary removal or modification of the pressure restriction upon a written request from Plains demonstrating that temporary Preventive and Mitigative (P&M) measures will be implemented prior to and during the temporary removal or modification of the pressure restriction. The OSFM's determination shall be based on consideration of the Refugio Incident's cause and Plains' evidence that P&M measures provide for the safe operation of Line 901 during the temporary removal or modification of the pressure restriction.

e. **Line 903 Shutdown.** After purging Line 903, Plains shall not operate Line 903 between Gaviota and Pentland stations until authorized to do so by the OSFM.

f. **Restart Plan for Line 903.** If Plains seeks to restart the Gaviota-to-Pentland segment of Line 903, Plains shall develop and submit, at least 60 days in advance of a scheduled restart, a written Restart Plan for the Gaviota-to-Pentland segment of Line

903 to the OSFM for review and approval.  Once approved by the OSFM, the Restart Plan shall be incorporated by reference into this Consent Decree.  In addition to all the requirements set forth in the above subparagraphs 1.b.1)-11), excluding subparagraph 1.b.6), the Restart Plan shall include:

1)      Provisions for adequate patrolling during the restart process and the inclusion of incremental pressure increases during start-up, with each increment to be held for at least two hours;

2)      Sufficient surveillance of the pipeline during each pressure increment to ensure that no leaks are present when operation of the line resumes; and

3)      Provisions for a daylight restart and advance communications with local emergency response officials.

g.  **Line 903 Return to Service.**  After the OSFM approves the Restart Plan for the Gaviota-to-Pentland segment of Line 903, Plains may return that segment to service, but the operating pressure shall not exceed eighty percent (80%) of the highest pressure sustained for a continuous 8-hour period between April 19, 2015, and May 19, 2015, for Line 903 (Gaviota-to-Sisquoc and Sisquoc-to-Pentland segments).

h.  **Removal of Pressure Restriction for Line 903.**  After a return to service, Plains may request the OSFM to remove the pressure restriction for the Gaviota-to-Pentland segment of Line 903.

1)      The OSFM may allow removal or modification of the pressure restriction upon a written request from Plains demonstrating that restoring the pipeline to its pre-Refugio Incident operating pressure is justified, based on a reliable

engineering analysis showing that the pressure increase is safe, considering all known defects, anomalies, and operating parameters of the pipeline.

2)      The OSFM may allow the temporary removal or modification of the pressure restriction upon a written request from Plains demonstrating that temporary P&M measures will be implemented prior to and during the temporary removal or modification of the pressure restriction. The OSFM's determination shall be based on consideration of the Refugio Incident's cause and Plains' evidence that P&M measures provide for the safe operation of Line 903 during the temporary removal or modification of the pressure restriction.  Requests for removal of the pressure restriction may be submitted by pipeline segment.

i.   **Notifications.**  Plains shall provide notification to the OSFM within five business days of any of the following events: any investigation and remediation field actions for identified anomalies (i.e., digs and repairs), ILI tool runs, and/or startup dates.

j.   **Reporting Requirements for Lines 901 and 903.**  If and when Plains has concluded all items in this Appendix D, Plains shall submit a final Appendix D Documentation Report to the OSFM for review and approval.

1)      The OSFM may approve the Appendix D Documentation Report incrementally without approving it in its entirety.

2)      Once approved by the OSFM, the Appendix D Documentation Report shall be incorporated by reference into this Consent Decree.

3)      The Appendix D Documentation Report shall include but not be limited to:

      A.   Table of Contents;

      B.   [*intentionally left blank.*]

      C.   [*intentionally left blank.*]

      D.   Summary of all tests, inspections, assessments, evaluations, and analysis to the extent required under this Appendix D;

      E.   [*intentionally left blank.*]

      F.   [*intentionally left blank.*]

      G.   Lessons learned while fulfilling the requirements of this Appendix D.