LATHAM & WATKINS LLP
  Jessica Stebbins Bina (Bar No. 248485)
  *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND
  Nicholas McDaniel (*pro hac vice* forthcoming)
  *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455
Facsimile: +1 202.853.3491

*Attorneys for Nonparties Sable Offshore Corp. and Pacific Pipeline Company*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA; THE PEOPLE OF THE STATE OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P. and PLAINS PIPELINE, L.P.,<br><br>Defendants. | Case No. 2:20-cv-02415-SVW-SSCx<br><br>**NONPARTIES SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S MEMORANDUM IN OPPOSITION TO CALIFORNIA PLAINTIFFS' *EX PARTE* APPLICATION**<br><br>Dept: 10A<br>Action Filed: Mar. 13, 2020<br>Judgment: Oct. 14, 2020 |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

CONTENTS

| **Clause** | | | **Page** |
|---|---|---|---|
| I. | | INTRODUCTION | 3 |
| II. | | FACTS | 6 |
| III. | | THE APPLICATION SHOULD BE SUMMARILY DENIED | 10 |
| | A. | The Application Fails To Comply With Local Rule 7-19. | 10 |
| | B. | The Application Fails To Comply With Rule 65(b). | 11 |
| | C. | Sable Is A Non-Party. | 13 |
| | *D.* | The Application Fails To Demonstrate A Need For Ex Parte Relief. | 14 |
| IV. | | THE STATE'S CLAIMS SUBSTANTIVELY FAIL | 17 |
| | A. | This Court Lacks Jurisdiction To Consider The Propriety Of PHMSA's Orders. | 17 |
| | B. | PHMSA, Not OSFM, Has Regulatory Authority Over The Pipelines. | 18 |
| | C. | The State Has Not Demonstrated A Violation Of The Consent Decree. | 20 |
| | D. | The DPA Order Constitutes Force Majeure Under The Consent Decree. | 22 |
| | E. | The Alleged Trespass Claim Is Outside The Scope Of This Proceeding. | 23 |
| | F. | The State's Request To Stay The DPA Order Is Unmeritorious And Not Properly Before This Court. | 23 |
| V. | | CONCLUSION | 24 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

## I.       **<u>INTRODUCTION</u>**

The State of California asks this Court to take the extraordinary step of issuing ex parte injunctive relief against Sable and Pacific Pipeline Company (collectively "Sable")—two entities that are not even party to this action—to prohibit compliance with a directive issued by the United States Department of Energy under authority delegated directly by the President of the United States, and issue a stay of that federal order—all with less than one day's notice and under highly abbreviated briefing. The State's application lacks any legitimate basis, procedurally or substantively, and its demand for emergency consideration on an ex parte basis is wholly unwarranted. And even if it could somehow clear those hurdles, the State has not even argued that the test for an injunction or a stay are met.

At the outset, the State's application is procedurally deficient in multiple respects. The motion was served at nearly 7 p.m. on March 16, 2026, with a response deadline of 3 p.m. the following day.  The application contains no meet and confer declaration, as required by Local Rule 7-19, nor does it comply with the requirements for ex parte issuance of injunctive relief set forth in Rule 65(b) of the Federal Rules of Civil Procedure. This alone warrants summary denial.

The State's motion is also fundamentally misdirected. Sable is not a party to this litigation. While Sable has contractually agreed to be bound by certain provisions of the Consent Decree, it has never been joined in this case, and no cause of action is pending against it here. The State is asking the Court for injunctive relief against a non-party and a stay pending review of federal agency action, all through an ex parte process—an approach entirely unsupported by, and fundamentally distinct from, the contempt caselaw the State cites.

The application also comes far too late. The federal Pipeline and Hazardous Materials Safety Administration ("PHMSA") reclaimed jurisdiction over the pipeline at issue nearly four months ago, in December 2025. PHMSA's assertion of

jurisdiction was based on simple changed circumstances: Sable purchased both offshore and onshore oil infrastructure assets and, unlike Plains (the previous operator), began operating the entire system as a single integrated, interstate pipeline. Following PHMSA's determination and based on these changed factual circumstances, the agency issued an emergency Special Permit consistent with the Consent Decree's requirements and approved Sable's Restart Plan. Until now, the State has not challenged any of these actions before this Court. Instead, the State and several non-governmental organizations petitioned the Ninth Circuit directly to invalidate the Special Permit and the Restart Plan approval. The NGOs sought emergency injunctive relief to prevent Sable from restarting the pipelines under PHMSA's supervision while those petitions were pending—and the Ninth Circuit denied that request. The State did not seek reconsideration. Having already litigated and lost this precise issue in the Ninth Circuit, the State offers no persuasive reason for a different outcome here.

Even setting aside these procedural defects, the State's application fails on the merits. The crux of the State's position is that: (1) only California, through the Office of the State Fire Marshal ("OSFM"), can authorize a return to operations, not PHMSA, and (2) OSFM and PHMSA have a very narrow disagreement about the *timing* of one subcategory of pipeline repairs which somehow warrants enjoining Sable from compliance with a federal order. Neither claim has merit, and neither rise to the level of requiring the extraordinary emergency relief requested.

The State's insistence on jurisdiction is wrong, because the subject pipeline is an interstate pipeline.  Under the Pipeline Safety Act, 49 U.S.C. § 60101 et seq., PHMSA is the designated authority for regulation of interstate pipelines. State authorities are expressly prohibited from adopting or continuing safety standards for interstate pipeline facilities. *Id.* § 60104(c). When the Consent Decree was entered, the pipelines were classified as intrastate because the onshore segments were wholly

within California and the prior owner had cancelled federally administered FERC tariffs. But Sable's acquisition encompassed offshore platforms and pipeline segments in federal waters, and in December 2025, PHMSA determined that the entire system constitutes an interstate pipeline. As a matter of federal law, OSFM therefore lacks authority to impose or maintain safety standards over the system. The Consent Decree was never intended to override the United States Code or vest OSFM with jurisdiction over an interstate pipeline that federal law assigns exclusively to PHMSA.

The State has also failed to demonstrate any real safety concern or actual violation of the Consent Decree—a decree that was due to be terminated two months ago and for which PHMSA had noticed its intent to seek termination.  ECF 36. Although the State portrays Sable as operating with reckless disregard for safety, the facts say otherwise.  Under PHMSA's direct supervision, Sable is following restart procedures fully consistent with the Consent Decree and—as the State concedes— which "mirror[]" those that OSFM itself had required. ECF 43 at 18. OSFM has offered no evidence that the single area of compliance disagreement—the timing for one set of repairs that are already above and beyond standard pipeline safety requirements—presents a genuine safety concern. Nor is there any basis for the proposition that PHMSA—the agency Congress charged with overseeing pipeline safety—is incapable of managing pipeline safety. And an ex parte injunction barring operations is an inappropriate remedy even if a Consent Decree violation were proven. The Consent Decree contains its own dispute resolution procedures, force majeure mechanisms, and enumerated remedies for alleged violations, none of which the State has respected or sought to employ.

Finally, the State's remaining arguments—that the Defense Production Act Order cannot lawfully excuse compliance with the Consent Decree, and that the pipeline constitutes a trespass on State Parks land—are meritless. The Consent

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

5

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

Decree expressly contemplates that obligations may be excused or delayed by force majeure events. The State itself concedes that Sable is legally obligated to comply with its co-Plaintiff's DPA Order and that doing so requires conduct the State views as inconsistent with the Consent Decree. That is the very definition of force majeure. As for the trespass claim, it is the subject of a separate pending lawsuit, *Sable Offshore Corp. v. Quintero*, No. 2-26-cv-02739 (C.D. Cal. Mar. 13, 2026), and lies entirely outside the scope of this proceeding.

For all of these reasons, the Court should deny the State's ex parte application in its entirety.

## II. FACTS

For decades, ExxonMobil (and its subsidiaries) operated offshore oil production platforms that moved produced crude oil via pipeline from the Outer Continental Shelf (OCS) to its onshore oil processing facility (Las Flores Canyon) in Santa Barbara County, CA. The crude oil then was transported by an onshore pipeline owned and operated by Plains All American LP ("Plains"), running from Las Flores Canyon to a terminal in Kern County, CA, known as the "Las Flores Pipeline." ECF 43-1 at 209. Historically, the Las Flores Pipeline was an interstate pipeline that filed tariffs with the Federal Energy Regulatory Commission (FERC). *Id.* at 210. Pursuant to the federal Pipeline Safety Act, 49 U.S.C. §60104, the Pipeline and Hazardous Materials Safety Administration (PHMSA) of the US Department of Transportation served as the exclusive safety regulator for interstate pipelines such as the Las Flores Pipeline.

In May 2015, a segment of the Las Flores Pipeline ruptured, releasing crude oil into areas in Santa Barbara, CA and surrounding areas. Several agencies of the United States and California were involved in the response. Plains was directed to cease flowing oil through the Las Flores Pipeline until further investigation and remedial efforts occurred. In October 2020, various federal and state agencies

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

entered into a Consent Decree with Plains to settle alleged violations of the federal Pipeline Safety Act and other spill-related claims. ECF 6-1. The Consent Decree established several injunctive measures, as well as requirements for Plains to pay civil penalties and damages. However, it was not intended to exist in perpetuity. Rather, the Consent Decree expressly provided that it would terminate after the defendant complied with the Consent Decree for a period of five years and three months from its entry. *Id.* at 59. That date passed in January 2026.

In 2016, Plains cancelled the FERC tariffs it had previously filed for the Las Flores Pipeline, due to a lack of product flow. Accordingly, PHMSA sent a letter in May 2016 to the California Office of the State Fire Marshal (OSFM), informing it that the Las Flores Pipeline was now deemed an intrastate line. ECF 43-1 at 210. Because OSFM has certification from PHMSA to administer its own hazardous liquids pipeline program for intrastate lines pursuant to 49 U.S.C. §60105(a), the letter indicated that OSFM would serve as the safety regulator for the Las Flores Pipeline, although it added that this status was subject to change based on future events or newly-discovered facts. *Id.*

Between then and 2024, Plains, and then Pacific Pipeline Company, then an ExxonMobil affiliate, continued to maintain the pipeline pursuant to the pipeline safety regulations and implemented requirements of the Consent Decree. In February 2024, Sable acquired Pacific Pipeline Company and all its assets, including the onshore pipeline, as well as the offshore production, offshore-to-onshore gathering lines, and the onshore Las Flores Canyon processing facility from ExxonMobil and its subsidiaries. Declaration of J. Caldwell Flores ("Flores Dec.") ¶ 2. This integrated pipeline system, carrying crude oil from the offshore platforms to the Las Flores Canyon processing facility through the onshore pipelines, is referred to by Sable as the Santa Ynez Pipeline System.

Following its acquisition, Sable performed hundreds of repairs pursuant to multiple in-line inspections of the onshore pipeline. Flores Dec. ¶¶ 6-7. And in April 2024 Sable applied for State Waivers from OSFM, consistent with the Consent Decree. ECF 43-1, Exs. I, J. Following lengthy technical discussions and inspections of Sable's pipeline facilities, OSFM issued State Waivers to Sable in December 2024, finding that the grant of the State Waivers would not be inconsistent with pipeline safety. *Id.*; 49 U.S.C. § 60118(c), (d).

Sable implemented several conditions of the State Waivers, including, among other things, performing spike hydrotests. Flores Dec. ¶ 13. Meanwhile, however, political opposition to the pipeline began to build. In summer 2025, Governor Newsom endorsed a bill in the Legislature, Senate Bill 237, that was aimed at making it substantially harder for Sable to resume pipeline transport.[1] That bill passed in September 2025 and became active January 1, 2026. Shortly after Newsom endorsed SB 237, the State stopped cooperating in Sable's efforts to safely restart the transportation of hydrocarbons through the onshore pipeline segments. In October 2025, OSFM sent a letter to Sable expressing a completely new position— that the State Waivers purportedly required Sable to retroactively apply "tool tolerance" margins to in-line inspection results and identified anomalies that pre-dated the State Waivers. Doing so would have rendered several anomalies which were not otherwise required to be repaired under the Consent Decree as repair-required anomalies, making it substantially more difficult and costly for Sable to restart the flow of oil with no corresponding safety benefit.

In light of the State's sudden shift in position, and in response to the Governor's stated goal of putting as many obstacles as possible in Sable's path, Sable revisited whether the Santa Ynez Pipeline System was properly considered as

---

[1] Senate Bill 237, and its effect on Sable, are the subject of a lawsuit pending in the Eastern District of California, *Pacific Pipeline Co. v. State of California*, No. 1:26-CV-01486 (E.D. Cal. Feb. 27, 2026).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

an interstate or intrastate pipeline facility.  Sable sent a letter to PHMSA asking it to determine whether the Santa Ynez Pipeline System, including the onshore pipelines formerly known as the Las Flores Pipeline, constituted an interstate pipeline facility because the pipeline system would transport oil from the OCS (outside of California) to within California. After conducting onsite inspections of the facilities, PHMSA concurred with Sable's determination in December 2025 and resumed jurisdiction over the entire pipeline system.  ECF 43-1 at 13-15.  Shortly thereafter, PHMSA reviewed and approved Sable's Restart Plan as specified in the Consent Decree. ECF 43-1 at 17-18. Subsequently, Sable applied for and received an Emergency Special Permit from PHMSA that carried over substantially the same conditions in the OSFM's State Waivers, to provide continuity based on the pipeline system's change to interstate status.[2]  ECF 43-1 at 20-35.

On December 26, 2025, multiple organizations filed suit in the U.S. Court of Appeals for the Ninth Circuit pursuant to 49 U.S.C. § 60119, seeking an emergency stay of PHMSA's issuance of the Emergency Special Permit and Restart Plan approval. *Env't Def. Ctr. v. PHMSA*, No. 25-8059, ECF 1 (9th Cir. Dec. 24, 2025), Request for Judicial Notice ("RJN"), Ex. A.  On December 31, the Ninth Circuit denied these organizations' request for emergency relief.  *Env't Def. Ctr.*, ECF 21 (9th Cir. Dec. 31, 2025), RJN, Ex. C.  The State of California subsequently filed its own suit before the Ninth Circuit challenging the Emergency Special Permit and Restart Plan, in addition to PHMSA's concurrence of interstate status for the Santa Ynez Pipeline System, and its case was consolidated with the organization's case. *California v. PHMSA*, No. 26-508, ECF 1 (9th Cir. Jan. 23, 2026), RJN, Ex. D; *Env't Def. Ctr.*, ECF 39 (9th Cir. Feb. 5, 2026).  California did not request reconsideration by the court of its denial of emergency relief.

---

[2] Although the Emergency Special Permit expired at the end of February 2026, Sable has since applied for a non-emergency special permit, notice of which has been published in the Federal Register by PHMSA to solicit comments.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

9

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

Meanwhile, in this Consent Decree case, the United States announced that it expects to soon file a motion to terminate the Consent Decree, and the Plaintiffs filed a proposed briefing schedule on March 9, 2026. ECF 36.

In late February 2026, the United States became involved in the ongoing Iran conflict. This conflict has resulted in serious disruptions to oil supplies and significant increases in the cost of oil. Flores Dec. ¶¶ 26-27. These developments exacerbated an already-acute oil shortage on the West Coast as recognized in Executive Order 14156, creating threats to national security and domestic energy supplies. *Id.*

On March 16, 2026, the United States, through the Secretary of the Department of Energy, issued an order commanding Sable to immediately commence the flow of crude oil through the Santa Ynez Pipeline System, pursuant to the DPA, 50 U.S.C. §§ 4501 et seq. ECF 43-1 at 231-34. Sable has committed to implementing the conditions of the Emergency Special Permit in the interim while PHMSA's review of the non-emergency special permit is pending. Flores Dec. ¶ 26. PHMSA technical staff have been onsite during the process of resuming flow, supervising compliance with the Consent Decree and the Special Permit. *Id.*

## III. THE APPLICATION SHOULD BE SUMMARILY DENIED

### A. The Application Fails To Comply With Local Rule 7-19.

The State did not comply with the requirements of Local Rule 7-19 in accompanying their application with "a memorandum containing, if known, the name, address, telephone number and e-mail address of counsel for the opposing party," nor with Local Rule 7-19.1's requirement that they "make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." In fact, Sable understands that the State

*did not give* such notice to either Plains or the United States. "Plaintiff's request must therefore be denied for that reason alone." *Focus Willie D. Anderson v. John Zorn et al.*, No. EDCV26-00052, 2026 WL 128927 (C.D. Cal. Jan. 9, 2026) (denying ex parte motion for failure to "comply with Local Rule 7-19 and Federal Rule of Civil Procedure 65(b) because Plaintiff fails to submit certified efforts to provide notice and reasons why notice should not be required"). A plaintiff's failure to submit a verified complaint or an affidavit in support of their application" is sufficient, standing alone, to deny plaintiff's motion. *Id.* (citing *Anderson-El v. Zeff*, 2019 WL 8017812, at *2 (C.D. Cal. Sept. 18, 2019)).

## B.     The Application Fails To Comply With Rule 65(b).

Rule 65(b) of the Federal Rules of Civil Procedure lays out specific requirements for a party seeking ex parte injunctive relief, as the State seeks here: the party seeking relief must lay out "specific facts in an affidavit" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." The State includes no such affidavit here and wholly fails to even attempt to meet this burden. The application must be denied on this basis alone. *Focus Willie D. Anderson*, 2026 WL 128927, at *1.

The DPA Order compels immediate restart in order to address critical energy needs for the West Coast pursuant to a declared national emergency, and it declares that operation of the pipelines is "necessary or appropriate to promote the national defense and to maximize domestic energy supplies." ECF 43-1 at 231-34. In response, the State's only alleged harm is that the federal agency charged with overseeing pipeline safety, and not its state delegate, is overseeing pipeline restart. But the State's preference for its own regulator to take charge—in contravention of Congress's decision to expressly preempt the states' role—is simply not irreparable

harm, and it is certainly not the sort of harm that justifies the issuance of an ex parte injunction.

As the Supreme Court has explained, "the circumstances justifying the issuance of a temporary restraining order on an ex parte basis are extremely limited[,] . . . 'reflect[ing] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'" *Esquire Props. Trading, Inc. v. Starmax Enters., Inc.*, 2014 WL 12479298, at *5 (C.D. Cal. Dec. 8, 2014) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 438-39 (1974)).  Notice can only be excused "where it 'is impossible [to give notice] either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing,'" *Id.* (quoting *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)), or where "notice to the defendant would render fruitless the further prosecution of the action," *Reno Air Racing*, 452 F.3d at 1131, because "the adverse party is likely to destroy evidence," *Esquire Props. Trading*, 2014 WL 12479298, at *5.  The State wholly fails to demonstrate any of these facts here.  Moreover, granting the motion would result in immediate and irreparable harm to Sable.  Flores Decl. ¶ 32.

Instead of entertaining the State's misplaced emergency motion, the Court should hear full briefing on termination of the Consent Decree. The Consent Decree provides for termination after payment of all penalties and five years and three months of compliance. Those conditions have been met here, and the Consent Decree is now ripe for termination. The United States and California have already agreed to a briefing schedule on termination, and that briefing will necessarily involve the issues raised by California in its inappropriate motion.  The Court should reject California's ex parte motion and allow termination briefing to continue.

## C.     Sable Is A Non-Party.

The State's application is also fundamentally improper because Sable is not a party to this litigation. While Sable has contractually agreed to be bound by certain provisions of the Consent Decree, it has never been joined in this action, and no cause of action has been asserted against it here. The relief the State seeks amounts to contempt proceedings against a non-party initiated through an ex parte process—a procedural mechanism that the State's own cited authorities do not support.

Consent decrees generally are not enforceable against non-parties. *See Gila River Indian Cmty. v. Schoubroek*, 145 F.4th 1058, 1072-73 (9th Cir. 2007) (holding that the consent decree "binds 'the parties defendant whose claims and rights have been presented by answer or stipulation,'" not any nonparties); *W. Va. Highlands Conservancy v. ERP Env't Fund, Inc.*, 99 F.4th 194 (4th Cir. 2024) (holding that a third-party permit transferee of a surface mine was not bound as a "successor" by a consent decree prohibiting surface mining absent clear intent by the parties to the consent decree).

If California wants to establish that Sable is subject to an enforcement order from this Court, California should have attempted to join Sable under Federal Rule of Civil Procedure 25(c), which governs substitution of parties based on the transfer of corporate interests. Rule 25(c)'s requirements apply not only during the initial litigation, but also "to actions that are 'pending,'" which "does not preclude substitution during subsequent proceedings brought to enforce a judgment." *Rodriguez-Miranda v. Benin*, 829 F.3d 29 (1st Cir. 2016).  Here, Plaintiffs did not substitute Sable or join it as a party subject to the Consent Decree.  Instead, California attempts to move against a non-party on an emergency ex parte basis, citing cases that involve contempt proceedings.  None of these cases support ex parte injunctive relief against a non-party never previously named in the case—a fundamental denial of due process.

Notably, California did not allege contempt. Nor could it have, because Sable is complying with all relevant provisions of the Consent Decree, any noncompliance is excused by the force majeure provision, and California has not exhausted dispute resolution under the decree—"the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree." ECF 6-1 at 41. But in lieu of actually identifying a violation of the decree and moving for contempt, the State attempts to bootstrap new injunctive relief and review of separate federal agency action on its insinuations of noncompliance. That requested relief involves standards that the State does not even mention and has no possibility of satisfying. And even if Sable had not complied with some provision of the Consent Decree, the State's ex parte application in this Consent Decree docket would remain a highly inappropriate vehicle for novel injunctive relief.

### D. The Application Fails To Demonstrate A Need For Ex Parte Relief.

The State's request is also untimely and fails to demonstrate any irreparable harm warranting emergency relief. The Central District of California applies exceptionally strict standards for ex parte relief, with courts repeatedly emphasizing that "opportunities for legitimate ex parte applications are extremely limited." *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203 (2013). The seminal case of *Mission Power Engineering Co. v. Continental Casualty Co.,* 883 F. Supp. 488 (1995), established the foundational framework still applied today, noting that "ex parte motions are inherently unfair, and they pose a threat to the administration of justice." Under the *Mission Power* standard, courts require a two-part showing: first, evidence that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures, and second, that the moving party is without fault in creating the crisis requiring ex parte

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

relief or that the crisis occurred as a result of excusable neglect.  The State fails under both prongs.

***The crisis is self-created and untimely.***  First, the State fails to demonstrate that it is without fault in creating the claimed crisis requiring ex parte relief.  The State seeks relief for things that happened months ago—PHMSA's assertion of jurisdiction over the pipelines on December 17, 2025, the Restart Plan Approval on December 22, 2025, and the Special Permit issued on December 23, 2025.  While it is true that the DPA Order was issued only recently, the State's real complaint is that PHMSA asserted jurisdiction over the pipelines and authorized restart, allegedly wresting it from OSFM.  *See* ECF 43 at 12 (PHMSA "purported to displace the State Fire Marshal") ("The Consent Decree expressly says that the pipeline operator must obtain State Waivers and Restart Plan approval from California's State Fire Marshal, not any federal agency"); *id.* at 22 ("The Consent Decree holds that the pipeline owner … may not restart until it receives a restart approval from OSFM"); *id.* at 23 ("On December 17, 2025, PHMSA purported to displace OSFM….PHMSA, rather than OSFM, approved a restart plan…And PHMSA issued an emergency special permit…. All three of these orders separately violate—or at least conflict with—the Consent Decree by purporting to displace OSFM").

As this Court's procedures explain, parties are "advised to file ex parte applications as soon as they realize that extraordinary relief is necessary."  "'[A] plaintiff's delay in seeking relief weighs against granting a TRO,' '[d]elays of one month or more are common grounds for denying motions for temporary restraining orders, and some courts deny emergency relief based on delays of as little as ten days.'"  *Fivefold Props. Dunnegan LLC v. Toorak Cap. Partners LLC*, No. 8:24-cv-00958, 2024 WL 3009327, at *2 (C.D. Cal. May 7, 2024) (Wilson, J.) (citations omitted) (collecting cases). PHMSA's assertion of jurisdiction over the pipelines, its restart plan approval, and its emergency special permit were all issued in ***December***.

The State offers no explanation whatsoever as to why they did not raise their alleged concerns with this Court months ago via noticed motion, instead of waiting till the eleventh hour, after PHMSA had notified this Court of intent to move to terminate the Consent Decree and after the pipelines had restarted the transmission of hydrocarbons under PHMSA's supervision. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Mission Power*, 883 F. Supp. at 493; *see also Jean-Louis v. J.P. Morgan Chase Bank, N.A.*, No. EDCV1400199, 2014 WL 12711979, at *1 (C.D. Cal. Oct. 14, 2014) ("Plaintiff's six-week delay in bringing the application defeats any argument of urgency necessary to warrant ex parte relief, and the Court DENIES the application on that independent ground."); *Whitaker v. Backic,* No. 18-cv-06053, 2023 WL 9018422, at *1 (C.D. Cal. Oct. 31, 2023) (same for ten weeks).

***The State fails to demonstrate irreparable harm.*** The State also wholly fails to meet its burden to demonstrate irreparable prejudice that will come from denying ex parte relief. As a threshold matter, the State fails to inform the Court that the Ninth Circuit already considered and rejected the exact relief the State now seeks. When PHMSA approved the restart plan and issued the emergency special permit, the NGOs sought a near-identical stay of pipeline operations. But the Ninth Circuit—the *original* forum the State chose to contest PHMSA's jurisdiction— found that a stay was not warranted. See *Env't Def. Ctr*, ECF 21 (9th Cir. Dec. 31, 2025) ("The motion [] to stay the Pipeline and Hazardous Materials Safety Administration's December 22, 2025 approval of the Restart Plan and December 23, 2025 Emergency Special Permit is denied."). The State offers no basis whatsoever for the Court to enjoin Sable's resumption of pipeline operations under the very same procedures the Ninth Circuit declined to stay. And this Court should reject the State's attempt to use an ex parte application to relitigate an issue the Ninth Circuit already decided months ago.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

16

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

More fundamentally, and as detailed further below, the State fails to demonstrate any harm from allowing pipeline operations to continue under PHMSA's jurisdiction.  The State acts as though PHMSA's involvement and approval of the restart plan and special permits—which, in the State's own telling, "mirror[] much of OSFM's State Waivers," ECF 43 at 18—means that the pipelines cannot operate safely.  But entrusting pipeline safety oversight to the federal agency created to perform pipeline safety oversight—the Pipeline and Hazardous Material Safety Administration—cannot constitute irreparable harm to the State, especially when Congress simultaneously preempted all state regulation of interstate pipelines.  PHMSA is on site with Sable supervising restart of pipeline operations, following step-by-step the procedures required by the Consent Decree.  Flores Dec. ¶ 26.  As the Ninth Circuit implicitly found, there is no risk to public health or safety in allowing Congress's purpose-built federal agency to oversee pipeline operations while litigation proceeds.  Certainly, there is no basis to take the extreme action of enjoining Sable from complying with the DPA Order, an executive order issued under authority of the President, merely based on the State's claim that it disagrees with Congress's judgment about which agency should supervise restart.

## IV.    THE STATE'S CLAIMS SUBSTANTIVELY FAIL

### A.    This Court Lacks Jurisdiction To Consider The Propriety Of PHMSA's Orders.

Pursuant to 49 U.S.C. § 60119(a)(1), review of PHMSA's orders is within the court of appeals, and "where a federal statute provides for direct review of an agency action in the court of appeals, such '[s]pecific grants of exclusive jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts.'" *Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp. Rsch. & Special Programs Admin.*, 457 F.3d 956, 958-59 (9th Cir. 2006) (quoting *Carpenter v. Dep't of Transp.*, 13 F.3d 313, 316 (9th Cir. 1994)).  That exclusive

jurisdiction extends beyond direct challenges to a PHMSA order: where the plaintiff's "action is based upon [a] contract[]," but "the effect of their action would be to challenge" an agency order or rule that is exclusively reviewable in the courts of appeals, "there is no district court jurisdiction." *Pac. Power & Light Co. v. Bonneville Power Admin.*, 795 F.2d 810, 815 (9th Cir. 1986). The State contravenes this basic principle. It seeks to relitigate the very administrative-law issues the Ninth Circuit already rejected—and which the court of appeals is now considering on the merits—in an unrelated docket before an unrelated court. Relief from this Court would substantively decide the exact issues currently and properly before the Ninth Circuit—as the State recognized, by seeking relief there first.

### B.    PHMSA, Not OSFM, Has Regulatory Authority Over The Pipelines.

The State's central contention—that the Consent Decree reserves restart authority to OSFM rather than PHMSA—ignores the federal regulatory framework that governs interstate pipeline safety. Under the Pipeline Safety Act, 49 U.S.C. § 60101 et seq., PHMSA is the designated regulatory authority for interstate hazardous liquid pipelines, and federal law expressly prohibits state authorities from adopting or maintaining safety standards for interstate pipeline facilities. *Id.* § 60104(c); *see Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 878 (9th Cir. 2006) ("[A] state authority may not impose safety requirements on an interstate hazardous liquid pipeline unless the DOT has delegated authority to the state entity," and "[f]ederal preemption of the regulation of interstate pipeline safety in any other manner is manifest in the language of the PSA[.]").

OSFM's authority over pipeline safety derives solely from its role as PHMSA's delegate for intrastate pipelines pursuant to 49 U.S.C. § 60105(a). At the time the Consent Decree was entered, the pipelines were classified as intrastate because the prior operator only owned onshore segments of the pipeline wholly

within California and cancelled previously operative FERC tariffs due to lack of oil flow. Yet even under the "cooperative federalism" of *intrastate* pipeline regulation, PHMSA still retains ultimate authority: it "monitor[s] state safety programs and [may] reject a certification" that a state has adopted and is enforcing PHMSA's standards, "'assert United States Government jurisdiction, or take other appropriate action to achieve adequate enforcement.'" *City & County of San Francisco v. U.S. Dep't of Transp.*, 796 F.3d 993, 996 (9th Cir. 2015) (quoting 49 U.S.C. § 60105(f)).

Sable's subsequent acquisition of offshore platforms and pipeline segments in federal waters fundamentally changed the character of the system. PHMSA regulations recognize that hazardous liquid pipelines that "originate[] on the Outer Continental Shelf" may be considered interstate pipeline facilities, regardless of whether the operator filed tariffs with FERC for them. See Part 195, Appendix A, Example 7. Sable's pipeline system includes offshore lines connecting offshore production platforms on the Outer Continental Shelf to an onshore processing facility as well as the onshore pipelines at issue here. ECF 43-1 at 13 ("Sable operates the Las Flores Pipeline assets as a single pipeline system transporting crude oil from the OCS to the Pentland Station terminal in Kern County, California."). In December 2025, PHMSA determined that this entire pipeline system constitutes an interstate pipeline system within the meaning of the Pipeline Safety Act. *Id*. at 13-14 ("the Las Flores Pipeline is an interstate pipeline.")

When it comes to *interstate* pipeline regulation, "Congress has expressly stated its intent to preempt the states from regulating in the area of safety in connection with interstate hazardous liquid pipelines." *Couser v. Shelby County*, 139 F.4th 664, 669 (8th Cir. 2025), *cert. denied sub nom. Shelby County v. Couser*, 2026 WL 79941 (U.S. Jan. 12, 2026) (citation omitted). "Congress intended to preclude states from regulating *in any manner whatsoever* with respect to the safety of interstate transmission facilities." *Id.* (citation omitted). "This Congressional

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

19

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

grant of exclusive federal regulatory authority precludes state decision-making in this area altogether and leaves no regulatory room for the state to either establish its own safety standards or supplement the federal safety standards." *Id.* (citation omitted).

The Consent Decree was never intended to supersede, and could not have superseded, federal law to vest OSFM with jurisdiction over an interstate pipeline system properly regulated by PHMSA, because "a district court may not approve a consent decree that conflicts with or violates an applicable statute." *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013) (internal quotation marks omitted). The State never identifies why PHMSA's determination that a pipeline system which travels from within California to federally-regulated offshore waters is an interstate pipeline was either improper or in excess of PHMSA's authority—because it was not. *See* Mot. at 9-10. Because the pipeline is an interstate pipeline, PHMSA is the sole appropriate safety regulator. It is the State—not the federal government—that is acting inappropriately, trying to use the Consent Decree to keep jurisdiction it no longer lawfully possesses.

## C.   The State Has Not Demonstrated A Violation Of The Consent Decree.

First, as explained above, Sable is not a party to this action and cannot be summarily enjoined for purportedly violating the Consent Decree. *See Nextel Commc'ns of the Mid-Atl., Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 149 n.5 (D. Mass. 2004).

Second, the State is wrong on the law. When the pipeline became an interstate pipeline, subject to PHMSA's sole regulatory authority, Sable correctly turned to PHMSA for a special permit and approval to restart the pipeline. In fact, in filings at the Ninth Circuit, California's co-Plaintiff PHMSA specifically stated that California "cannot regulate interstate pipelines . . . , *so Sable may not rely*" on the

*previously-issued California state waivers*.  RJN, Ex. B at 18.  Sable (a non-party to the Consent Decree) is now subject to multiple conflicting directives from the two Plaintiffs in this case.  On the one hand, California claims that it and only it has the authority to approve restart of the pipeline. On the other, the United States asserts its sole regulatory authority and issues an order from the Department of Energy compelling the resumption of flow.  In these circumstances, the answer is uncomplicated: Because the pipeline is now an interstate pipeline and not an intrastate pipeline, and because the federal government has issued an emergency DPA Order requiring operation, Sable's resumption of flow is not noncompliance.

Third, Sable has resumed flow consistent with the compliance measures required by the Consent Decree and Appendix D. PHMSA confirmed that Sable's Restart Plan included all the necessary components – components explicitly spelled out in the Consent Decree – to ensure safe, compliant restart. Importantly, by approving the Restart Plan, PHMSA confirmed that Sable had "complet[ed] all mandated actions" necessary for safe restart.  ECF 6-1, App. D at 96.  OSFM has offered no evidence of any safety risk, nor has it provided any basis for questioning PHMSA's competence to discharge its congressionally mandated oversight responsibilities.

OSFM has a single, narrow disagreement with PHMSA about safe operation of this pipeline. And the disagreement boils down to timing. OSFM claims that its now-invalid State Waivers required Sable to perform repairs using an extra-heightened criteria for when those repairs are triggered, prior to resuming flow. PHMSA's and Sable's position is that these repairs can and will happen (if they are necessary) pursuant to the PHMSA special permit, but that they will be performed after restart.  California fails to mention a very salient fact: Sable has already performed all pipeline repairs required by the Consent Decree, above and beyond the standards applied in normal pipeline safety laws. At the eleventh hour, California

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

21

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

wants to impose a new pre-restart requirement for extra-extra-protective repairs that do not actually need to be completed prior to restart. California cannot show—and has not even attempted to show—that PHMSA and Sable's approach is unsafe.

Finally, no party is in violation of the Consent Decree because the Decree contains specific dispute resolution procedures and designated remedies for alleged violations, none of which the State has invoked. Even assuming a violation could be proven, an ex parte injunction barring pipeline operations would not be an appropriate remedy under the Consent Decree's own terms. The Consent Decree sets stipulated penalties for the exact "violation" California alleges for the first time in its ex parte motion. ECF 6-1 at 35-36 (establishing a tiered financial penalty that ranges from $2,000 to $5,500 per day). And if the parties disagree about compliance or the application of stipulated penalties, the Consent Decree establishes a dispute resolution process, with stipulated penalties potentially accruing during that process. ECF 6-1 at 41-43. The State cannot claim Sable is a party to the Consent Decree for purposes of an unnecessary ex parte emergency motion, while at the same time ignoring other directly applicable provisions of the Consent Decree. If California believes Sable is a party to the Consent Decree and in violation, it has not explained why it would like the Court to ignore the process California itself agreed to in the Consent Decree.

**D.    The DPA Order Constitutes Force Majeure Under The Consent Decree.**

In addition to the stipulated penalty and dispute resolution provisions, the Consent Decree includes a provision that clearly excuses any alleged noncompliance by Sable: force majeure. The Consent Decree expressly provides that obligations may be excused or delayed due to force majeure events, like a conflicting DPA Order compelling operation, from a co-Plaintiff and party to the Consent Decree. ECF 6-1 at 39-41. Sable has provided timely notice to the plaintiffs that, to the extent restart

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

would be considered noncompliance, the DPA Order constitutes such a force majeure event. Flores Dec. ¶ 33. Critically, the State itself concedes that Sable is legally obligated to comply with the DPA Order and that such compliance requires Sable to take actions the State views as inconsistent with the Consent Decree. That concession satisfies the definition of force majeure. The Department of Justice Office of Legal Counsel has issued a formal opinion supporting the lawfulness of the DPA Order, and the State has offered no adequate basis for this Court to disregard that determination.

**E.      The Alleged Trespass Claim Is Outside The Scope Of This Proceeding.**

Finally, the State's assertion that the pipeline constitutes a trespass on State Parks land is a matter wholly outside the scope of this proceeding. There is no basis in the Consent Decree for this Court to adjudicate an unpleaded and unproven claim of trespass. The State's claimed property rights are already the subject of a separate pending action, *Sable Offshore Corp. v. Quintero*, No. 2-26-cv-02739 (C.D. Cal. Mar. 13, 2026). To the extent the State believes a trespass has occurred and that the DPA Order does not preempt state remedies for such trespass—both of which Sable disputes as explained in the *Quintero* complaint—the State may pursue that relief in the appropriate forum.

**F.      The State's Request To Stay The DPA Order Is Unmeritorious And Not Properly Before This Court.**

The State does not even attempt to show why its request to stay the DPA Order, *see* ECF 43 at 13, is appropriate or how it could be lawfully issued in this case. It does not identify a relevant cause of action, show that the DPA Order is a reviewable agency action, explain why it is unlawful, or argue that the four-factor test for a stay pending review is met. *See Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972, 986-87 (9th Cir. 2025). There is no basis for the Court to issue such a stay here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

23

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE*
APPLICATION

## V.   **CONCLUSION**

For all of the foregoing reasons, the State's ex parte application should be denied in its entirety.

Dated:  March 17, 2026                     Respectfully submitted,

                                           LATHAM & WATKINS LLP

                                           By: /s/ *Jessica Stebbins Bina*
                                           LATHAM & WATKINS LLP
                                           Jessica Stebbins Bina (Bar No. 248485)
                                           *jessica.stebbinsbina@lw.com*
                                           10250 Constellation Blvd., Suite 1100
                                           Los Angeles, CA 90067
                                           Telephone:  +1 424.653.5500
                                           Facsimile:   +1 424.653.5501

                                           BABST CALLAND
                                           Nicholas McDaniel (*pro hac vice* forthcoming)
                                           *nmcdaniel@babstcalland.com*
                                           505 Ninth St., NW, Suite 602
                                           Washington, DC 20004
                                           Telephone:  +1 202.853.3455
                                           Facsimile:   +1 202.853.3491

                                           *Attorneys for Non-Parties Sable Offshore Corp. and Pacific Pipeline Company*

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX PARTE* APPLICATION

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Non-Parties, hereby certifies that this Nonparties Sable Offshore Corp. and Pacific Pipeline Company's Memorandum in Opposition to California Plaintiffs' Ex Parte Application contains 6,799 words, which complies with the word limit for L.R. 11-6-1.


Dated:  March 17, 2026                    /s/ *Jessica Stebbins Bina*

Jessica Stebbins Bina

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

25

CASE NO. 2:20-cv-02415-SVW-SSCx
OPPOSITION TO STATE'S *EX  PARTE*
APPLICATION