LATHAM & WATKINS LLP
  Jessica Stebbins Bina (Bar No. 248485)
  *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:  +1 424.653.5501

BABST CALLAND
  Nicholas McDaniel (*pro hac vice* forthcoming)
  *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:  +1 202.853.3491

*Attorneys for Nonparties Sable Offshore Corp.
and Pacific Pipeline Company*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA; THE PEOPLE OF THE STATE OF CALIFORNIA, et al., | Case No. 2:20-cv-02415-SVW-SSCx |
| Plaintiffs, | **DECLARATION OF J. CALDWELL FLORES IN SUPPORT OF NONPARTIES SABLE OFFSHORE CORP.'S AND PACIFIC PIPELINE COMPANY'S OPPOSITION TO CALIFORNIA PLAINTIFFS' *EX PARTE* EMERGENCY MOTION** |
| v. | |
| PLAINS ALL AMERICAN PIPELINE, L.P. and PLAINS PIPLINE, L.P., | Dept: 10A |
| Defendants. | Action Filed: Mar. 13, 2020 |
| | Judgment: Oct. 14, 2020 |

Pursuant to 28 U.S.C. § 1746(2), I, J. Caldwell Flores, hereby declare:

1.      I am President and Chief Operating Officer of Sable Offshore Corp. and President of Pacific Pipeline Company (collectively "Sable"). I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to them.

2.      Sable is a publicly traded oil and gas company focused on responsibly operating the Santa Ynez Pipeline System. The Santa Ynez Pipeline System includes, among other things, offshore subsea pipeline transporting crude oil from three offshore oil production platforms in the Santa Ynez Unit located on the Outer Continental Shelf to an onshore facility to process crude oil for subsequent transportation through onshore pipelines from Las Flores Canyon to the Pentland Station in Kern County, California. The onshore pipeline segments are referred to as Lines CA-324 and CA-325 and were formerly referred to as Line 901 and the portion of Line 903 from Gaviota, California, to the Pentland Station terminal (together, the "Pipelines").

3.      Appendix B of the Consent Decree (ECF 6-1) required the owner of the Pipelines to obtain "State Waivers" from the California Office of the State Fire Marshal ("OSFM") to address "the limited effectiveness of cathodic protection" before resuming petroleum transportation through the Pipelines. Cathodic protection refers to one (of many) corrosion prevention method that was installed along the Pipelines when they were first constructed. Industry experts have long recognized that cathodic protection systems may be weakened if insulation around a pipeline becomes compromised by water intrusion.

4.      Appendix D of the Consent Decree also required the owner of the Pipelines to submit a "Restart Plan" for each Pipeline before resuming petroleum transportation through the Pipelines.

CASE NO. 2:20-CV-2415
DECLARATION OF J. CALDWELL FLORES

5.     Sable acquired the entire Santa Ynez Pipeline System, including the Pipelines, in February 2024. Under Plains, these onshore and offshore assets were not possessed under the same ownership umbrella.

6.     Since that time, Sable has worked tirelessly with both state and federal regulators, including those at OSFM and the federal Department of Transportation's Pipeline and Hazardous Materials Safety Administration ("PHMSA") to ensure the Pipelines are repaired and maintained in a manner consistent with the Consent Decree's requirements.

7.     In May 2024, Sable began conducting physical repair and maintenance activities along the Pipelines to remediate certain anomalous conditions detected during inspections conducted by the Pipelines' prior owner. These activities, referred to as "anomaly repair work," are a routine repair and maintenance activity that has been conducted on numerous occasions along the Pipelines since they were first constructed. Sable performed over 200 anomaly repairs along the Pipelines under direct oversight from OSFM personnel.

8.     In September 2024, Sable installed sixteen (16) safety valves along the Pipelines in compliance with California Assembly Bill 864. Sable installed the required safety valves only after the County of Santa Barbara confirmed that it lacked permit authority or jurisdiction over the safety valve installation work.

9.     On December 17, 2024, following lengthy technical discussions and inspections of Sable's pipeline facilities, OSFM issued the previously-requested State Waivers for the Pipelines. Later, when PHMSA assumed jurisdiction, PHMSA issued a special permit to substitute for the State Waivers. Both the State Waivers and the Special Permit impose over sixty (60) conditions to address the limited effectiveness of cathodic protection along the Pipelines and provide regulatory relief from 49 C.F.R. § 195.452, subd. (h)(4)(iii)(H). Conditions included requirements to conduct hydrostatic pressure tests ("hydrotests") along the Pipelines before

CASE NO. 2:20-CV-2415
DECLARATION OF J. CALDWELL FLORES

resuming petroleum transportation, limitations on the maximum operating temperature and maximum operating pressure for crude oil transported through the Pipelines, more stringent inspection frequency requirements and thresholds for anomaly remediation, as well as detailed validation, data analysis, recordkeeping, and reporting requirements.

10.    Contemporary analyses confirm that crude oil pipelines operated with limited cathodic protection are not more likely to result in oil spills or oil spills of increased size when other appropriate leak detection and prevention methods are implemented, such as those identified in the PHMSA Special Permit. Moreover, the heightened patrolling, monitoring, emergency shutdown, training, inspection, and corrosion prevention requirements proposed by Sable in its Restart Plans collectively will reduce the risk of an oil spill and minimize the magnitude of any such spill should it occur relative to the Pipelines as they were initially constructed and operated.

11.    OSFM has reviewed Sable's updated Integrity Management Plan in conjunction with inspections and meetings in 2024 and 2025.

12.    In May 2025, Sable completed all anomaly repairs along the Pipelines falling within the heightened repair criteria established by the Consent Decree.

13.    After completing all anomaly repair work, in May 2025 Sable conducted successful hydrotests along the Pipelines under OSFM's supervision and as required by the then-effective State Waivers. Sable's hydrotests confirmed that the Pipelines could be operated at pressures in exceedance of the Pipelines' defined maximum operating pressures for both short periods ("spike" hydrotests) and longer durations.

14.    On July 17, 2025, Sable held an oil spill response preparedness drill which included approximately 35 representatives from the U.S. Environmental Protection Agency, PHMSA, U.S. Coast Guard, National Oceanic and Atmospheric

CASE NO. 2:20-CV-2415
DECLARATION OF J. CALDWELL FLORES

Administration Office of National Marine Sanctuaries, California Department of Fish and Wildlife's Office of Spill Prevention and Response, Santa Barbara County Air Pollution Control Department, Santa Barbara County Office of Emergency Management, and Santa Barbara County Fire Department, and the Santa Barbara County Certified Unified Program Agency.

15. From August 6 – 8, 2025, OSFM met with Sable to review Sable's Operations and Maintenance Manual. OSFM confirmed that Sable's Operations and Maintenance Manual incorporates all procedural modifications required of the Pipelines' owner by the Consent Decree. OSFM also confirmed that Sable has instituted a management of change plan to ensure any future procedural changes are similarly incorporated into the Operations and Maintenance Manual.

16. From August 12 – 14, and again on August 20, 2025, OSFM met with Sable to discuss the process of resuming petroleum transportation through the Pipelines. OSFM also conducted inspections of Sable's control room and site visits to the Pipelines' pump stations and valve sites.

17. From August 12 – 14, 2025, Sable met with OSFM to discuss its Fill Plan and Start Up Procedures. The Fill and Start Up Procedures were submitted to OSFM on September 11, 2025.

18. From September 2 – 5, 2025, OSFM met with Sable to inspect Sable's Control Room Management plan. OSFM tested and reviewed all alarms and systems, including the Master Control Room enhancements, during these inspections and confirmed the enhancements satisfied all applicable Consent Decree requirements.

19. In October 2025, OSFM sent a letter to Sable expressing, for the first time, its position that the State Waivers purportedly required Sable to retroactively apply "tool tolerance" margins to in-line inspection results and identified anomalies that pre-dated the State Waiver. Doing so would have rendered several anomalies

CASE NO. 2:20-CV-2415
DECLARATION OF J. CALDWELL FLORES

which were not otherwise required to be repaired under the Consent Decree as pre-restart repair-required anomalies.

20. On November 26, 2025, Sable submitted a letter to PHMSA confirming Sable's determination that the Pipelines are interstate pipeline facilities under the Pipeline Safety Act and requesting PHMSA's concurrence as to that determination.

21. In light of Sable's November 26, 2025, letter, PHMSA conducted on-site facilities inspections of the Pipelines, pump stations, and control room from December 9 – 11, 2025. PHMSA also reviewed Sable's written procedures and records and program inspections previously completed by OSFM.

22. Based on its review and on-site facilities inspections, on December 17, 2025, PHMSA issued a letter to Sable concurring with Sable's determination that the Pipelines constitute an "interstate" pipeline facility subject to PHMSA's jurisdiction.

23. On December 22, 2025, after reviewing documents submitted by Sable and in light of PHMSA's field inspections of the facilities, PHMSA approved Sable's Restart Plans for the Pipelines, including Sable's Fill Plan and Start Up Procedures, Linefill Positioning Plan Assignments, and Linefill Contact List.

24. On December 23, 2025, PHMSA granted Sable an emergency "Special Permit" for the Pipelines. On January 22, 2026, Sable submitted a request for a non-emergency Special Permit. On February 23, 2026, PHMSA "preliminarily determined that the issuance of the special permit would not be inconsistent with pipeline safety" and noticed the Special Permit application for public comment. See 91 Fed. Reg. 8949, 8949 (Feb. 24, 2026).

25. The Special Permit waives compliance with a single regulatory requirement, 49 C.F.R. § 195.452, subd. (h)(4)(iii)(H), and imposes additional safety measures to ensure pipeline integrity. The Special Permit includes substantially the

CASE NO. 2:20-CV-2415
DECLARATION OF J. CALDWELL FLORES

same conditions as those found in the OSFM's State Waiver, to provide continuity based on the pipeline system's change to interstate status.

26.     Sable has committed to implementing the conditions of the Emergency Special Permit in the interim while PHMSA's review of the non-emergency special permit is pending, and PHMSA technical staff have been onsite during the process of resuming flow.

27.     In late February 2026, the United States became involved in the ongoing Iran conflict, which has resulted in serious disruptions to oil supplies and significant increases in the cost of oil.

28.     These developments exacerbated an already-acute oil shortage on the West Coast as recognized in Executive Order 14156, creating threats to national security and domestic energy supplies.

29.     On March 16, the United States, through the Secretary of the Department of Energy, issued an order commanding Sable to immediately commence the flow of crude oil through the Santa Ynez Pipeline System, pursuant to the DPA, 50 U.S.C Sections 4501 et seq.

30.     Sable's inability to complete, or any delay in, the resumption of petroleum transportation through, and operation of, the Pipelines, will exacerbate California's ongoing energy crisis. Citizens of the State of California would therefore also suffer irreparable harm if California's motion is granted in the form of higher gasoline prices, lost jobs, lost tax revenues, lost royalty sharing, and increased regulatory uncertainty.

31.     As recognized by the DPA Order, "[a]n affordable and reliable domestic supply of energy is a fundamental requirement for the national and economic security of any nation" and these "problems are most pronounced in our Nation's West Coast, 'where dangerous State and local policies jeopardize our Nation's core national defense and security needs, and devastate the prosperity of

CASE NO. 2:20-CV-2415
DECLARATION OF J. CALDWELL FLORES

not only local residents but the entire United States population.'"  The Santa Ynez Unit is a critical resource on the West Coast.

32.    Sable is a publicly traded company, and a business disruption such as ceasing operation would have significant effect on the value of the company. The shareholders of the company, including the numerous 401(k) plans, mutual funds, and pensions that have invested in the company, will immediately lose quantifiable value as the company is forced to incur multimillion-dollar delay damages if California's motion is granted.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 17, 2026, in Santa Barbara , California.

J. Caldwell Flores

CASE NO. 2:20-CV-2415
DECLARATION OF J. CALDWELL FLORES