LATHAM & WATKINS LLP
  Jessica Stebbins Bina (Bar No. 248485)
  *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:  +1 424.653.5501

BABST CALLAND
  Nicholas McDaniel (*pro hac vice*)
  *nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:  +1 202.853.3491

*Attorneys for Nonparties Sable Offshore Corp.*
*and Pacific Pipeline Company*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA; THE PEOPLE OF THE STATE OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PLAINS ALL AMERICAN PIPELINE, L.P. and PLAINS PIPELINE, L.P., <br><br> Defendants. | Case No. 2:20-cv-02415-SVW-SSCx <br><br> **NONPARTIES SABLE OFFSHORE CORP. AND PACIFIC PIPELINE COMPANY'S MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO TERMINATE CONSENT DECREE** <br><br> Date: June 1, 2026 <br> Time: 1:30pm <br> Courtroom: 10A <br> Judge: Hon. Stephen V. Wilson |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

# TABLE OF CONTENTS

Page

I.       BACKGROUND.................................................................................7

II.     ARGUMENT .................................................................................10

    A.   Sable is not a party and the termination standard has been met. ...............................................................................................10

    B.   Termination is appropriate because Sable has carried out the necessary safety measures and the fundamental purpose of the Consent Decree has been accomplished. ...................12

        1.   Sable has performed all safety measures required by the Consent Decree. ..........................................................12

        2.   Termination is appropriate because the fundamental purpose of the Consent Decree – safe pipeline operation – has been accomplished...........................13

    C.   Termination is appropriate because all forward-looking safety measures are captured by the Pipeline Safety Act, the Special Permit, and PHMSA's continued regulatory oversight. ...............................................................................15

    D.   California's other lawsuits provide additional reasons to terminate the Consent Decree, not leave it in force indefinitely.................................................................................16

III.    CONCLUSION .................................................................................17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ass'n for Ret'd Citizens of Conn., Inc. v. Thorne*,
30 F.3d 367 (2d Cir. 1994) ...........................................................................................11

*Cal. Dep't of Parks & Rec. v. Sable*,
No. 26-cv-02946 (C.D. Cal.) ........................................................................................16

*California v. PHMSA*,
No. 26-508 (9th Cir.) .....................................................................................................16

*California v. Wright*,
No. 26-cv-3396 (C.D. Cal.) ..........................................................................................16

*Ctr. for Biological Diversity v. Cal. Dep't of Forestry & Fire Prot.*,
No. 25CV02244 (Cal. Super. Ct. Santa Barbara Cty.) ..................................................17

*Env't Defense Ctr. v. PHMSA*,
No. 25-8059 (9th Cir.) ...................................................................................................16

*Jeff D. v. Otter*,
643 F.3d 278 (9th Cir. 2011) ...................................................................................14, 16

*Lab./Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*,
564 F.3d 1115 (9th Cir. 2009) .......................................................................................14

*Nehmer v. U.S. Dep't of Veterans Affairs*,
494 F.3d 846 (9th Cir. 2007) .........................................................................................11

*Pacific Pipeline Co. v. California*,
No. 26-cv-01486 (C.D. Cal.) ........................................................................................17

*Peery v. City of Miami*,
977 F.3d 1061 (11th Cir. 2020) .....................................................................................14

*United States v. Consol Energy Inc.*,
No. 11-cv-00028 (N.D.W. Va. June 5, 2011) ................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

**STATUTES**

49 U.S.C. § 60121 ................................................................................................15

Defense Production Act ...............................................................................6, 9, 13, 16

Pipeline Safety Act .........................................................................................7, 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

The Consent Decree among the United States, California, and Plains was not meant to last forever. The parties negotiated an agreement that provides for termination when certain criteria have been met: payment of all penalties and five years and three months' compliance by Plains, the only defendants. These termination requirements have been satisfied.

Sable Offshore Corp. ("Sable") was not a defendant in the original enforcement action and is not a party to the settlement agreement that resolved that case. Sable submits this brief in support of the United States' request to terminate the Consent Decree because the State of California has used the Consent Decree as a tool in its far-reaching efforts to stop the Santa Ynez Pipeline System, now owned and operated by Sable. As the United States explains, the Consent Decree unambiguously allows for termination after Plains has operated in compliance with the Consent Decree for the required time. The Court's inquiry can and should end there, and the United States' motion should be granted.

Importantly, terminating the Consent Decree is also consistent with environmental protection and pipeline safety. After the 2015 spill, the governments and the defendants negotiated a path to a safe restart and safe future operation of the pipeline segments. We have now reached the finish line of that path. When nonparty Sable purchased the Santa Ynez Pipeline System in 2024, it contractually agreed to go above and beyond standard pipeline safety requirements. Sable went to work right away. It performed over 200 repairs of the pipeline segments – using extra-protective and conservative repair criteria and under the direct supervision of California state regulators. Sable installed twenty-seven safety valves along the pipeline segments, significantly reducing even worst-case scenario release volumes. And Sable updated its procedures, manuals, and systems, including implementation of a 24/7 advanced monitoring system with enhanced leak detection, to ensure continued safe operation of the pipeline. Prior to introducing hydrocarbons into the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

pipeline segments, Sable conducted successful hydrostatic pressure tests well above the segments' defined maximum operating pressures. These measures are consistent with Consent Decree requirements and accomplish the Consent Decree's fundamental safety goals.

On March 13, 2026, the United States, through the Secretary of the Department of Energy, issued a Defense Production Act order commanding Sable to immediately commence the flow of oil through the Santa Ynez Pipeline System. Sable has done so and has done so safely, consistent with its restart plans, operational procedures, and all Consent Decree requirements, and with federal Pipeline and Hazardous Materials Safety Administration ("PHMSA") inspectors on-site, monitoring operations and ensuring compliance with required safety measures. Safe, compliant pipeline operation will continue post-termination, under the regulatory oversight of PHMSA and pursuant to an enforceable special permit that captures Consent Decree safety measures.

California opposes termination on both narrow and incredibly overbroad grounds. In terms of safety and environmental protection, California's opposition is premised on a single, narrow disagreement with PHMSA about the timeline for certain additional pipeline repairs – repairs that are (a) beyond the 200 repairs already performed, (b) that will happen regardless, and (c) that will be enforceable by PHMSA after Consent Decree termination.

In reality, California's opposition to termination boils down to buyer's remorse – a dissatisfaction with the termination provisions (which California agreed to and which clearly support termination now) and dissatisfaction with the resumption of flow (which California agreed to allow back in 2020 but now apparently regrets). The State has fought pipeline operation at every turn, passing laws specifically targeting Sable, challenging PHMSA's determination that the Santa Ynez Pipeline System is an interstate pipeline, and even arguing that a state

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

court should maintain an injunction against the pipeline in an action brought by citizen groups against state regulators (who are nominally the defendant in that action).

California's opposition to termination is not supported by the plain language of the Consent Decree it agreed to in 2020. Termination is consistent with the termination provisions, consistent with environmental protection and pipeline safety, and consistent with California's original agreement to allow oil to resume flow. The Court should grant the United States' motion to terminate the Consent Decree.

## I.   **BACKGROUND**

In October 2020, the United States and California entered into a Consent Decree with Plains, the prior owner of pipeline segments CA-324 and CA-325 (the "pipeline segments"), to settle alleged violations of the federal Pipeline Safety Act and other claims relating to the 2015 spill. *See* ECF No. 6-1.

In February 2024, Sable acquired Pacific Pipeline Company and its assets, including the pipeline segments at issue in this case. Declaration of J. Caldwell Flores ("Flores Dec.") ¶ 4. As part of the acquisition, Sable executed a Consent Decree Assumption Agreement and contractually agreed to be bound by the provisions of Appendices B and D to the Consent Decree that are specifically applicable to the purchased pipeline segments. *Id.* ¶ 3; *see* Consent Decree, ECF No. 6-1 ¶ 88. Sable also acquired certain offshore oil production platforms, offshore-to-onshore lines, and the onshore Las Flores Canyon midstream processing facility. Flores Dec. ¶¶ 2, 4. As a result, Sable became the owner and operator of the entire integrated Santa Ynez Pipeline System.

Then Sable began performing repair and maintenance work along the pipeline segments under the direct oversight of the California Office of the State Fire Marshal ("OSFM") and consistent with the heightened repair criteria established by

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

the Consent Decree. *Id.* ¶¶ 6–7. Sable also installed twenty-seven safety valves along the pipeline segments in compliance with a separate California law, and consistent with Consent Decree requirements. *Id.* ¶ 8.

On December 17, 2024, following lengthy technical discussions and inspections of Sable's pipeline facilities, OSFM issued "state waivers" for the pipeline segments – a mechanism to impose additional safety conditions on the segments. *See* ECF No. 43-1, Exs. I, J. PHMSA later issued a special permit containing substantially the same safety conditions to substitute for the state waivers. Flores Dec. ¶ 21.

As of May 2025, Sable completed all "anomaly repairs" along the pipeline segments falling within the heightened repair criteria established by the Consent Decree. *Id.* ¶ 7. Anomaly repairs are routine repairs to sections of pipe that exhibit some level of metal loss. *Id.* The Consent Decree – and now PHMSA's special permit – triggers anomaly repairs using a more protective criteria than standard pipeline safety rules. *See id.* ¶ 9. After completing over 200 repairs, Sable conducted successful hydrotests along the pipeline segments under OSFM's supervision and as required by the then-effective state waivers. *Id.* ¶¶ 11, 12. In July 2025, Sable held an oil spill response preparedness drill that included approximately 35 representatives from various state and federal regulators. *Id.* ¶ 13.

Sable has updated its programs and procedures, including its Integrity Management Plan, Control Room Management Plan, Operations & Maintenance Manual, and Standard Operating Procedures – all consistent with the requirements of the Consent Decree. *Id.* ¶¶ 14–17.

In the fall of 2025, Sable concluded that the entire Santa Ynez Pipeline System – including the pipeline segments – is a single interstate pipeline facility because, when operational, the system transports oil from the Outer Continental Shelf (in federal waters outside of California) to a sales point within California. *See* ECF No.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

8

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

43-1, Ex. A-1 at 1.  After conducting its own on-site facilities inspections of the pipeline segments, pump stations, and control room, PHMSA issued a letter concurring with Sable's determination that the Santa Ynez Pipeline System is an interstate pipeline facility.  *See* ECF No. 43-1, Ex A-1 at 13–15.  Thereafter, PHMSA resumed its exclusive regulatory role overseeing the entire pipeline system.

On December 22, 2025, after reviewing documents submitted by Sable and in light of PHMSA's field inspections of the facilities, PHMSA approved Sable's Restart Plans for the pipeline segments, including Sable's Fill Plan and Start Up Procedures, Linefill Positioning Plan Assignments, and Linefill Contact List.  Flores Dec., ¶ 20.  In doing so, PHMSA recognized that the pipeline segments were safe to operate.  *Id.* ¶ 20.

Because the Consent Decree contemplates extra-protective safety conditions in the form of a state waiver or special permit, Sable sought an appropriate special permit from PHMSA.  On December 23, 2025, PHMSA granted Sable an emergency special permit that contained substantially the same conditions as the previously-issued state waivers.  *Id.* ¶ 21.  On January 22, 2026, Sable submitted a request for a non-emergency special permit.  *Id.*  On February 23, 2026, PHMSA "preliminarily determined that the issuance of the special permit would not be inconsistent with pipeline safety" and noticed the special permit application for public comment.  *Id.* The public comment period runs through April 3, 2026.

On March 13, 2026, the United States, through the Secretary of the Department of Energy, issued an order directing Sable to immediately commence transportation of hydrocarbons through the Santa Ynez Pipeline System, pursuant to the Defense Production Act, 50 U.S.C. §§ 4501 et seq. ("DPA Order"). *Id.* ¶ 23.

Sable has complied with the DPA Order and resumed transportation of hydrocarbons through the pipeline segments, pursuant to the procedures set out in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

the Restart Plan and in compliance with Appendix D to the Consent Decree.[1]  *Id.* ¶ 24.  Sable has committed to implementing the conditions of the emergency special permit in the interim while PHMSA's review of the non-emergency special permit is pending.  *Id.* ¶ 22.

Sable began the restart process for the pipeline segments on March 14, 2026 by filling segment CA-324 with product that had been stored in tanks.  *Id.* ¶ 25.  Sable began the restart process during daylight hours, as required by the Restart Plan, and notified local emergency response personnel of the restart.  *Id.* ¶ 29.

Consistent with the Consent Decree, the Restart Plan provides for a phased restart process whereby each segment is brought up to pressure incrementally.  *Id.* ¶ 26.  The line pressures are checked for any changes in pressure that could indicate an issue.  *Id.*  The pipeline segments also are monitored by aircraft for any signs of releases. *Id.*  Once the stand-up pressure tests in one section of the pipeline segment were completed, Sable began the next section.  *Id.* ¶ 28.  Sable continued this process until oil reached Pentland Station on March 29, 2026.  *Id.* ¶¶ 31–38.  Once all required procedures were completed, on March 29, 2026, Sable commenced sale and delivery of hydrocarbons through a custody transfer meter owned by Plains, with hydrocarbons continuing through Plains' pipelines.  *Id.* ¶ 39.

The restart process has gone smoothly, consistent with the Consent Decree and the Restart Plan, with no safety or environmental concerns. *Id.* ¶ 40.

## II.  **ARGUMENT**

### A.  **Sable is not a party and the termination standard has been met.**

Plains is the only defendant under the Consent Decree and the only party subject to the termination standard.  As the United States explains, Plains has operated in compliance with the Consent Decree for five years and three months,

---

[1] Appendix D incorporates all outstanding corrective actions required by the Corrective Action Order, CPF No. 5-2015-5011H issued by PHMSA following the May 2015 spill.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

10

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

and California has not identified any alleged noncompliance by Plains. *See* ECF No. 49 at 10–11. Termination is thus appropriate under the unambiguous, plain language of the Consent Decree. *See Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 861 (9th Cir. 2007) (explaining that courts must treat consent decrees like contracts and interpret them based on the plain language).

Under the plain language, termination is tied to Plains' compliance with the Consent Decree (not Sable's). The Consent Decree's transfer provisions are not to the contrary. Paragraph 88 allows Plains to transfer the pipeline segments so long as the transferee assumes the obligations "specifically applicable to the asset(s) acquired." *See* Consent Decree, ECF No. 6-1 ¶ 88. Plains complied with this requirement when transferring the pipeline segments to Sable, and Sable contractually agreed to follow the Consent Decree's safety measures. This arrangement does nothing to change the straightforward termination standard. And it certainly does not create a source of new regulatory authority allowing California to supervise Sable's contractual obligations under the guise of a judicial Consent Decree that (1) did not involve and was not negotiated by Sable; (2) was meant to resolve violations that had nothing to do with Sable; and (3) expressly limits itself in relation to third parties. *See* Consent Decree, ECF No. 6-1 ¶ 80; *see also Ass'n for Ret'd Citizens of Conn., Inc. v. Thorne*, 30 F.3d 367, 370 (2d Cir. 1994) (declining to apply consent decree terms to a nonparty).

Sable did not negotiate or agree to be judicially bound by the termination provisions, nor did it agree to be a party to the Consent Decree that California is now using as an enforcement tool against it.[2] Instead, Sable contractually agreed to

---

[2] Other Consent Decrees take a different approach to the transfer of facilities than the one negotiated by California, the United States, and Plains here. *Compare* ECF No. 6-1 ¶ 88 (requiring a contractual agreement with the transferee to follow the Consent Decree) *with* Consent Decree, *United States v. Consol Energy Inc.*, No. 11-cv-00028 (N.D.W. Va. June 5, 2011), Request for Judicial Notice ("RJN"), Ex. A, ¶ 6 (setting up a process for a transferee "to be added as a Party under the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

implement certain safety measures for the pipeline segments, consistent with the Consent Decree. And Sable has done so.

**B.  Termination is appropriate because Sable has carried out the necessary safety measures and the fundamental purpose of the Consent Decree has been accomplished.**

Sable's conduct is irrelevant to the question of Consent Decree termination because the plain language of the Consent Decree allows for termination after compliance by Plains, the only defendants. But Sable's conduct in safely carrying out its contractual obligations further supports termination.

*1. Sable has performed all safety measures required by the Consent Decree.*

With California's blessing, the Consent Decree laid out a suite of safety measures to be implemented prior to restart of the pipeline segments. Sable has done everything needed to safely resume flowing oil – as confirmed by PHMSA when it reviewed Sable's fill plan and startup procedures and approved Sable's Restart Plan for the pipeline segments. Sable's safety measures include:

- Installing additional safety valves (Appendix D.1.b.7)
- Updating piping and instrumentation diagrams, software, manuals, and operating procedures (Appendix B.12.A.2)
- Seeking an enforceable permit (formerly a state waiver) that will impose additional safety conditions on future operation (Appendix B.1)
- Point-to-point verification reviews for all components of the SCADA system (Appendix B.12.A.1)

---

Decree and thus bound as a Defendant by the terms thereof"). California could have insisted on language requiring a transferee to be added as a party and judicially bound by the Consent Decree's terms. It did not do so, and it cannot now shoehorn nonparty Sable into its preferred enforcement framework.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

- Repairing any "anomalies" that meet the Consent Decree's repair criteria, which is more stringent than the normal pipeline safety regulatory requirements (Appendix B.4.A.1.)[3]

The United States agrees that "Sable has complied with the injunctive relief requirements that it contractually assumed and that have accrued to date." ECF No. 49-2 ¶ 17, ¶¶ 27–66 (discussing Sable's contractual compliance with Consent Decree provisions).

On March 14, 2026, Sable resumed flowing oil though the pipeline segments in compliance with the DPA Order. Sable's restart has proceeded safely, consistent with its Restart Plan and all Consent Decree provisions. Sable has carefully tested and monitored each incremental segment for pressure changes. Flores Dec. ¶ 26. Consistent flyovers have confirmed the lack of any releases or other issues. *Id.* And PHMSA inspectors have been on-site throughout this restart process, to observe, monitor operations, and ensure compliance with required safety measures.

Sable has now completed the phased restart process, with no releases, pressure issues, safety concerns, or other problems. *Id.* ¶¶ 26, 28, 40. PHMSA agrees (*see* ECF No. 49-3 ¶ 33), and California cannot claim otherwise.

> 2. *Termination is appropriate because the fundamental purpose of the Consent Decree – safe pipeline operation – has been accomplished.*

California claims that Sable (a nonparty) is in violation of the Consent Decree because it did not receive OSFM approval prior to restarting the pipeline segments. *See* ECF No. 43 at 13–14. Presumably, California believes that terminating the Consent Decree is inappropriate for this reason as well.

---

[3] This Consent Decree requirement only applies to any "operating segments" of pipeline (and therefore does not apply prior to restart). However, PHMSA's original corrective action order and the Consent Decree contemplate a state waiver and restart approval. Here, OSFM went beyond the Consent Decree and imposed pre-restart anomaly repair requirements for the pipeline segments, and consequently Sable repaired over 200 sections of pipe to ensure safe resumption of flow.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

Even if Sable's conduct is relevant to the termination inquiry, and even if California is right that there is some technical noncompliance with the Consent Decree because Sable did not receive OSFM approval prior to restart (both claims are incorrect), termination is still appropriate because the Consent Decree has fulfilled its purpose and PHMSA's review and approval creates substantial compliance with the Consent Decree's safety provisions.

A consent decree should be terminated when its "fundamental purpose has been accomplished." *See Peery v. City of Miami*, 977 F.3d 1061, 1075 (11th Cir. 2020). The Ninth Circuit recognizes that consent decrees can and should be terminated when there has been "substantial compliance" and a consent decree has achieved its purpose. *See Jeff D. v. Otter*, 643 F.3d 278, 284 (9th Cir. 2011); *Lab./Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1122 (9th Cir. 2009) (requiring a "holistic view" and finding substantial compliance where "the decree accomplished its essential purposes and the situation improved greatly").

California would have the Court believe that the fundamental purpose of the Consent Decree is to bestow upon the State unlimited regulatory oversight and veto authority over the pipeline segments, in perpetuity. Not so. The clear purpose of the Consent Decree is to create a path to safe, environmentally-protective pipeline operation, in compliance with all pipeline safety laws. That purpose can be achieved just as effectively through the approvals and oversight of PHMSA, the statutorily-recognized federal agency charged with pipeline safety, as opposed to OSFM, which lacks any regulatory authority over the interstate Santa Ynez Pipeline System. *See Jeff D.*, 643 F.3d at 284 (explaining that "strict and literal compliance" with a consent decree is not needed); *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1123 (affirming consent decree termination even if "every last wish and hope of the decree was not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

achieved"). With PHMSA's review and approvals, Sable has completed the path to a safe restart, and the Consent Decree should be terminated.

**C.    Termination is appropriate because all forward-looking safety measures are captured by the Pipeline Safety Act, the Special Permit, and PHMSA's continued regulatory oversight.**

The Consent Decree has a clear expiration date. It is not designed to be never-ending, and it does not need to be never-ending, because the pipeline segments are subject to robust regulatory oversight post-termination. This future oversight will ensure continued safety and environmental protection, without the need for a Consent Decree.

**First**, Sable and the Santa Ynez Pipeline System will continue to be subject to the full suite of safety rules under the federal Pipeline Safety Act and implementing regulations. These rules address safe operation, inspections and repairs, reporting and recordkeeping obligations, and leak prevention and detection. These comprehensive requirements apply to the Santa Ynez Pipeline System and are enforceable by PHMSA or even private parties in certain circumstances. *See* 49 U.S.C. § 60121.

**Second**, the special permit captures <u>all</u> safety-related Consent Decree provisions that have yet to be carried out. For example, Appendix D of the Consent Decree contemplates an in-line inspection of the pipeline segments after the segments have restarted and achieved steady-state operation. That in-line inspection will identify any additional repairs to be made, again, according to heightened extra-protective criteria.[4] The special permit is an enforceable instrument that will continue to apply to Sable after Consent Decree termination. The existence of the

---

[4] In fact, the special permit imposes even stricter repair criteria than the Consent Decree's already-extra-safe criteria. *Compare* Appendix B.4.A.1 (applying a 40% repair criteria trigger) to ECF No. 45-1, Ex. 7 at 9, Special Permit Condition 14.j (applying 40% plus a margin of error to account for "tool tolerance").

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

15

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

special permit and its safety conditions is yet another reason why the Consent Decree has fulfilled its purpose and should be terminated.  *See Jeff D.*, 643 F.3d at 284.

**Third**, post-termination, PHMSA retains its authority to bring enforcement actions for any alleged noncompliance and to order the immediate shutdown of the pipeline if continued operation is or would be hazardous to life, property, or the environment.  *See* ECF No. 49-3 ¶ 34.

With these safety requirements, there is no justification for the Consent Decree to continue in force beyond its clear expiration date.  Consent Decree termination will not give Sable a pass from safe pipeline operation and compliance with pipeline safety requirements.  And terminating the Consent Decree will not threaten safety or risk environmental harm.  Instead, after the Consent Decree is lifted, Sable will continue to follow pipeline safety rules and the extra-protective conditions of its enforceable special permit.

**D.**     **California's other lawsuits provide additional reasons to terminate the Consent Decree, not leave it in force indefinitely.**

California has left no stone unturned in its efforts to stop the Santa Ynez Pipeline System, including filing an unsupported ex parte motion to enforce the Consent Decree against Sable (a nonparty) in this matter.  California has also: (a) petitioned the 9th Circuit to review PHMSA's interstate determination;[5] (b) sued Sable on behalf of the California Department of Parks and Recreation (a State plaintiff entity) to stop oil from flowing through the pipeline segments;[6] (c) sued the U.S. Department of Energy, alleging that the DPA Order is illegal and requesting an injunction to stop the pipeline;[7] (d) requested that a state court keep an injunction against Sable in place, despite the fact that California is nominally a defendant in

---

[5] *See California v. PHMSA*, No. 26-508 (9th Cir.) (consolidated with *Env't Defense Ctr. v. PHMSA*, No. 25-8059 (9th Cir.)).

[6] *See Cal. Dep't of Parks & Rec. v. Sable*, No. 26-cv-02946 (C.D. Cal.).

[7] *See California v. Wright*, No. 26-cv-3396 (C.D. Cal.).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

that action and has no claims against Sable;[8] and (e) taken or threatened enforcement actions under a variety of state laws that California (incorrectly) alleges apply to Sable's operation of the Santa Ynez Pipeline System, including SB 237 – a law enacted by California with the specific intent to stop the pipeline.[9]

Sable vehemently disagrees with California's positions in these other cases. But the existence of these other matters provides additional support for straightforward termination of the Consent Decree here. California will have its day in court. It will have a chance to argue that these other impediments somehow support the State's position that the Santa Ynez Pipeline System should not be allowed to operate. But what California cannot do is arbitrarily stand in the way of Consent Decree termination because it wants perpetual authority to supervise a nonparty's performance of contractual obligations.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion and terminate the Consent Decree.

Dated:  April 1, 2026                                 Respectfully submitted,


                                          By: /s/ Nicholas McDaniel
                                          LATHAM & WATKINS LLP
                                          Jessica Stebbins Bina (Bar No. 248485)
                                          jessica.stebbinsbina@lw.com
                                          10250 Constellation Blvd., Suite 1100
                                          Los Angeles, CA 90067
                                          Telephone:  +1 424.653.5500
                                          Facsimile:  +1 424.653.5501

                                          BABST CALLAND
                                          Nicholas McDaniel (pro hac vice)
                                          nmcdaniel@babstcalland.com
                                          505 Ninth St., NW, Suite 602

---

[8] See Ctr. for Biological Diversity v. Cal. Dep't of Forestry & Fire Prot., No. 25CV02244 (Cal. Super. Ct. Santa Barbara Cty.).

[9] See Pacific Pipeline Co. v. California, No. 26-cv-01486 (C.D. Cal.).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:   +1 202.853.3491

*Attorneys for Nonparties Sable Offshore*
*Corp. and Pacific Pipeline Company*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Nonparties Sable Offshore Corp. and Pacific Pipeline Company, hereby certifies that this Brief in Support of Motion to Terminate Consent Decree contains 3890 words, which complies with the word limit for L.R. 11-6-1.

Dated: April 1, 2026                                   /s/ *Nicholas McDaniel*

                                                            Nicholas McDaniel

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-cv-02415-SVW-SSCx
BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO TERMINATE CONSENT DECREE