ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
JUSTIN D. HEMINGER
BRADLEY CRAIGMYLE
Deputy Assistant Attorneys General
RILEY W. WALTERS
Email: Riley.Walters@usdoj.gov
Counsel
U.S. Department of Justice
Environment & Natural Resources Division
STEFAN J. BACHMAN (DC Bar No. 90008649)
Email: Stefan.Bachman@usdoj.gov
Senior Attorney
U.S. Department of Justice
Environmental Enforcement Section
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone: (202) 598-9566

*Attorneys for the United States of America*

*[Additional Counsel for Sable and Plains Listed Below]*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PLAINS ALL AMERICAN PIPELINE, L.P. *et al.,* <br><br> Defendants. | Case Nos. 2:20-cv-02415-SVW-SSC; 2:26-cv-03396-SVW-SSC <br><br> **JOINT POST-HEARING BRIEF FROM THE UNITED STATES OF AMERICA, SABLE OFFSHORE CORP. AND PACIFIC PIPELINE CO., AND PLAINS ALL AMERICAN PIPELINE, L.P. AND PLAINS PIPELINE, L.P.** <br><br> Judge: Honorable Stephen V. Wilson |

STATE OF CALIFORNIA,

              Plaintiff,

v.

CHRIS WRIGHT, in his official capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF ENERGY,

              Defendants.

BABST CALLAND
Nicholas McDaniel (*pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:   +1 202.853.3491

LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:   +1 424.653.5501

HOLLAND & KNIGHT LLP
James W. Noe (*pro hac vice forthcoming*)
*jim.noe@hklaw.com*
800 17th Street N.W., Suite 110
Washington, D.C. 20006
Telephone:  +1 202.469.5525

*Attorneys for Sable Offshore Corp.
and Pacific Pipeline Company*

DANIEL B. LEVIN (State Bar No. 226044)
daniel.levin@mto.com
COLIN A. DEVINE (State Bar No. 315801)
colin.devine@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426

*Attorneys for Plains All American Pipeline L.P.
and Plains Pipeline L.P.*

# TABLE OF CONTENTS

I.    THE *WRIGHT* PRELIMINARY INJUNCTION MOTION SHOULD BE DENIED. .................................................................................. 2

    A.    California has failed to show that it is likely to suffer imminent irreparable harm absent preliminary relief. ................................ 2

    B.    California's requested relief is against the public interest. .................. 3

    C.    California has failed to show that it is likely to succeed on the merits. ................................................................................ 4

II.    THE CONSENT DECREE SHOULD BE TERMINATED OR MODIFIED. ............................................................................... 9

    A.    The Consent Decree should be terminated. ......................................... 9

    B.    At a minimum, the Consent Decree should be modified to respond to changed circumstances. ...................................................... 11

    C.    California's Motion to Enforce should be denied. ............................... 12

    D.    Plains' Statement. ............................................................................... 15

CONCLUSION ................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
   585 U.S. 579 (2018) ...............................................................................3

*Ahlman v. Barnes*,
   No. 20-55568, 2020 WL 3547960 (9th Cir. June 17, 2020) .................2

*Am. Semiconductor, Inc. v. Cal. Assignments LLC*,
   No. 12-cv-06138, 2013 WL 5937968 (N.D. Cal. Oct. 30, 2013)...........10, 13

*Arizona v. United States*,
   567 U.S. 387 (2012) ...............................................................................8

*Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Rsrv. v. Enbridge Energy Co.*,
   626 F. Supp. 3d 1030 (W.D. Wis. 2022)................................................4

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ...............................................................................8

*City of New York v. FCC*,
   486 U.S. 57 (1988) .................................................................................8

*Clark v. Martinez*,
   543 U.S. 371 (2005) ...............................................................................5

*Coal. for Econ. Equity v. Wilson*,
   122 F.3d 718 (9th Cir. 1997) .................................................................3

*Cohen v. Apple Inc.*,
   46 F.4th 1012 (9th Cir. 20224)...........................................................8, 9

*Coleman v. Newsom*,
   131 F.4th 948 (9th Cir. 2025)...........................................................13, 14

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
   189 F. Supp. 3d 85 (D.D.C. 2016).........................................................4

*E. Air Lines, Inc. v. McDonnell Douglas Corp.*,
   532 F.2d 957 (5th Cir. 1976) .................................................................6

*FDA v. Wages & White Lion Investments., LLC*,
   604 U.S. 542 (2025) ...............................................................................7

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
   458 U.S. 141 (1982) ...............................................................................8

*Flores v. Rosen*,
   984 F.3d 720 (9th Cir. 2020) .................................................................7

*Florida v. Dep't of Health & Hum. Servs.*,
   19 F.4th 1271 (11th Cir. 2021)...............................................................3

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ...............................................................................4

*Golden State Bottling Co. v. NLRB*,
   414 U.S. 168 (1973) ...............................................................................10

*Haig v. Agee*,
453 U.S. 280 (1981) .................................................................................................. 4

*Headwaters Inc. v. U.S. Forest Serv.*,
399 F.3d 1047 ......................................................................................................... 13

*Hercules Inc. v. United States*,
24 F.3d 188 (Fed. Cir. 1994) .................................................................................... 9

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) .................................................................................... 13

*Int'l Techs. Consultants, Inc. v. Pilkington PLC*,
137 F.3d 1382 (9th Cir. 1998) ............................................................................ 9, 14

*Jensen v. Nat'l Marine Fisheries Serv.*,
512 F.2d 1189 (9th Cir. 1975) ................................................................................. 4

*Johnson v. Tyson Foods, Inc.*,
580 F. Supp. 3d 382 (N.D. Tex. 2022) ................................................................. 6, 9

*Kansas v. United States*,
249 F.3d 1213 (10th Cir. 2001) ............................................................................... 3

*Keith v. Volpe*,
784 F.2d 1457 ......................................................................................................... 12

*Lab./Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*,
564 F.3d 1115 (9th Cir. 2009) ............................................................................... 10

*Local No. 93, Int'l Ass'noc. of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
478 U.S. 501 (1986) .......................................................................................... 10, 13

*MetroPCS Cal., LLC v. Picker*,
970 F.3d 1106 (9th Cir. 2020) .............................................................................. 3, 9

*Murphy v. Nat'l Collegiate Athletic*,
*Ass'n*, 584 U.S. 453 (2018) ..................................................................................... 6

*Nebraska v. Su*,
121 F.4th 1 (9th Cir. 2024) ...................................................................................... 5

*Nelson v. Stewart*,
422 F.3d 463 (7th Cir. 2005) ................................................................................... 8

*Olympic Pipe Line Co. v. City of Seattle*,
437 F.3d 872 (9th Cir. 2006) ............................................................................... 2, 12

*Reed v. Tyson Foods, Inc.*,
No. 21-cv-01155, 2021 WL 5107725 (W.D. Tenn. Nov. 3, 2021) ........................... 9

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992) ............................................................................................ 7, 11

*Sierra Club v. North Dakota*,
868 F.3d 1062 (9th Cir. 2017) ............................................................................... 13

*Tennessee v. Dep't of Educ.*,
104 F.4th 577 (6th Cir. 2024) .................................................................................. 3

*Thompson v. Enomoto*,
   915 F.2d 1383 (9th Cir. 1990) ................................................................. 13
*United States v. Asarco Inc.*,
   430 F.3d 972 (9th Cir. 2005) .................................................................... 9
*United States v. ITT Rayonier, Inc.*,
   627 F.2d 996 (9th Cir. 1980) ................................................................... 13
*United States v. Vertac Chem. Corp.*,
   46 F.3d 803 (8th Cir. 1995) ...................................................................... 9
*Winter v. Nat.ural Res.ources Def.ense Council, Inc.*,
   555 U.S. 7 (2008) ....................................................................................... 4

**Statutes**
5 U.S.C. § 706 ................................................................................................ 7
33 U.S.C. § 1319 .......................................................................................... 13
49 U.S.C. § 60101(a) ................................................................................... 11
49 U.S.C. § 60104 ........................................................................................ 12
49 U.S.C. § 60104(c) ..................................................................................... 2
50 U.S.C. § 4502(a)(5) .................................................................................. 6
50 U.S.C. § 4511(a) ................................................................................... 5, 6
50 U.S.C. § 4511(a)(2) .................................................................................. 6
50 U.S.C. § 4511(c) ....................................................................................... 5
50 U.S.C. § 4516 ............................................................................................ 6
50 U.S.C. § 4552(14) ..................................................................................... 6
50 U.S.C. § 4557 ............................................................................................ 9

**Regulations**
49 C.F.R. § 195, Appendix A (2026) ......................................................... 11
8 C.F.R. § 241.14 (2002) ............................................................................... 5

**Other Authorities**
*Adjusting Certain Delegations Under the Defense Production Act*,
   Exec. Order No. 14391 ................................................................................ 5
*National Defense Resources Preparedness*,
   Exec. Order. No. 13603 ............................................................................... 5

Before the Court are three motions across two cases: (1) California's Motion for a Preliminary Injunction and Stay against a Defense Production Act ("DPA") order (the "DPA Order") directing Sable Offshore Corp. ("Sable") to immediately resume transporting oil through the Santa Ynez Pipeline System ("the Pipeline"); (2) the United States' Motion to Terminate or Modify a 2020 Consent Decree entered by the United States and California, as co-plaintiffs, and Plains All American Pipeline, L.P. and Plains Pipeline, L.P. (collectively, "Plains"), as defendants; and (3) California's Motion to Enforce the same Consent Decree. The simplest way to resolve these Motions is also the legally correct one.[1]

First, in *California v. Wright*, the Court should *deny* California's Motion for a Preliminary Injunction and Stay against the DPA Order because the State has failed to show that it is likely to suffer irreparable harm absent preliminary relief, but even if the Court reaches the other *Winter* factors, none support preliminary relief. The Secretary of Energy lawfully issued the Order to protect national security by securing a reliable source of domestic oil production in California.

Second, in *United States v. Plains*, the Court should *terminate* the Consent Decree because the negotiated standard for termination has been met. Alternatively, the Court should *modify* the Consent Decree to account for changed factual and legal circumstances—principally, the now-interstate operation of the Pipeline and the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA")'s recognition of that fact and assertion of jurisdiction under the Pipeline Safety Act. Separately, the effects of the DPA Order require modification of the Decree. And the Court should deny California's Motion to Enforce the Consent Decree, which seeks the extreme relief of shutting down the Pipeline with no evidentiary support.

---

[1] References to the docket in *California v. Wright*, No. 26-cv-03396 (C.D. Cal.), are marked "*Wright* Dkt. No." References to the docket in *United States v. Plains All American Pipeline, L.P.*, No. 20-cv-02415 (C.D. Cal.), are marked "*CD* Dkt. No."

## ARGUMENT

**I.      The *Wright* Preliminary Injunction Motion Should Be Denied.**

**A.      California has failed to show that it is likely to suffer imminent irreparable harm absent preliminary relief.**

"[A] showing of irreparable injury is an absolute prerequisite" to a preliminary injunction. *Ahlman v. Barnes*, No. 20-55568, 2020 WL 3547960, at *2 (9th Cir. June 17, 2020). And as this Court held in rejecting another attempt by California to shut down the Pipeline, California "has manifestly failed to demonstrate that it will suffer irreparable harm in the absence of preliminary injunctive relief." *State Parks* Dkt. No. 60 ("*State Parks* Order") at 5.[2] On that basis alone, the Court can and should deny California's Motion for a Preliminary Injunction and Stay. *Id.* at 7.

This Court has already rejected all but one of California's theories of harm: the alleged "inability to carry out its laws" due to the DPA Order. *Wright/Plains* June 8, 2026 Tr. ("Tr.") at 28:8–10. But California still has not identified what law the Order prevents it from enforcing. It previously speculated that, if various conditions are met, the California Geologic Energy Management Division and the Department of Fish and Wildlife *may* be unable to carry out certain duties at some hypothetical future time. *See Wright* Dkt. No. 23 at 24. At the June 8 hearing, California also alluded to "safety requirements on pipelines" that the DPA Order allegedly displaces. Tr. at 74:23–75:6. But the Pipeline Safety Act—*not* the DPA Order—displaced California's authority to regulate pipeline safety when PHMSA determined in December 2025 that the Pipeline is interstate (an action that the Ninth Circuit declined to stay). *See* 49 U.S.C. § 60104(c); *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 878 (9th Cir. 2006). Enjoining the Order would thus not remedy California's asserted harm.

---

[2] References to the docket in *California Department of Parks & Recreation v. Sable Offshore Corp.*, No. 26-cv-02946 (C.D. Cal.), are marked "*State Parks* Dkt. No."

California's claim that it cannot enforce its laws also rings hollow when, in other cases, California argues that the DPA Order does *not* displace state law and that Sable must comply with state requirements—the exact opposite of what the State asserts here to show irreparable harm. *See, e.g.*, *State Parks* Dkt. No. 30 at 5–6 (arguing the Order does not preempt state law); *Wright* Dkt. No. 16-2 at 19–21 (same); *see* Tr. at 71:2–25 (same). California cannot have it both ways.

That California is actively seeking to enforce state law elsewhere also distinguishes the cases it cites. Those cases involved direct judicial injunctions against enforcement of state law or similar direct displacement of state authority. *Abbott v. Perez*, 585 U.S. 579, 602 & n.17 (2018); *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *Kansas v. United States*, 249 F.3d 1213, 1223 (10th Cir. 2001); *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024). By contrast, the DPA Order operates directly upon Sable, not California, and its effect on state law cannot be determined in the abstract but must be examined factually in individual challenges—exactly the sort of challenges California has filed elsewhere. *See MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1124–26 (9th Cir. 2020).

In sum, California's own actions betray its lack of irreparable harm, a "deficiency" that "alone is fatal to [its] claim of entitlement to preliminary injunctive relief." *State Parks* Order at 7. So the Court need not reach the other *Winter* factors.[3]

**B.    California's requested relief is against the public interest.**

The public interest and equities cut strongly against an injunction. The Secretary issued the DPA Order based on his determination that the Pipeline is "a

---

[3] By contrast, to rule for California on irreparable harm, the Court would have to first reach the merits because a state does not suffer "irreparable injury" merely because "federal law preempts conflicting state law[.]" *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1292 (11th Cir. 2021). Under California's own theory, displacement of state law could only cause irreparable harm if the Federal Government were acting *outside* the scope of its authority. *Wright* Dkt. 32 at 7-8.

critical energy resource" necessary to alleviate "adversarial dependence" and "energy vulnerabilities on the West Coast." *Wright* Dkt. No. 16-1 at ECF header page 10; *see also* Tr. 37:24–38:2 ("[T]he argument is . . . the vulnerability to dependence on importing oil and the presence of an extraordinary number of military bases in California."); Tr. at 25:4–26:25; *Wright* Dkt. No. 23 at 24–25 & Dkt. No. 24-4 at 20–21 (effect on Sable and its employees). "It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (citation omitted). Where "an immediate shutdown of the pipeline would have significant public and foreign policy implications[,]" an injunction should not issue. *Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Rsrv. v. Enbridge Energy Co.*, 626 F. Supp. 3d 1030, 1037, 1055 (W.D. Wis. 2022); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008) (public interest tipped "strongly in favor" of the government where President determined that the challenged activity was "essential to national security" (internal citation omitted)).

**C.      California has failed to show that it is likely to succeed on the merits.**

**1.**      California is not likely to succeed on the merits for four reasons. *First*, California's arguments are not reviewable under the APA because the Secretary exercised delegated presidential authority when he issued the DPA Order. *Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1191 (9th Cir. 1975); *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992); *Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 100–02 (D.D.C. 2016), *aff'd*, 875 F.3d 1132 (D.C. Cir. 2017), *opinion amended and superseded on denial of reh'g*, 883 F.3d 895 (D.C. Cir. 2018). California cites no case to the contrary. It instead cites three inapposite cases that did *not* involve the exercise of delegated *presidential* authority. *See, e.g.*, *Nebraska v. Su*, 121 F.4th 1, 4–5, 14–15 (9th Cir. 2024) (APA review of agency rule, issued under agency's own authority, that implemented a policy directive in an executive order).

4

Because APA review is unavailable, California is unlikely to succeed on *any* of the arguments made in its motion. Though California pleads two constitutional claims, it has not moved for relief under the Constitution, relying instead on constitutional avoidance. But that is a canon of *statutory* construction. *See Wright* Dkt. No. 27 at 9–10 & Dkt. No. 16-2 at 14–15. As the Supreme Court has said, the canon "is not a method of adjudicating constitutional questions by other means"—it is about "*avoid[ing]* the decision of constitutional questions." *Clark v. Martinez*, 543 U.S. 371, 381 (2005), *superseded by a regulation on other grounds*, 8 C.F.R. § 241.14 (2002). "[W]hen a litigant invokes the canon of avoidance," then, "he seeks to vindicate his own *statutory* rights[,]" not his constitutional rights. *Id.* at 382. Thus, California's constitutional arguments are really statutory arguments about the meaning of the DPA, subject to review only under the APA.

*Second*, the DPA Order is a valid exercise of the broad authority granted by the DPA. The Secretary of Energy, exercising authority delegated to him by the President,[4] issued the DPA Order to address energy vulnerabilities on the West Coast that jeopardize our national security. Those vulnerabilities stem from the fact that California is a "fuel island" with low in-state production and no inbound pipelines from other states. *Wright* Dkt. No. 23 at 4. California thus imports over 60% of its oil from foreign nations, which leaves our country's most populous state and the 32 military bases there highly vulnerable to disruptions in the global supply chain. *Id.*

Congress enacted the DPA to solve precisely this type of problem. The statute explicitly recognizes that energy security is national security. *See, e.g.*, 50 U.S.C. §§ 4502(a)(5) ("national defense preparedness" depends on "the availability of domestic energy supplies"), 4552(14) ("national defense" includes "energy

---

[4] *See Adjusting Certain Delegations Under the Defense Production Act*, Exec. Order No. 14391, 91 Fed. Reg. 13199 (Mar. 13, 2026) (delegating certain authorities under 50 U.S.C. § 4511(c) to the Secretary of Energy); *National Defense Resources Preparedness*, Exec. Order. No. 13603, 77 Fed. Reg. 16651 (Mar. 16, 2012) (delegating authority under 50 U.S.C. § 4511(a) to the Secretary of Energy).

production"), 4516 (designating energy as a "strategic and critical material"). It therefore grants the President broad authority to ensure that our domestic energy supply supports the national defense. *See, e.g.*, *id.* § 4511(a), (c).

The DPA Order is a straightforward exercise of that authority. For example, the Order allocates oil stranded in an offshore oil field to where the oil is needed on the West Coast. *Id.* § 4511(a)(2), (c). And by directing Sable to transport the oil through the Pipeline, the Order directs the "manner" and "conditions" of the allocation, as authorized by the DPA. *Id.* § 4511(a)(2). In this way, the Order is analogous to the Secretary of Agriculture's use of DPA allocation authority in 2020 to order meat and poultry plants to resume operations. *See Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382, 388–89 (N.D. Tex. 2022), *aff'd*, No. 22-10171, 2023 WL 2645553 (5th Cir. Mar. 27, 2023).[5]

*Third*, California cannot escape the DPA's plain text by invoking the anticommandeering doctrine, as that doctrine prohibits the Federal Government from "issu[ing] orders *directly* to the States[,]" *Murphy v. NCAA*, 584 U.S. 453, 470 (2018) (emphasis added), while the DPA Order imposes an obligation directly on Sable, not California. California cites no case to support its separation-of-powers argument related to the Consent Decree, which is also wrong on the merits. No provision of the Consent Decree prohibits the President from using the authority Congress gave him in the DPA. The DPA Order does not conflict with the Consent Decree because OSFM's authority was already displaced by PHMSA's determination that the Pipeline is interstate; and even if there were a conflict, the Consent Decree would yield to the DPA Order under Supreme Court precedent, not the other way around. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388

---

[5] California rejects this precedent because the Secretary of Agriculture issued a letter rather than a formal order, but DPA orders may be issued through "informal means of persuasion" and "jawboning" just as much as through formal, coercive commands. *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 980, 992–94 (5th Cir. 1976). The formality of the DPA Order here, if anything, puts it on even stronger footing.

(1992). This is not an instance in which the Executive Branch violated *specific terms* imposed on it as a *defendant* to a consent decree, which would not be a *constitutional* violation in any event. *Cf. Flores v. Rosen*, 984 F.3d 720, 729 (9th Cir. 2020). In short, the Federal Government is not encroaching on judicial power; California is trying to use the Consent Decree to encroach on Executive and Legislative power.

*Finally*, the DPA Order complies with all relevant Department of Energy regulations, which ensure that parties subject to DPA orders understand their obligations. The DPA Order has both a start date and an end date. By directing Sable to act "immediately," the Order's start date is the date it was signed—March 13, 2026—and the end date is "such time as the conditions necessitating the issuance of this order abate." *Wright* Dkt. No. 16-1 at ECF header 11–12. Even if California were right that the regulations required the Secretary to list an arbitrary calendar date despite the impossibility of knowing exactly when the energy-supply problems would be resolved, California has not shown that including such a date would have changed the Secretary's decision to issue the DPA Order. Thus, any error would be harmless. *See* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 930 (2025). Indeed, because neither the DPA nor the regulations impose any durational limit on allocation orders, the Secretary could repeatedly amend any arbitrary calendar date.

**2.** Those are the live merits issues. California's attempt to insert another issue—whether the DPA Order preempts state law—is misplaced. For starters, California repeatedly contradicts itself on whether the Order has preemptive effect. *See above* Section I.A.

Contradiction aside, everything California says about preemption on the merits is a diversion. At issue here is whether the DPA Order is "within the scope of the [Secretary's] delegated authority," which is a *different* question from whether the DPA Order preempts state law. *Cohen v. Apple Inc.*, 46 F.4th 1012, 1028 (9th Cir. 2022) (citation omitted) (treating the validity of a regulation and its preemptive

effect as separate questions). If the DPA Order is "statutorily authorized," then it "will pre-empt any state or local law that conflicts with [it] or frustrates [its] purposes." *City of New York v. FCC*, 486 U.S. 57, 64 (1988). Conversely, if a state or local law does not conflict with the DPA Order under traditional principles of conflict preemption, then the DPA Order would not preempt that law—but the Order would still be legally valid. In short, preemption is a *consequence* of valid federal action, not a *condition* for it. *See Nelson v. Stewart*, 422 F.3d 463, 466 (7th Cir. 2005). And California has failed to cite a *single case* holding that an order or regulation was invalid simply because it lacked preemptive effect.

In any event, California misstates the legal standard for when Executive Branch action preempts state law. Orders and regulations have the full "force and effect of law" and have long "been held to pre-empt state law under the" same rules that apply to federal statutes. *Chrysler Corp. v. Brown*, 441 U.S. 281, 295–96 (1979); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). Contrary to California's position, preemption "does not depend on express congressional authorization to displace state law[.]" *De la Cuesta*, 458 U.S. at 154; *City of New York*, 486 U.S. at 64 (same). Or said another way, "Congress need not expressly delegate preemptive authority to [an agency] for its regulations to preempt state law." *Cohen*, 46 F.4th at 1028. So California's "narrow focus" on whether the DPA authorizes preemption is "misdirected." *De la Cuesta*, 458 U.S. at 154.[6] The question is whether a particular state law "conflicts with" the DPA Order or "frustrates [its] purposes," such as by making it "impossible to comply with both state and federal requirements[.]" *Cohen*, 46 F.4th at 1028 (citations omitted). That "requires a largely

---

[6] California is also wrong to read the DPA's express preemption language as somehow foreclosing conflict preemption in other contexts because an "'express preemption provisio[n] does *not* bar the ordinary working of conflict preemption principles' or impose a 'special burden' that would make it more difficult to establish the preemption of laws falling outside the clause." *Arizona v. United States*, 567 U.S. 387, 406 (2012) (alteration in original) (citation omitted).

factual inquiry." *MetroPCS*, 970 F.3d at 1126. The Court should not issue an advisory opinion on whether the Order can preempt state law generally.

Finally, California relies on two cases that interpreted the scope of the DPA's immunity provision. 50 U.S.C. § 4557; *Hercules Inc. v. United States*, 24 F.3d 188 (Fed. Cir. 1994), *aff'd*, 516 U.S. 417 (1996); *United States v. Vertac Chem. Corp.*, 46 F.3d 803 (8th Cir. 1995). Neither case speaks to the DPA Order's validity or to conflict preemption. *See* Tr. at 22:17–24:22. No matter the scope of the immunity provision, basic principles of preemption prevent state law from thwarting the *specific conduct* commanded by a DPA order. Neither *Hercules* nor *Vertac* addressed that question, and the only cases that have support preemption. *See Johnson*, 580 F. Supp. 3d at 388–89; *Reed v. Tyson Foods, Inc.*, No. 21-cv-01155, 2021 WL 5107725, at *6 (W.D. Tenn. Nov. 3, 2021).

## II.    The Consent Decree Should Be Terminated Or Modified.

### A.    The Consent Decree should be terminated.

Wholly independent of the DPA Order or PHMSA's jurisdiction over the Pipeline, the Court should terminate the Consent Decree. As California acknowledges, the Court must interpret the Consent Decree "within its four corners," *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005), and it may not impose obligations beyond those agreed to by the parties. *Int'l Techs. Consultants, Inc. v. Pilkington PLC*, 137 F.3d 1382, 1387 (9th Cir. 1998). Here, the Consent Decree contains a provision, Paragraph 100, that expressly governs termination, *CD* Dkt. No. 6-1 ¶¶ 100–02. Under Paragraph 100's plain terms, the Consent Decree should be terminated after (1) five years and three months have elapsed, and (2) "Defendants" have "complied with the requirements." *Id.* ¶ 100. "Defendants" are defined as two Plains entities, Plains All American Pipeline, L.P. and Plains Pipeline, L.P. *Id.* ¶ 7. California does not dispute that the time period has elapsed, and "California does not allege Plains has violated the Consent Decree." *CD* Dkt. No. 62 at 9. By the Decree's agreed-upon terms, termination is appropriate.

Sable is not a party to the Consent Decree, and its conduct is thus irrelevant to the termination analysis. Though "successors" to Plains are judicially bound under Paragraph 4 of the Consent Decree, only entities that are the continuing business enterprise of the previous party are legal successors. *See Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 180 (1973). Entities that simply purchase assets are not successors. *Am. Semiconductor, Inc. v. Cal. Assignments LLC*, No. 12-cv-06138, 2013 WL 5937968, at *7 (N.D. Cal. Oct. 30, 2013). Sable is not a legal successor to Plains; rather, Sable purchased the pipeline assets through a transaction with an Exxon subsidiary, after that subsidiary purchased the assets from Plains. And the Assumption Agreement does not change this conclusion. It is an agreement between Exxon and Sable, whereby Sable *contractually* agreed to follow certain Consent Decree provisions. The Assumption Agreement created *contractual* rights and duties between Sable and Exxon, but it did not subject Sable to this Court's jurisdiction or create *judicial* rights and obligations. *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 523, 525 (1986).

Even if the Court goes beyond the plain language of Paragraph 100 and concludes that Sable's conduct is relevant to the termination inquiry, the Court should still terminate the Consent Decree for two reasons. *First*, courts should terminate consent decrees when there has been substantial compliance and the purposes of the consent decree have been met, which is the case here. *See Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.,* 564 F.3d 1115, 1120–21 (9th Cir. 2009). Indeed, California and PHMSA *agree* that Sable has complied with the Consent Decree, except for a single insignificant dispute about the timing of an additional round of potential repairs—beyond the over 200 repairs that Sable has already performed. *See* Tr. 57:21–22; *CD* Dkt. No. 43 at 8. Those additional repairs (if even needed) will be done, just not on California's preferred timeline, and California has identified no safety concerns that would justify completing them sooner. *Second*, PHMSA is now the appropriate regulator, as explained below, and

it has already approved a restart plan and issued an emergency special permit for the Pipeline segments and is separately considering Sable's application for a non-emergency special permit. The Court should recognize these changed circumstances and terminate the Consent Decree.

**B.      At a minimum, the Consent Decree should be modified to respond to changed circumstances.**

If this Court declines to terminate the Consent Decree, it should modify the Decree to reflect changed factual and legal conditions. The Supreme Court has recognized three circumstances that may warrant consent decree modification: (1) "when changed factual conditions make compliance with the decree substantially more onerous[,]" (2) "when a decree proves to be unworkable because of unforeseen obstacles," or (3) "when enforcement of the decree without modification would be detrimental to the public interest[.]" *Rufo*, 502 U.S. at 384-85. A court *must* also modify a consent decree if, because of a change in federal law, compliance with its terms becomes "impermissible." *Id.* at 388. All the *Rufo* factors favor modification.

The factual circumstances have markedly shifted since the Court entered the Consent Decree. The Pipeline has changed in ownership, operation, and intent. While previously a nonoperational and separately owned system, it is now a single, integrated interstate pipeline. Under the Pipeline Safety Act, a pipeline is interstate if it moves oil between a place outside a state (here, federal waters in the Outer Continental Shelf) and a place in a state (here, Pentland Station in California). *See* 49 U.S.C. § 60101(a)(8)(B)(i); 49 C.F.R. pt. 195, Appendix A (2026). That the segments subject to the Consent Decree are now part of an interstate pipeline facility renders unworkable the Decree's provision that OSFM supervise restart. PHMSA advised OSFM of the change in jurisdictional status in December 2025 and has been supervising the Pipeline's restart since March 2026. There is simply no role left for OSFM to play. Separately, the Decree's conflict with DPA Order further justifies modification. Sable cannot comply with both the DPA Order directing Sable to

operate the pipeline and California's interpretation of the Consent Decree, which would enable OSFM to oversee compliance.

The legal situation has also changed. Entered in 2020 when the Pipeline segments were inoperative and classified as intrastate, the Consent Decree lists OSFM as the segments' regulator. Now, PHMSA is the regulator of the entire Pipeline. As California conceded at oral argument, "if PHMSA's determination is correct and the Pipeline Safety Act applies then California is preempted from regulating the pipeline." Tr. 73:2–4; *see* 49 U.S.C. § 60104; *Olympic Pipe Line*, 437 F.3d at 878–80. California seeks to use the Consent Decree to exercise authority barred by federal statute, and leaving the Decree unmodified would permit what federal law forbids: California's regulation of an interstate pipeline. At the very least, the Court should update the Decree, as set forth in the United States' proposed order (*CD* Dkt. No. 49-5), to substitute the current regulator, PHMSA, for OSFM and make other modest revisions reflecting the changed factual and legal circumstances. *See Keith v. Volpe*, 784 F.2d 1457, 1462 (9th Cir. 1986).

The public interest supports modifying the Consent Decree for the same reasons it supports denying California's Motion for a Preliminary Injunction in *Wright*. *See above* at I.B. And the public is best served by a single regulatory agency overseeing pipeline safety to ensure programmatic continuity—precisely what the parties sought to implement in the Decree by granting OSFM oversight over the then-intrastate Pipeline. If the Decree is not modified, Sable will remain subject to directly contradictory instructions from OSFM and PHMSA, harming the public's interest in safe and clear regulation of the Pipeline.

## C. California's Motion to Enforce should be denied.

California's Motion to Enforce, *CD* Dkt. No. 55, fails several times over. To prevail, California must first show that Sable, as a nonparty, is subject to a motion to enforce. *See Sierra Club v. North Dakota*, 868 F.3d 1062, 1067 (9th Cir. 2017). But Sable is not a party to the Consent Decree, and while it contractually assumed

12

certain obligations, it is not judicially bound. *See Local No. 93*, 478 U.S. at 523. In general, consent decrees are not enforceable against nonparties. *See Sierra Club*, 868 F.3d at 1067. Sable purchased the Pipeline from ExxonMobil, not Plains, and contractually agreed to follow certain safety provisions of the Consent Decree. *CD* Dkt. No. 61-1 ¶¶ 9-10; *see CD* Dkt. No. 49-2 ¶¶ 3, 5. But Sable never agreed to be substituted as a party or to be bound by the dozens of provisions not applicable to the segments. "There is no Ninth Circuit case law holding that nonparties . . . are bound by [an] injunction themselves for contempt purposes, when the nonparty purchases assets from an enjoined party." *Am. Semiconductor*, 2013 WL 5937968, at *7. Nor is Sable in privity with Plains because there is no "substantial identity" between the two parties. *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980), *superseded by a statute on other grounds*, 33 U.S.C. § 1319. And "parallel legal interests alone, identical or otherwise, are not sufficient to establish privity[.]" *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1054 (9th Cir. 2005).

Even if Sable were a party, California must show "(1) that [Sable] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). The State cannot make that showing, because Sable has substantially complied, as PHMSA has recognized. *CD* Dkt. No. 49-2 at ¶¶ 17–66.

Even if this Court were to find Sable not in substantial compliance, the Ninth Circuit has repeatedly held that changed circumstances excuse noncompliance. In *Thompson v. Enomoto*, 915 F.2d 1383 (9th Cir. 1990), a prison reform litigation case, the Ninth Circuit held that petitioner inmates' motion for contempt should be denied, and the consent decree should be modified, because it was impossible for prison officials to comply with the decree. *Id.* at 1385–86, 1391; *see also Coleman v. Newsom*, 131 F.4th 948, 960 (9th Cir. 2025) ("If the record establishes that there in fact is a present inability to comply with an order, the civil contempt inquiry is at

13

an end." (citation modified)). Here, changes to the ownership and operation of the Pipeline have altered the factual basis for the Consent Decree. *See above* Section II.B. PHMSA's resumption of jurisdiction and the DPA Order have likewise altered the Decree's legal background, making it impossible for Sable to comply with both the DPA Order and California's view of the Consent Decree. *Id.*

The Consent Decree recognizes that intervening events may "prevent[] the performance of an[] obligation under this Consent Decree." *CD* Dkt. No. 6-1 ¶¶ 44–48. Notably, the Decree sets out a nonjudicial process for resolving the issue, one that is the "*exclusive mechanism* to resolve disputes arising under or with respect to this Consent Decree." *Id.* ¶ 49 (emphasis added). And the parties negotiated agreed-upon stipulated penalty amounts as the remedy for any finding of noncompliance. *Id.* ¶¶ 26–29. Contrary to California's suggestions that Sable and the United States should have immediately come to this Court for emergency modification, Sable followed the agreed-upon procedures and invoked the force majeure clause within four days of resuming oil flow through the pipeline. *CD* Dkt. No. 61-1 ¶ 25. California's motion should be denied for ignoring this nonjudicial process.

Finally, there is no basis for "enforcing" the Consent Decree against the United States—California's co-plaintiff, not a defendant—and California has not identified any affirmative requirement in the Decree that the United States has not met. Neither PHMSA's exercise of jurisdiction nor the DPA Order violates any term of the Decree. *See Int'l Techs. Consultants*, 137 F.3d at 1387 ("A consent decree in a private action imposes no more on the party to be bound than that party agreed to."). And the United States timely moved to modify the Consent Decree on March 30, 2026, within three months of PHMSA's jurisdictional decision and within three weeks of the DPA Order.

Regardless of the merits of its motion, California's proposed relief—essentially a preliminary injunction—is inappropriate because California has made no attempt to meet the preliminary injunction standard, *see above* Section I.A. And

as this Court has already twice recognized, there is no risk of irreparable injury.

### D.    Plains' Statement

Plains should be terminated from the Consent Decree in whatever order the Court issues. Certain of the Consent Decree's requirements apply to the two former Plains pipelines now owned by Sable, but other ongoing Consent Decree requirements apply to Plains' wider operations, covering over 9,000 miles of pipelines. There is no dispute that Plains has met the Consent Decree's termination requirements. *See CD* Dkt. No. 6-1 ¶¶ 100–02. Neither the United States nor California contests otherwise. The final step is for the Court to order termination as to Plains. Regardless of how the Court rules on the application of the Consent Decree to Sable, or whether it modifies the Consent Decree, Plains requests that any order include the following language from the United States' proposed order: "*Defendants Plains All American Pipeline, L.P. and Plains Pipeline, L.P. are terminated as parties to the Consent Decree, and their obligations to comply with the Consent Decree are terminated.*" *CD* Dkt. No. 49-5 at 2.

### CONCLUSION

The Court should deny California's Motion for Preliminary Injunction and Stay, *Wright* Dkt. No. 16, and Motion to Enforce Consent Decree, *CD* Dkt. No. 55. And the Court should grant the United States' Motion to Terminate or Modify Consent Decree, *CD* Dkt. No. 49.

DATED: June 18, 2026      Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
BRADLEY CRAIGMYLE
ROBERT N. STANDER
JUSTIN D. HEMINGER
Deputy Assistant Attorneys General
RILEY W. WALTERS
Counsel

*/s/ Stefan J. Bachman*[7]
Stefan J. Bachman
Email: Stefan.Bachman@usdoj.gov
Senior Attorney (DC Bar No. 90008649)
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone: (202) 598-9566

*Attorneys for the United States of America*

BABST CALLAND
Nicholas McDaniel (*pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:  +1 202.853.3491

LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:  +1 424.653.5501

HOLLAND & KNIGHT LLP
James W. Noe (*pro hac vice forthcoming*)
*jim.noe@hklaw.com*
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Telephone:  +1 202.469.5525

*/s/ Nicholas McDaniel*
NICHOLAS McDANIEL

---

[7] Filer attests that all other signatories listed concur in the filing's contents and have authorized the filing.

*Attorneys for Sable Offshore Corp. and Pacific Pipeline Company*

DANIEL B. LEVIN (State Bar No. 226044)
daniel.levin@mto.com
COLIN A. DEVINE (State Bar No. 315801)
colin.devine@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426

*/s/ Colin A. Devine*
COLIN A. DEVINE

*Attorneys for Plains All American Pipeline L.P. and Plains Pipeline L.P.*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this brief is  15 pages in length, which complies with the page limit set by the Court.

*/s/ Stefan J. Bachman*
Stefan J. Bachman
Email: Stefan.Bachman@usdoj.gov
Senior Attorney (DC Bar No. 90008649)
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone: (202) 598-9566