ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
BRADLEY CRAIGMYLE
ROBERT N. STANDER
Deputy Assistant Attorneys General
JUSTIN D. HEMINGER
RILEY W. WALTERS (DC Bar No. 90008638)
Email: Riley.Walters@usdoj.gov
Counsel
STEFAN J. BACHMAN (DC Bar No. 90008649)
Email: Stefan.Bachman@usdoj.gov
Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:  (202) 598-9566

*Attorneys for the United States of America*

*[Additional Counsel for Sable and Plains Listed Below]*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiff, <br><br> v. <br><br> PLAINS ALL AMERICAN PIPELINE, L.P. *et al.,* <br><br> Defendants. | Case Nos. 2:20-cv-02415-SVW-SSC; 2:26-cv-03396-SVW-SSC <br><br> **JOINT POST-HEARING REPLY BRIEF FROM THE UNITED STATES OF AMERICA, SABLE OFFSHORE CORP. AND PACIFIC PIPELINE CO., AND PLAINS ALL AMERICAN PIPELINE, L.P. AND PLAINS PIPELINE, L.P.** <br><br> Judge: Honorable Stephen V. Wilson |

STATE OF CALIFORNIA,

             Plaintiff,

v.

CHRIS WRIGHT, in his official capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF ENERGY,

             Defendants.

BABST CALLAND
Nicholas McDaniel (*pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:   +1 202.853.3491

LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:   +1 424.653.5501

HOLLAND & KNIGHT LLP
James W. Noe (*pro hac vice forthcoming*)
*jim.noe@hklaw.com*
800 17th Street N.W., Suite 110
Washington, D.C. 20006
Telephone:  +1 202.469.5525

*Attorneys for Sable Offshore Corp.
and Pacific Pipeline Company*

DANIEL B. LEVIN (State Bar No. 226044)
daniel.levin@mto.com
COLIN A. DEVINE (State Bar No. 315801)
colin.devine@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426

*Attorneys for Plains All American Pipeline L.P. and Plains Pipeline L.P.*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

    I.    The Court Should Deny California's Motion for a Preliminary Injunction and Stay in *Wright*. ...............................................2

        A.    California has failed to show that it is likely to suffer imminent irreparable harm absent preliminary relief. ...............2

        B.    California has failed to show that it is likely to succeed on the merits..............................................................3

    II.    The Court Should Terminate or Modify the Consent Decree and Deny California's Motion to Enforce in *Plains*. ...................7

        A.    The Court should terminate the Consent Decree.......................7

        B.    Sable did not "defy" the Consent Decree. ................................7

        C.    Alternatively, the Court should modify the Consent Decree. ..............................................................................8

        D.    Regardless, California's Motion to Enforce should be denied. .............................................................................10

CONCLUSION.................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Am. Semiconductor, Inc. v. Cal. Assignments LLC*,
   2013 WL 5937968 (N.D. Cal. Oct. 30, 2013) ......................................................10

*Cohen v. Apple Inc.*,
   46 F.4th 1012 (9th Cir. 2022) .................................................................................6

*Cruz v. Bondi*,
   146 F.4th 730 (9th Cir. 2025) .................................................................................8

*Ctr. for Biological Diversity v. Burgum*,
   2025 WL 821660 (D. Mont. Feb. 21, 2025)........................................................10

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
   189 F. Supp. 3d 85 (D.D.C. 2016).........................................................................4

*FDA v. Wages & White Lion Invs., LLC*,
   604 U.S. 542 (2025)................................................................................................5

*Flores v. Rosen*,
   984 F.3d 720 (9th Cir. 2020) ..............................................................................5, 9

*Florida v. Dep't of Health & Hum. Servs.*,
   19 F.4th 1271 (11th Cir. 2021) ..............................................................................3

*Harmon v. San Diego Cnty.*,
   477 F. Supp. 1084 (S.D. Cal. 1979).....................................................................10

*Jensen v. Nat'l Marine Fisheries Serv.*,
   512 F.2d 1189 (9th Cir. 1975) ...............................................................................4

*Johnson v. Tyson Foods, Inc.*,
   580 F. Supp. 3d 382 (N.D. Tex. 2022) ...............................................................5, 6

*Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*,
   564 F.3d 1115 (9th Cir. 2009) ...............................................................................7

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
   606 U.S. 146 (2025)................................................................................................9

*MetroPCS Cal., LLC v. Picker*,
   970 F.3d 1106 (9th Cir. 2020) ...............................................................................7

*Murphy v. NCAA*,
   584 U.S. 453 (2018)................................................................................................6

*Nat'l Fed. of the Blind v. United Airlines Inc.*,
   813 F.3d 718 (9th Cir. 2016) .................................................................................6

*New York v. United States*,
   505 U.S. 144 (1992)................................................................................................5

*Rufo v. Inmates of Suffolk Cnty. Jail*,
   502 U.S. 367 (1992)................................................................................................8

*Sierra Club v. North Dakota*,
   868 F.3d 1062 (9th Cir. 2017) ...................................................................10
*Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*,
   558 U.S. 67 (2009) .........................................................................................9
*United States v. Asarco Inc.*,
   430 F.3d 972 (9th Cir. 2005) ......................................................................7, 9
*Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Tr. Co.*,
   379 U.S. 411 (1965)........................................................................................9

**Statutes**
5 U.S.C. § 706.......................................................................................................5
49 U.S.C. § 60104(c) ........................................................................................8, 9
49 U.S.C. § 60119(a)(1)........................................................................................9
50 U.S.C. § 4511(a) ..............................................................................................4
50 U.S.C. § 4552(16) ............................................................................................4
50 U.S.C. § 4557...................................................................................................6

**Rules**
FRCP 60(b) ......................................................................................................8, 10

## INTRODUCTION

According to California, the Court must wade into thorny issues like the hypothetical preemption of state laws or jurisdictional questions already being addressed in other cases. In fact, resolution of these motions is straightforward:

**California's Motion for a Preliminary Injunction and Stay in *Wright***

- California's motion should be summarily denied for lack of irreparable harm—as this Court and the Ninth Circuit have now found three times.
- If the Court examines the merits, the DPA Order is not reviewable under the APA. Even if it were, it is valid and lawful.
  - The DPA Order's preemptive effect is not at issue and can be examined as applied in other cases.
  - If the Court reaches the scope of preemption, the DPA Order preempts conflicting state law under standard preemption principles.

**United States' Motion to Terminate or Modify the Consent Decree in *Plains***

- The Consent Decree should be terminated because, by its plain language, Plains has met the requirement by complying for five years and three months.
  - Even if Sable's conduct were relevant, the Consent Decree should still be terminated because Sable has substantially complied.
- If the Court does not terminate the Consent Decree in its entirety, it should modify it to substitute PHMSA as regulator and terminate as to Plains.
- To grant the United States' motion, the Court need not (and cannot) decide the legality of (1) the DPA Order or (2) PHMSA's recognition of jurisdiction.

**California's Motion to Enforce the Consent Decree in *Plains***

- The Court need not reach this motion if it terminates or modifies the Consent Decree because either action will eliminate California's enforcement role.
- Additionally, the motion should be denied for these independent reasons:
  1. Consent decrees are not enforceable against third parties like Sable; Sable is not a legal successor; and the Assumption Agreement created private

contractual rights and obligations, not judicial rights and obligations.

    **2.** There are changed circumstances: PHMSA regulates now, not California.

    **3.** The DPA Order makes it impossible for Sable to comply with both federal and state directives. The Consent Decree must yield to the DPA Order.

    **4.** Sable has substantially complied with California's view of the Decree's requirements by conducting repairs and operating the Pipeline safely.

    **5.** The Consent Decree's own dispute resolution terms, not contempt motions, govern compliance disputes.

- To deny California's motion, the Court need not (and cannot) decide the legality of (1) the DPA Order or (2) PHMSA's recognition of jurisdiction; by contrast, granting the motion would effectively invalidate both federal actions.

## ARGUMENT

**I.** **The Court Should Deny California's Motion for a Preliminary Injunction and Stay in *Wright*.**

    **A.** **California has failed to show that it is likely to suffer imminent irreparable harm absent preliminary relief.**

In its post-hearing brief, California hangs its hat on two theories of irreparable harm: the alleged "inability to enforce its laws" and the "risk of harm to public health and safety and the environment." *Wright* ECF 62 at 18–19 & n.8. Both theories fail, and the Court can deny California's Motion on that basis alone. *See State Parks* ECF 60 ("*State Parks* Order") at 7.[1]

California's own actions refute its first theory. Unlike in the cases it cites, no state law has been enjoined here—much less *improperly* enjoined—as demonstrated by California's ongoing enforcement efforts. Indeed, the State is arguing in those

---

[1] Insofar as California alleges a violation of its "constitutional rights" apart from its alleged inability to enforce its laws, California neither has "constitutional rights" nor identifies what constitutional rights have been violated.

2

actions that the DPA Order leaves state law perfectly intact—the opposite of what it argues here on irreparable harm. *See, e.g.*, *State Parks* ECF 23; *Plains* ECF 55; Letter re Notice of Intent to Commence Cease and Desist Order and Administrative Penalty Proceedings, https://perma.cc/HMH4-2MCV (June 9, 2026). Under California's theory, it would not suffer irreparable harm until a court *holds* that the DPA Order preempts a particular state law. But critically, even then, any such future holding would not cause irreparable harm because preemption is not an invasion of state sovereignty—it is a consequence of federal supremacy. U.S. Const. art. VI, cl. 2; *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1292 (11th Cir. 2021).

California's eleventh-hour attempt to identify laws whose enforcement the DPA Order "stands to inhibit" changes nothing. *Wright* ECF 62 at 18. For one, California forfeited reliance on these laws. *See generally Wright* ECF 16-2 (no mention of the Elder California Pipeline Safety Act, Senate Bill 237, or the California Coastal Act); *Wright* ECF 27 (same); *Wright* ECF 32 (same). For another, California's bare claim that the DPA Order "stands to inhibit" these laws—without explaining *what* the laws do or *how* the DPA Order affects them—is just as speculative as the State's prior hypothetical preemption scenarios. *See Wright* ECF 63 at 8. In fact, when the Secretary of Energy issued the DPA Order, the federal Pipeline Safety Act had already displaced California's authority to regulate pipeline safety under the Elder California Pipeline Safety Act. *Id*.

As for its second theory, California has introduced no evidence that the Pipeline is likely to cause harm during this litigation—it simply speculates, just like it did in the *State Parks* case. *See State Parks* Order at 6. The United States, by contrast, introduced unrebutted evidence that the Pipeline is safe. *See Wright* ECF 23 at 30–31 (citing Hubbard Decl., ECF 23-2).

**B.    California has failed to show that it is likely to succeed on the merits.**

California is unlikely to succeed on the merits because (1) its arguments are unreviewable under the APA, and (2) the Order complies with the DPA, Department

3

of Energy regulations, and the Constitution. Preemption is not at issue in this case, but California's arguments fail anyway.

*Reviewability.* When, as here, the President delegates *his* statutory or constitutional authority to an agency head, and the agency head then acts solely under *that* authority, there is presidential action unreviewable under the APA. *Jensen v. Nat'l Marine Fisheries Serv.*, 512 F.2d 1189, 1191 (9th Cir. 1975); *Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 100–02 (D.D.C. 2016); *contra Wright* ECF 62 at 14 (attacking strawman that agency action is unreviewable if it is "linked to a presidential proclamation"). California's post-hearing brief ignores *Jensen* and assumes that "presidential involvement" is necessary for there to be presidential action. *Wright* ECF 62 at 14. But that is not the law. *See Jensen*, 512 F.2d at 1191 (noting that the Secretary of State approved the regulation without presidential involvement); *Detroit Int'l Bridge*, 189 F. Supp. 3d at 100 (noting that the State Department issued the permit without presidential involvement).

*DPA.* The Order is a valid prioritization and allocation, and each authority alone is sufficient to sustain the Order. First, on prioritization, text and history make clear that the President's authority is not limited to prioritizing existing contracts or orders. *See* 50 U.S.C. § 4511(a)(1) (granting authority to "require *acceptance* and *performance*" (emphasis added)); Presidential Memorandum on Order Under Defense Production Act Regarding General Motors Company (Mar. 27, 2020), https://perma.cc/N5AK-ECE2 (ordering *General Motors* to accept, perform, and prioritize new contracts for *ventilator* production).

Second, on allocation, the Order simply directs Sable to *transport* oil through the Pipeline to the West Coast, not to—as California claims—begin *production* by extracting crude oil from the ocean floor (Sable can do that independent of the Order). *Wright* ECF 23-1 at 12. Besides, California has not responded to the point that the President can compel production by allocating "services," which includes "production." 50 U.S.C. §§ 4511(a)(2), 4552(16)(A); *Wright* ECF 23 at 20. Finally,

4

California's suggestion that allocation orders cannot require action that violates state law confuses statutory authorization with preemption. *See Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382, 388–89 (N.D. Tex. 2022) (holding that an allocation order that directed conduct in violation of state law preempted that law).

***Department of Energy Regulations.*** The DPA Order complies with all relevant regulations. *See Wright* ECF 23 at 25–27; *Wright* ECF 63 at 13. California is wrong that the Federal Government is asking the Court to "excuse the lack of an end date because the Secretary could issue a new order." *Wright* ECF 62 at 15. The Court need not "excuse" anything because the Order complies with the end-date requirement and all other regulations. *See Wright* ECF 63 at 13. Even if the Court disagreed, any error would be harmless because it "had no bearing on the … substance of the decision" to issue *this* DPA Order. *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 590 (2025) (cleaned up); 5 U.S.C. § 706.

***Constitutional Avoidance.*** Constitutional avoidance does not require California's atextual reading of the DPA. California's reliance on *New York v. United States* for its anticommandeering argument is misplaced because there, unlike here, the Federal Government imposed a direct obligation on states. 505 U.S. 144, 176 (1992) (reasoning that Congress "held out the threat, should the States not regulate according to one federal instruction, of simply forcing the States to submit to another federal instruction"). And its reliance on *Flores v. Rosen* for its separation-of-powers argument fails because there, unlike here, the Executive Branch violated a specific obligation imposed on it as a *defendant* to a consent decree. 984 F.3d 720, 726–27, 741 (9th Cir. 2020). Even then, the court did not hold that the Executive Branch had acted *unconstitutionally*. *Id.* at 741.

***Preemption.*** At issue in *Wright* is whether the DPA Order is facially lawful. California still has not cited a *single* case holding that a federal action was unlawful simply because it lacked preemptive effect. Instead, the State just reasserts the same preemption points it raises in all its cases. The United States and Sable have

5

explained at length—and without rebuttal—why those points fail. *See, e.g.*, *Wright* ECF 23 at 22–23; *Wright* ECF 63 at 13–15; *State Parks* ECF 38 at 12–16; Tr. at 7:23–9:15, 22:12–24:22, 78:14–80:7. In sum, California's preemption arguments are internally inconsistent, irrelevant, incorrect, and improper.

They are internally inconsistent because California argues here and elsewhere that the DPA Order *lacks* preemptive effect, while also arguing that the Order is unlawful *because* it preempts without congressional authorization. California's claim that the United States' position here is inconsistent with its prior position on the scope of the DPA's immunity provision (50 U.S.C. § 4557) is false—the United States has never argued that a state can prohibit the specific conduct commanded by a DPA order. Such action is preempted based on the Supremacy Clause, with or without the immunity provision. *See Murphy v. NCAA*, 584 U.S. 453, 471 (2018).

California's preemption arguments are also irrelevant because whether the DPA Order is "statutorily authorized," and whether it preempts state law, are distinct questions. *Cohen v. Apple Inc.*, 46 F.4th 1012, 1028 (9th Cir. 2022). Even if California were right about preemption (it is not), that would simply knock out preemption as a defense to state-law claims; the DPA Order would still be valid, just like a federal statute without preemptive effect is still a valid statute.

In any event, California's arguments are incorrect because "Congress need not expressly delegate preemptive authority to the [Executive Branch] for its regulations to preempt state law." *Id.* Nor does "the inclusion of … an express preemption clause within a statutory scheme … foreclose the application of ordinary implied preemption principles." *Nat'l Fed. of the Blind v. United Airlines Inc.*, 813 F.3d 718, 731 (9th Cir. 2016). And California misunderstands conflict preemption. *See Cohen*, 46 F.4th at 1028; *Johnson*, 580 F. Supp. 3d at 388–89.

Finally, California's request that the Court decide preemption in the abstract—based on a hypothetical application of a state law plucked from the California Code—is an improper request for an advisory opinion. Because the DPA

Order will preempt some state laws (*e.g.*, ones that prevent the immediate operation of the Pipeline) but not others (*e.g.*, generally applicable labor laws that lack such impact), its preemptive effect must be considered in a concrete factual setting involving the application of a specific state law to the Pipeline's operation. *See MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1124–26 (9th Cir. 2020).

**II.    The Court Should Terminate or Modify the Consent Decree and Deny California's Motion to Enforce in *Plains*.**

**A.    <u>The Court should terminate the Consent Decree.</u>**

***The entire Decree is ripe for termination.*** The Court should terminate the Consent Decree by the terms "within its four corners." *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005). The Decree provides for termination after "Defendants"—defined as two Plains entities—have complied for five years and three months. *CD* ECF 6-1 ¶¶ 7, 100–02. Plains timely requested termination, California does not allege that Plains violated the Decree, and the United States has confirmed that Plains satisfies the termination standard. *CD* ECF 49-2 ¶¶ 72–74.

Even if Sable's conduct were relevant, PHMSA agrees that Sable has substantially complied, *see* Tr. 57:21–22. And California points to no safety reason to stop Pipeline operation. Under these facts, the fundamental purpose of the Consent Decree has been accomplished. *See Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120–23 (9th Cir. 2009).

***At a minimum, the Court should terminate Plains***. California's supplemental brief does not raise any issues regarding Plains. No party disputes that Plains is entitled to termination under the Consent Decree's terms. The Court should order that Plains' ongoing obligations to comply with the Consent Decree are terminated.

**B.    <u>Sable did not "defy" the Consent Decree.</u>**

California relies on inaccurate, inflammatory rhetoric regarding Sable's actions. When the Pipeline—historically regulated by PHMSA—was regulated by OSFM, Sable obtained State Waivers. *See CD* ECF 43-1 Exs. I, J. After PHMSA

determined it had jurisdiction, Sable obtained federal equivalents. *See CD* ECF 53-1 ¶ 21. Sable has performed all safety work required by the Consent Decree. *See* Tr. 57:21–22. The sole area of disagreement between PHMSA and OSFM is whether certain additional repairs—if needed—could be completed pre- or post-restart. PHMSA concluded that the Consent Decree authorizes post-restart repairs and that the Pipeline segments can be safely operated, and thus approved the Pipeline Restart Plan in December 2025. *CD* ECF 53-1 ¶ 20. Still, Sable did not resume flow through the segments until March 14, 2026, after it was ordered to by the DPA Order. *Wright* ECF 16-1 at 9–12. Sable could not comply with both California's directives and the United States' mandates. Thus, Sable timely invoked the Consent Decree's force majeure and dispute resolution provisions. *See CD* Dkt. No. 61-1 ¶ 25.

### C. **Alternatively, the Court should modify the Consent Decree.**

***Change in jurisdiction****.* Contrary to California's assertions, Sable's intention to operate the Pipeline segments as part of an interstate system and PHMSA's reclassification of the segments based on that intention are the sort of factual and legal changes that warrant modifying the Consent Decree under Rule 60(b)(5).

*First*, leaving the Consent Decree unmodified would require what the Pipeline Safety Act prohibits: state regulation of an interstate pipeline. 49 U.S.C. § 60104(c) ("A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."); Tr. 73:2–4. Because "one or more of the obligations placed upon the parties has become impermissible under federal law," the Court *must* modify the Consent Decree. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992).

California's arguments against PHMSA's underlying legal positions do not change that conclusion. Absent clear evidence to the contrary, the Court should presume that PHMSA "properly discharged [its] official duties" when it reclassified the Pipeline segments as interstate. *Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025). California cites no facts to overcome that presumption—seeking instead to

8

collaterally attack PHMSA's positions here while litigating the same issues in the Ninth Circuit. It may not do so.[2] 49 U.S.C. § 60119(a)(1); *see Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Tr. Co.*, 379 U.S. 411, 421–22 (1965).

*Second*, California's argument that the Consent Decree contemplated restart, *see CD* ECF 62 at 6, asks the wrong question, and in doing so, focuses on the wrong event. The changed factual circumstance warranting modification is not the restart, it is the Pipeline's *interstate operation*. And that clearly is *not* something the Consent Decree anticipated. By giving OSFM authority over a potential restart, the Decree plainly contemplated that those operations would be *intra*state. *See Asarco*, 430 F.3d at 976 (directing courts to examine consent decree text to determine if a change was anticipated). PHMSA could not, through the Decree, have waived or altered its statutory grant of exclusive jurisdiction over interstate pipelines. *See Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 71 (2009).

*Third*, California relies on inapposite authority in arguing that the United States unilaterally created the changes warranting modification. *See CD* ECF 62 at 15–16. Unlike in *Flores*, 984 F.3d 720, this case does not concern the discretionary adoption of new rulemaking affecting the Consent Decree; the Pipeline Safety Act long predates the Consent Decree and *requires* PHMSA to regulate interstate pipelines. *See* 49 U.S.C. § 60104(c). And it was external factual changes—Sable's acquisition of the entire Pipeline and intention to operate it in interstate commerce—that animated PHMSA's reclassification.

**The DPA Order.** The Secretary's DPA Order establishes independent grounds to modify the Consent Decree. *CD* ECF 49 at 25. California's preemption arguments

---

[2] California's reliance on *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 156 (2025), is misplaced because this is not a proceeding to enforce the PHMSA decision against California. More, while California styles its filing as a "Motion to Enforce," it really seeks to attack the *validity* of PHMSA's determination and the DPA Order. That is not what *McLaughlin* permits.

do not alter that Sable *must* comply with the DPA Order, making compliance with OSFM's contradictory orders under the Consent Decree legally impermissible and factually impossible.

***FRCP 60(b)(6).*** PHMSA's reclassification of the segments and the DPA Order also present extraordinary shifts in the factual and legal landscape underlying the Consent Decree that warrant modification under Rule 60(b)(6). *See Ctr. for Biological Diversity v. Burgum*, 2025 WL 821660, at *2 (D. Mont. Feb. 21, 2025).

### D.    Regardless, California's Motion to Enforce should be denied.

Even if the Court did not terminate or modify the Consent Decree, California has not shown that Sable is subject to "enforcement" as a nonparty. *See Sierra Club v. North Dakota*, 868 F.3d 1062, 1067 (9th Cir. 2017); *Am. Semiconductor, Inc. v. Cal. Assignments LLC*, 2013 WL 5937968 at *4, *7 (N.D. Cal. Oct. 30, 2013). Enforcement against a nonparty raises serious due process concerns. *See Harmon v. San Diego Cnty.*, 477 F. Supp. 1084, 1091 (S.D. Cal. 1979).

California also fails to demonstrate that any noncompliance merits "enforcement" through a preliminary injunction. California's request bypasses the Decree's own procedures for alleged noncompliance, *see CD* ECF 6-1 ¶¶ 26–29, 44–49, and makes no attempt to satisfy the preliminary injunction standard—such as by showing irreparable harm, which this Court has twice recognized is lacking. *See, e.g.*, *State Parks* ECF 60 at 5, 7.

Regardless, California and PHMSA agree that Sable has complied with the Consent Decree, other than the very narrow dispute about the timing of an additional round of possible repairs. *See* Tr. 57:21–22; *CD* ECF 53 at 8. PHMSA is actively and effectively regulating the Pipeline, and—critically—*California does not even attempt to show that Sable's operation of the Pipeline is unsafe*.

### CONCLUSION

The Court should deny California's Motions and grant the United States' Motion to Terminate or Modify the Consent Decree.

10

DATED:  June 25, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
BRADLEY CRAIGMYLE
ROBERT N. STANDER
Deputy Assistant Attorneys General
JUSTIN D. HEMINGER
RILEY W. WALTERS
Counsel

*/s/ Stefan J. Bachman*[3]
Stefan J. Bachman (DC Bar No. 90008649)
Email:  Stefan.Bachman@usdoj.gov
Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
950 Pennsylvania Avenue NW Washington, D.C. 20530
Phone: (202) 598-9566

*Attorneys for the United States of America*

BABST CALLAND

Nicholas McDaniel (*pro hac vice*)
nmcdaniel@babstcalland.com
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone:  +1 202.853.3455
Facsimile:   +1 202.853.3491

LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:   +1 424.653.5501

HOLLAND & KNIGHT LLP
James W. Noe (*pro hac vice forthcoming*)
*jim.noe@hklaw.com*
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Telephone:  +1 202.469.5525

---

[3] Filer attests that all other signatories listed concur in the filing's contents and have authorized the filing.

11

*/s/ Nicholas McDaniel*
NICHOLAS McDANIEL

*Attorneys for Sable Offshore Corp. and Pacific Pipeline Company*

DANIEL B. LEVIN (State Bar No. 226044)
daniel.levin@mto.com
COLIN A. DEVINE (State Bar No. 315801)
colin.devine@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426

*/s/ Colin A. Devine*
COLIN A. DEVINE

*Attorneys for Defendants Plains All American Pipeline L.P. and Plains Pipeline L.P.*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this brief is 10 pages in length, which complies with the page limit set by the Court.

DATED:  June 25, 2026                    */s/ Stefan J. Bachman*

Stefan J. Bachman

12